FILED
U.S. DISTRICT COURT
DISTRICT OF WYOMING

APR 28 2010

Stephan Harris, Clerk
Cheyenne

**BILLIE LM ADDLEMAN**
**WHITNEY M. AGOPIAN**
Hirst Applegate, LLP
1720 Carey Avenue, Suite 200
P.O. Box 1083
Cheyenne, WY 82003-1083
Phone: (307) 632-0541
Fax: (307) 632-4999
baddleman@hirstapplegate.com
wagopian@hirstapplegate.com

## UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF WYOMING

GEORGIA-PACIFIC LLC, and                    }
                                            }
                          Plaintiff,        }
                                            }
            vs.                             }        Civil No. **10CV0083**
                                            }
DIVERSIFIED TRANSFER AND                    }
STORAGE, INC. and WILSHIRE                  }
INSURANCE COMPANY,                          }
                                            }
                          Defendants.       }

## *COMPLAINT*

Plaintiff Georgia-Pacific LLC ("Georgia-Pacific"), formerly known as

Georgia-Pacific Corporation, for its Complaint against Defendants Diversified Transfer and

Storage, Inc. ("Diversified") and Wilshire Insurance Company ("Wilshire") states and

alleges as follows:

HIRST APPLEGATE, LLP
LAW OFFICES
1720 CAREY AVENUE, SUITE 200
P.O. BOX 1083
CHEYENNE, WYOMING 82003-1083

Receipt # 9021
Summons: X issued
_____ not issued

## *JURISDICTION AND VENUE*

1.      Georgia-Pacific   LLC,   formerly   known   as   Georgia-Pacific Corporation, is a Delaware limited liability company with its principle place of business in Atlanta, Georgia.

2.      Defendant Diversified Transfer and Storage, Inc. is a Montana corporation with a principle place of business in Billings, Montana.  Diversified regularly performs business in Wyoming.

3.      Defendant Wilshire Insurance Company is a Florida corporation with its principle place of business in Raleigh, North Carolina.  Wilshire conducts business in Wyoming and issues policies to Wyoming businesses and residents.

4.      This Court has jurisdiction over this action pursuant 28 U.S.C. §2201 since Plaintiff seeks declaratory relief.  The Court also has jurisdiction over this matter pursuant to 28 U.S.C. §1332 as the amount in controversy exceeds $75,000.00 (in as much as underlying tort claims seeks damages in excess of $75,000.00) and the Plaintiff and Defendants are citizens of different states.

5.      Venue for this action is appropriate for this Court by virtue of 28 U.S.C. §1391 since a substantial part of the events and omissions giving rise to this claim occurred in Wyoming as well as the fact that Defendants are subject to personal jurisdiction in Wyoming.

## *FACTS COMMON TO ALL CLAIMS*

6.     Plaintiff incorporates and re-alleges the allegations made in the preceding paragraphs as if set forth belief herein.

7.     Plaintiff operates the Georgia-Pacific gypsum plant in Big Horn County, Wyoming. Defendant Diversified contracted to provide services, including the transportation of freight, pursuant to a Contract Carriage and Brokerage Agreement [herinafter the "Contract"] between Diversified and Plaintiff, a true and correct copy of which is attached as **Exhibit A**. This Contract was in force between the parties at all times relevant to this Complaint.

8.     The Contract provides that Diversified can transport the freight itself or arrange for other carriers to transport and deliver shipments of freight.

9.     On or about May 5, 2006, Defendant Diversified hired and arranged for R. Waltman Trucking to transport freight as a carrier under the Contract.

10.    Richard Waltman, an employee of R. Waltman Trucking, arrived at the Georgia-Pacific plant on May 5, 2006.     Mr. Waltman's truck was loaded without incident and Mr. Waltman pulled his vehicle into an empty lot to tarp. During the tarping of his truck, Mr. Waltman fell from his ladder and sustained injuries.

11.    As a result of Mr. Waltman's injuries, Richard Waltman and R. Waltman Trucking filed a Complaint ("Waltman claims") against Georgia-Pacific seeking recovery for his on-the-job injury. The Complaint was filed in the United States District

HIRST APPLEGATE, LLP                    - 3 -
LAW OFFICES
1720 CAREY AVENUE, SUITE 200
P.O. BOX 1083
CHEYENNE, WYOMING 82003-1083

Court for the District of Wyoming where it is currently pending. A true and correct copy of the First Amended Complaint and Answer to First Amended Complaint are attached as **Exhibits B** and **C**.

12.     Mr. Waltman's injury claims and damages arise out of or in the consequence of the work called for by the Contract.

13.     Mr. Waltman's injuries and damages were caused at least in part by his own negligence and/or that of Defendant Diversified.

14.     The Contract contained certain indemnity, hold harmless, and defense requirements, whereby Defendant Diversified is required to defend, hold harmless and defend Plaintiff against any claim, suit, or action resulting from work performed under the terms of the Contract.

15.     The Contract contained certain insurance requirements. Among those requirements, Defendant Diversified was to obtain, and require all of its carriers to obtain, Commercial General Liability ("CGL") insurance with bodily injury limits of one million dollars and to name Plaintiff as an additional insured. The Contract specifically required Plaintiff to be listed as an additional insured on this CGL policy. Defendant Diversified did not fulfill this requirement as its insurer, Defendant Wilshire, denied coverage for this claim.

16.     On June 1, 2006, Plaintiff tendered indemnity and defense of the Waltman claims to Defendant Diversified. The Plaintiff also requested that Defendants

notify their insurance carrier of the Waltman claim. To date, neither Defendant Diversified, nor their insurers, have accepted the tender and defense of the claim.

17.     Defendant Diversified obtained a Commercial General Liability policy, Policy No. B82494224, effective dates 6/1/05 – 6/1/06, with coverage provided by Wilshire Insurance Company. The Certificate of Insurance issued, on May 24, 2005, provides that Georgia-Pacific Corporation is named as an additional insured. A copy of that Certificate of Insurance is attached as **Exhibit D**.

18.     To date neither Defendant Diversified nor Defendant Wilshire Insurance Company have accepted Plaintiff's tender.

## I.     BREACH OF CONTRACT CLAIM (DIVERSIFIED)

19.     Plaintiff reincorporates and re-alleges the allegations made in the preceding paragraphs as if set forth fully herein.

20.     The Contract requires Diversified to defend, hold harmless and indemnify Plaintiff from and against all suits, claims, costs and attorneys' fees of any sort or nature whatsoever arising out of the operation of trucks by Diversified, its employees, its agents, or carriers which Diversified has contracted with.

21.     Specifically, the Contract provides:

7. (a) COMPANY agrees to assume all risks growing out of or occurring in the performance of this Agreement by COMPANY, it

HIRST APPLEGATE, LLP                    - 5 -
LAW OFFICES
1720 CAREY AVENUE, SUITE 200
P.O. BOX 1083
CHEYENNE, WYOMING 82003-1083

agents or employees, or by Carriers with which COMPANY has contracted for movement of G-P's freight for:

(i)    any and all injury or damage arising out of performance of this Agreement to (1) the property and premises of G-P, including cargo, (2) the property and premises of any other person, and (3) any property or equipment used or to be used or incorporated I the performance of this Agreement.

(ii)    Any death or injury to any person or persons, whether or not employed by the COMPANY, however caused, occurring during the performance of this Agreement or upon the premises where this Agreement is being performed, except when caused by the negligence of G-P, its agents and employees.

(b)    COMPANY shall also indemnify and hold harmless G-P, its officers, employees and customers, from and against all freight charges by Carriers.

(c)    COMPANY further covenants and agrees, and it hereby binds itself, at its own sole cost and expense, to defend, save harmless and indemnify G-P, its officers, employees and customers, from and against any and all manner of suits, claims, judgments, demands, costs, attorneys' fees, charges, debts, dues, liabilities, and payments of money of any sort or nature whatsoever on account of injury to or the death of persons or loss of or damage to property in any manner whatsoever, arising out of or predicated upon the operation of trucks of or by COMPANY, its agents, employees or Carriers with which COMPANY has contracted for movement of G-P's freight, or the conduct of the business of COMPANY, or the transportation and handling of goods by COMPANY, or by its agents, employees or Carriers with which COMPANY has contracted for movement of G-P's freight, whether pursuant to this Agreement or otherwise, provided that this hold harmless and indemnity shall not apply to the extent that the action giving rise to the claim was caused by an act or omission of G-P or its agents, servants or employees.

22.     Defendant Diversified breached and continues to breach the Contract by refusing to defend, indemnify and/or hold Plaintiff harmless with respect to the claims brought by Richard Waltman and R. Waltman Trucking.

23.     Plaintiff has suffered damages as a result of this breach and will continue to suffer damages in the form of attorney's fees and other litigation costs associated with the defense of the Waltman claims.

## II.     BREACH OF CONTRACT
## (DIVERSIFIED)

24.     Plaintiff reincorporates and re-alleges the allegations made in the preceding paragraphs as if set forth fully herein.

25.     Defendant Diversified breached the Contract by failing to purchase the insurance required by the Contract. Had Defendant purchased the proper insurance, such policy would have provided insurance coverage for Plaintiff for the Waltman claims. This coverage would have paid the cost of defending the Waltman claims and also indemnify Plaintiff for any amount that Plaintiff might be legally obligated to pay by way of verdict or settlement for the Waltman claim.

26.     The Plaintiff has suffered damages as a result of this breach and will continue to suffer damages in the form of attorney's fees and other litigation costs associated with defense of the Waltman claims. Plaintiff will also suffer damages if it becomes legally obligated to pay verdict or settlement.

HIRST APPLEGATE, LLP
LAW OFFICES
1720 CAREY AVENUE, SUITE 200
P.O. BOX 1083
CHEYENNE, WYOMING 82003-1083

- 7 -

## *III. BREACH OF CONTRACT*
## *(DIVERSIFIED)*

27.     Plaintiff reincorporates and re-alleges the allegations made in the preceding paragraphs as if set forth fully herein.

28.     The Contract requires Diversified to ensure that its carriers obtain insurance covering the risks incident to the Contract, including Workers' Compensation, and Commercial General Liability insurance with bodily injury limits of one million dollars naming Plaintiff as an additional insured.

29      Defendant Diversified breached the Contract by failing to ensure that its carriers, like R. Waltman Trucking, purchased the appropriate insurance and have Plaintiff named as an additional insured. This coverage would have paid the cost of defending the Waltman claims and also indemnify Plaintiff for any amount that Plaintiff might be legally obligated to pay by way of verdict or settlement for the Waltman claims.

30.     Plaintiff has suffered damages as a result of this breach and will continue to suffer damages in the form of attorney's fees and other litigation costs associated with defense of the Waltman claims. Plaintiff will also suffer damages if it becomes legally obligated to pay verdict or settlement.

HIRST APPLEGATE, LLP
LAW OFFICES
1720 CAREY AVENUE, SUITE 200
P.O. BOX 1083
CHEYENNE, WYOMING 82003-1083

- 8 -

## *IV.   BREACH OF CONTRACT - INSURANCE PROVISIONS (WILSHIRE)*

31.   Plaintiff reincorporates and re-alleges the allegations made in the preceding paragraphs as if set forth fully herein.

32.   The Certificate of Insurance issued to Diversified Transfer and Storage, Inc., by Wilshire Insurance Company, Comprehensive General Liability Policy, Policy No. B82494224, with effective dates 6/1/05 – 6/1/06, identifies Georgia-Pacific as an additional insured of that policy.  Plaintiff is an additional insured under the CGL Policy.

33.   Defendant Wilshire breaches and continues to breach this Contract by refusing to defend, indemnify and/or hold Plaintiff harmless as an additional insured under the CGL policy.

34.   Defendant has suffered damages as a result of this breach and will continue to suffer damages in the form of attorney's fees and other litigation costs associated with the defense of the Waltman claims.

## *V.   DECLARATORY JUDGMENT (DIVERSIFIED)*

35.   Plaintiff reincorporates and re-alleges the allegations made in the preceding paragraphs as if set forth fully herein.

36.   Pursuant to 28 U.S.C. § 2201 and/or WYO. STAT. ANN. § 1-37-101 *et seq.*, Plaintiff further seeks to have its rights under the Contract determined with respect to

future damages that will arise in the form of attorney's fees, costs and expenses that will be incurred in defense of the Waltman claims as well as its indemnity rights in the event of a judgment or settlement in favor of Waltmans. Specifically, Plaintiff seeks an order requiring Defendant Diversified to fully defend, indemnify and hold harmless Plaintiff with respect to the Waltman claims as required in the Contract.

## VI.   DECLARATORY JUDGMENT
## (WILSHIRE)

37.   Plaintiff reincorporates and re-alleges the allegations made in the preceding paragraphs as if set forth fully herein.

38.   Pursuant to 28 U.S.C. § 2201 and/or WYO. STAT. ANN. § 1-37-101 *et seq.*, Plaintiff further seeks to have its right under the CGL policy issued by Wilshire Insurance Company with respect to future damages that will arise in the form of attorney's fees, costs and expenses that will be incurred in the defense of the Waltman claims as well as its indemnity rights in the event of a judgment or settlement in the favor of Waltmans. Specifically, Plaintiff seeks an order requiring Defendant Wilshire Insurance Company to fully defend, indemnify and hold harmless Plaintiff with respect to the Waltman claim as required in the insurance policy.

## VII.   SPECIFIC PERFORMANCE

39.   Plaintiff reincorporates and re-alleges the allegations made in the preceding paragraphs as if set forth fully herein.

HIRST APPLEGATE, LLP
LAW OFFICES
1720 CAREY AVENUE, SUITE 200
P.O. BOX 1083
CHEYENNE, WYOMING 82003-1083

- 10 -

40.     Plaintiff seeks an order in equity requiring Defendants to perform its

obligations under the Contract and insurance policy as set forth above with respect to past or

future obligations of the Defendants that will arise in the form of attorney's fees, costs and

expenses that will be incurred in defense of the Waltman claims as well as its indemnity

rights in the event of a judgment or settlement in favor of Waltman and R. Waltman

Trucking.   Specifically, Plaintiff seeks an order requiring Defendants to fully defend,

indemnify and hold harmless Plaintiff with respect to the Waltman claims as required in the

Contract and insurance policy.

## *VIII.  BAD FAITH*

41.     Plaintiff reincorporates and re-alleges the allegations made in the

preceding paragraphs as if set forth fully herein.

42.     By its actions, Defendants breached the covenant of good faith and

fair dealing inherent in all Wyoming contracts.

43.     As a result of the breach, Plaintiff has been damaged and is entitled to

tort damages and attorney's fees in an amount to be proven at trial.

*WHEREFORE*, Plaintiff prays for judgment against Defendants and each of

them for declaratory relief, specific performance, and all damages alleged in the Complaint,

including attorney's fees, costs, for being forced to bring this action and for such other and

further relief as the Court deems as just and equitable.

HIRST APPLEGATE, LLP
LAW OFFICES
1720 CAREY AVENUE, SUITE 200
P.O. BOX 1083
CHEYENNE, WYOMING 82003-1083

- 11 -

Dated:  28 April 2010.

GEORGIA-PACIFIC LLC, Plaintiff

BY: _____

**BILLIE LM ADDLEMAN, #6-3690**
**WHITNEY M. AGOPIAN, #7-4521**
OF HIRST APPLEGATE, LLP
Attorneys for Plaintiff
1720 Carey Avenue, Suite 200
P.O. Box 1083
Cheyenne, WY 82003-1083
Phone: (307) 632-0541
Fax: (307) 632-4999
baddleman@hirstapplegate.com
wagopian@hirstapplegate.com

HIRST APPLEGATE, LLP
LAW OFFICES
1720 CAREY AVENUE, SUITE 200
P.O. BOX 1083
CHEYENNE, WYOMING 82003-1083

- 12 -

# *EXHIBIT A*

## CONTRACT CARRIAGE AND BROKER AGREEMENT

**DTSB/Georgia-Pacific Agreement**

THIS CONTRACT CARRIAGE AND BROKER AGREEMENT is made and entered into on **March 23, 1999**, by and among **GEORGIA-PACIFIC CORPORATION ("G-P")**, a Georgia corporation, and all of the direct or indirect subsidiaries and affiliates of Georgia-Pacific Corporation, 133 Peachtree Street, N.E., Atlanta, Georgia 30303 and Diversified Transfer & Storage ("COMPANY"), PO Box 2552, Billings, MT 59103, MC# 215020, SUB, SCAC DTSB, a motor carrier and broker of freight. *& FF 1221 (FREIGHT FORWARDER)*

### WITNESSETH THAT:

WHEREAS, G-P has special and distinct needs for transportation services and desires to avail itself of motor contract carrier services for the transportation of freight; and

WHEREAS, COMPANY is willing and desirous of transporting said freight tendered to it by G-P, is engaged in the transportation of such freight, including the arrangement of the transportation of such freight pursuant to a broker license issued or deemed issued to it by the Federal Highway Administration ("FHWA"), and has the necessary expertise to transport and/or broker such freight;

NOW, THEREFORE, in consideration of the premises and the mutual covenants hereinafter contained, the parties hereto have mutually agreed as follows:

1. Definitions:

(a) "Agreement" means this document, the Appendices to this document and the Schedules of rates, charges and operating rules agreed to between COMPANY and a Business Unit (defined below) of G-P from time to time. The Appendices and each, properly executed Schedule (defined below) are hereby incorporated into the Agreement by reference.

(b) "Business Unit" means any one of the primary business segments of G-P; presently these are the Pulp and Paper segment, the Building Products segment and the Distribution Division segment. G-P may from time to time identify additional business segments or change or delete the business segments identified herein by written notice to COMPANY.

05/23/2006 12:30PM (GMT-05:00)

05/31/2007 2:50PM

Georgia/Waltman
HA000075

(c) "G-P" means, collectively, Georgia-Pacific Corporation and all of its direct or indirect subsidiaries and affiliated entities.  In addition, "G-P" means any Business Unit of G-P receiving services from COMPANY pursuant to an effective Schedule (defined below).

(d) "Schedule" means a completed form in the format of Appendix B ("Form of Schedule"), along with the attachments thereto, signed by COMPANY and a Business Unit, containing the rates, charges and operating rules applicable to the transportation services COMPANY agrees to provide that Business Unit.

2. COMPANY has agreed to enter this Agreement with G-P to transport freight tendered by G-P in interstate and intrastate commerce solely under the rates and terms set forth herein and in the Appendices and Schedules hereto.  To the extent that regulated interstate transportation service is provided by COMPANY under this Agreement, this Agreement is entered into pursuant to 49 U.S.C. §14101(b) and G-P does not waive any of its rights provided in Subtitle IV, Part B of 49 U.S.C., except as expressly provided in this contract.  To the extent that COMPANY will be transporting freight for G-P in interstate commerce subject to federal regulation, COMPANY represents and warrants that it holds a valid and currently effective contract carrier permit issued by the Interstate Commerce Commission or its successor agency or that it is properly registered with the Federal Highway Administration and authorized to provide interstate motor transportation services.  COMPANY further agrees to provide proof of its authority to provide interstate transportation services upon request of G-P.  Any use of bills of lading, or other freight documents which refer to or incorporate by reference other terms and/or documents, such as (without limitation) "common carriers", "circulars", "classifications", and/or "tariffs" shall not alter the contract relationship created hereunder between the parties.

COMPANY further represents and warrants to G-P that it is duly licensed and authorized under PERMIT NO. MC# 215020 issued or deemed issued by the FHWA to operate as a Transportation Property Broker in interstate commerce and agrees to maintain, at all times during the Term of this Agreement, its Broker's License and a Financial Guarantee Surety Bond (a copy of said License and Bond are attached hereto and made a part hereof as Appendix A), COMPANY covenants and agrees to notify G-P immediately if and when its Broker's License or Surety Bond shall be revoked.

3, (a) From time to time during the term of this Agreement, any Business Unit of G-P may engage COMPANY to provide transportation services either through the use of COMPANY's own trucks or by brokering loads to third parties by entering into one or more Schedules with COMPANY.  COMPANY agrees that upon the request of a Business Unit, it will transport and deliver or arrange for other carriers to transport and deliver shipments of contract freight from Business

05/23/2006  12:30PM (GMT-05:00)

05/31/2007  2:50PM

Georgia/Waltman
HA000076

Unit facilities or other designated locations to the various destination points shown in the Schedule and at the rates and charges specified in such Schedule. COMPANY shall provide the transportation services specified in each Schedule in accordance with the terms and conditions of this Agreement and the operating rules attached to the Schedule by the applicable Business Unit.

4.  (a)  G-P agrees to compensate COMPANY according to the rates, charges and rules specified in the Schedules for transportation services performed pursuant to this Agreement. The same rates shall apply regardless of whether COMPANY acts as a carrier or broker under this Agreement. COMPANY shall invoice G-P promptly following delivery of freight. Payment for properly invoiced services shall be made by G-P within thirty (30) days following G-P's receipt of such invoice.

(b)  COMPANY shall not retain freight as a lien to secure payment of freight charges.

5.  COMPANY shall, at its cost and expense, employ in the operation of such vehicles and equipment fully qualified personnel, shall procure and maintain such licenses and permits as are required by local, state, or federal authorities with respect to such transportation services and shall comply with such laws and regulations and, upon G-P's request, shall provide evidence of the above. COMPANY agrees that each driver it utilizes to transport G-P freight shall hold a valid Commercial Drivers License, be fully qualified to drive a commercial motor vehicle and be familiar with all applicable federal and state safety regulations. COMPANY shall maintain a drug and alcohol testing program to the extent it is required to do so by federal law. If COMPANY transports hazardous materials, either for G-P or third parties, COMPANY agrees to maintain a training program consistent with federal regulations relating to the transport of hazardous materials, to register with the U.S. Department of Transportation as a hazardous materials carrier if so required by regulations and to comply with all other state and federal hazardous materials transportation regulations. COMPANY warrants that it does not hold either a "conditional" or an "unsatisfactory" safety rating from the Federal Highway Administration and that, in the event that it is ever so rated by the Federal Highway Administration or any successor agency, it will immediately notify G-P of such rating.

Subject to the terms and conditions hereof, COMPANY agrees that when it is acting as a broker, it will arrange with reputable, duly licensed motor carriers ("Carriers") for the transportation by such Carriers of shipments of freight from G-P facilities or other designated locations to the various destination points shown in Appendix B attached hereto and made a part hereof and for the compensation specified therein.  COMPANY shall ensure that Carriers whose services it arranges for G-P shall issue a bill of lading or other shipping document provided by G-P for each shipment tendered and shall adhere to the Operating Rules and

05/23/2006  12:30PM  (GMT-05:00)

05/31/2007  2:50PM

Georgia/Waltman
HA000077

Charges referenced in Appendix B attached hereto.  COMPANY understands that G-P has an Approved Carrier List which it regularly hires to transport its freight; G-P shall provide COMPANY with a copy of its Approved Carrier List prior to the execution of this Agreement. COMPANY agrees not to hire any of G-P's Approved Carriers in connection with the services provided under this Agreement.

6.  COMPANY covenants and agrees to transport safely and deliver undamaged all freight tendered to it by G-P without unreasonable delay and in a safe and workmanlike manner.  COMPANY agrees:

(a)   To maintain and have available in good working order a sufficient amount of acceptable equipment on short notice and capable, well trained and fully qualified crews for the purpose of fulfilling COMPANY's obligations under this Agreement.

(b)   To immediately notify G-P by telephone, teletype, or facsimile machine, at point of dispatch, of the occurrence of an accident or other delay in delivery to the consignee.

(c)   To satisfy such other distinct needs of G-P as may be listed in the attached Appendices and Schedules and mutually agreed by the parties.

When acting as a broker, COMPANY agrees:

(a)   To contract or arrange, **IN WRITING AND IN ITS OWN NAME AS SHIPPER**, to have freight transported for G-P by a Carrier, without undue delay, between origin and destination points designated by G-P and have such freight delivered to its destination in the same condition as received, and to pay for the carriage.

(b)   To contract or arrange, exclusively with Carriers that have equipment maintained according to the motor carrier safety requirements of the FHWA and that employ personnel fully qualified under FHWA regulations at 49 C.F.R. §383, 391-392, or any successor regulations.  COMPANY shall not employ the services of a Carrier that holds a safety rating from FHWA other than "satisfactory" and shall promptly advise G-P in the event that any Carrier is rated other than satisfactory.  All such Carriers shall maintain such licenses and permits as are required by local, state or federal authorities with respect to the required transportation services and shall comply with such laws and regulations.   Upon G-P's request, COMPANY shall provide written evidence that the above criteria are met. COMPANY will certify to G-P that the carriers it arranges to service G-P's needs shall comply with all applicable federal and state laws relating to wages, hours and conditions of labor.

05/23/2006   12:30PM (GMT-05:00)

05/31/2007   2:50PM

Georgia/Waltman
HA000078

05/31/2007  15:52    860250F430                    GALLAGHERANDHO|'''7H                  PAGE  08/17

         05/23/2006  13:22    404-230-1621               GP MOTOR LOGISTICS                 PAGE  10/19

(c)   To use Carriers that will make available in good working order a sufficient
       amount of acceptable equipment on short notice and capable and well-
       trained crews for the purpose of fulfilling G-P's transportation needs.

(d)   **To specifically disclaim in its contracts with Carriers that COMPANY
       is an agent of G-P and require the Carriers to look only to COMPANY
       for payment in connection with transporting G-P freight.**

BROKER agrees to release, and will require its insurers to, by a policy endorsement if
necessary, waive its rights of subrogation against G-P for loss under the workers'
compensation policy required under this Agreement

BROKER warrants and represents that it will continue to perform and that there will be
no material adverse change or effect on the transportation services that Broker performs
under this Agreement at any time prior to, during or after the Year 2000.  BROKER
further warrants and represents  that (i) it is using and will continue to use its best efforts
to ensure that the change to the Year 2000 and the fact that the Year 2000 is a leap year
will not adversely effect its ability to perform the transportation services under this
Agreement; (ii) it is using its best efforts to complete remediation of its internal computer
and business systems, software ( including upgrading from DOS software), and to
currently suspect that any of its service providers will not complete their Year 2000
readiness by December 31,1999 and that if any of its service providers do not complete
their Year 2000 readiness by December 31, 1999, BROKER  has no reason to suspect
that it will be unable to switch to another or other Year 2000 ready service provider(s)
such that its ability to perform will not be materially adversely effected.  BROKER has a
continuing obligation under subsection (iii) above to notify G-P in writing immediately if
it reasonably suspects that any aspect of the transportation  services provided under this
Agreement may be materially adversely effected by a Year 2000 date-related problem
whether due to its internal systems or the actions or inactions of its service providers

7.  (a) COMPANY agrees to assume all risks growing out of or occurring in the
performance of this Agreement by COMPANY, its agents or employees, or by
Carriers with which COMPANY has contracted for movement of G-P's freight for:

(i)    any and all injury or damage arising out of performance of this Agreement
       to (1) the property and premises of G-P, including cargo, (2) the property
       and premises of any other person, and (3) any property or equipment
       used or to be used or incorporated in the performance of this Agreement.

05/23/2006   12:30PM (GMT-05:00)


05/31/2007   2:50PM

Georgia/Waltman
HA000079

(ii)    any death or injury to any person or persons, whether or not employed by the COMPANY, however caused, occurring during the performance of this Agreement or · upon the premises where this Agreement is being performed, except when caused by the negligence of G-P, its agents and employees.

(b)    COMPANY shall also indemnify and hold harmless G-P, its officers, employees and customers, from and against all freight charges by Carriers.

(c)    COMPANY further covenants and agrees, and it hereby binds itself, at its own sole cost and expense, to defend, save harmless and indemnify G-P, its officers, employees and customers, from and against any and all manner of suits, claims, judgments, demands, costs, attorneys' fees, charges, debts, dues, liabilities, and payments of money of any sort or nature whatsoever on account of injury to or the death of persons or loss of or damage to property in any manner whatsoever, arising out of or predicated upon the operation of trucks of or by COMPANY, its agents, employees or Carriers with which COMPANY has contracted for movement of G-P's freight, or the conduct of the business of COMPANY, or the transportation and handling of goods by COMPANY, or by its agents, employees or Carriers with which COMPANY has contracted for movement of G-P's freight, whether pursuant to this Agreement or otherwise, provided that this hold harmless and indemnity shall not apply to the extent that the action giving rise to the claim was caused by an act or omission of G-P or its agents, servants or employees.

8. COMPANY agrees to obtain, and to ensure that its Carriers obtain, insurance covering the risks incident to this Agreement, including Workers' Compensation and all other types of insurance as are currently required by 49 C.F.R. Part 387 or such future state, local or federal regulations as may be implemented from time to time.   COMPANY shall obtain such insurance and any additional insurance specified in Appendix A in the amounts specified in Appendix A.  All insurance policies are to be written by reliable, solvent, and reputable insurance companies.

9. (a) COMPANY hereby covenants and agrees to be fully responsible for and to indemnify and save harmless G-P on account of loss of or damage to any and all freight transported for G-P by COMPANY under the terms of this Agreement pursuant to the terms of the Carmack Amendment, 49 U.S.C. §14706, or any similar successor statute, as if that statute were fully applicable as a matter of law to all of the transportation provided by COMPANY for G-P.  In the event of damage to or loss of freight, or any part thereof, G-P shall look to COMPANY to investigate, manage and resolve all claims when COMPANY is acting as a broker.

05/23/2006  12:30PM (GMT-05:00)


05/31/2007  2:50PM


Georgia/Waltman
HA000080

G-P shall have one (1) year from the date of actual delivery of the freight or, in the case of lost freight, from the date delivery had been scheduled, to file a claim with COMPANY in respect of the lost or damaged freight. The procedures for handling loss and damage claims shall be as set forth in 49 C.F.R. §1005 in effect as of May 1, 1998, as if such regulations were in all cases fully applicable as a matter of law. G-P shall have two (2) years from the date any claim for lost or damaged freight is declined by COMPANY in whole or in part to institute a legal action in an appropriate court of law with respect to its claim. COMPANY may not limit or waive its liability to G-P for lost or damaged cargo in any respect except by means of an express written agreement signed by both parties hereto. All freight involved in a loss and damage claim shall not be subject to a "released value" limit, but rather to its full replacement value unless G-P otherwise agrees in a written instrument signed by G-P.

(b) G-P shall have the right to offset freight or other charges owed to COMPANY against claims for loss, damage or delay, or for overcharge and duplicate payment claims, provided such claims are verified in due course.

10. Any claim by G-P for refund of freight charges previously paid shall be made within 180 days of the date of the COMPANY invoice for such charges. Any claim by COMPANY for additional charges due under this Agreement shall be submitted in writing to G-P within 180 days of the date of COMPANY's original invoice. Any claim not raised within the 180-day time periods shall be deemed to be waived and may not be later asserted. The party receiving a written claim under this paragraph shall acknowledge receipt of same within ten (10) days of receipt and shall by writing transmitted to the other party by registered mail, return receipt requested, pay or decline such claim within sixty (60) days following its receipt of the claim. Either party may institute a legal action against the other for refund or payment of freight charges on or before eighteen (18) months from the date on which the claiming party receives a written declination of the claim.

11. COMPANY will obtain, and ensure that its Carriers obtain, all federal and state licenses, permits and authority required by virtue of the activities carried on by it hereunder and will comply with all applicable federal, state and local laws and ordinances and all applicable rules and regulations of any federal, state or other regulatory body having jurisdiction, including but not limited to applicable federal and state laws, rules and regulations relating to wages, hours and conditions of labor, vehicle maintenance and operation, and safety, and with any and all applicable amendments to such laws, rules and regulations, now or hereafter enacted or promulgated. Compliance, or failure to comply, with all such laws, rules and regulations shall not, however, relieve COMPANY of any of its obligations to G-P under the terms of this Agreement. COMPANY shall obtain any required permits or licenses at its own expense and shall be responsible for

paying for the cost of maintaining and repairing its vehicles, fuel, tolls, taxes and all other operating expenses.

12.   Failure or delay by either G-P or COMPANY to perform under this Agreement shall be excused to the extent caused by existing or future strikes, lock-outs or other labor disturbances not reasonably anticipated, war, insurrection, riot, shortage of raw materials, accident or disaster, embargo, fire, flood, storm, other acts of God, governmental requirements, or causes or circumstances beyond the reasonable control of either party.

13.  It is expressly understood and agreed that the business of COMPANY, its agents, servants and employees, is in all respects separate and distinct from G-P, and that COMPANY, and its agents, servants and employees, are with respect to G-P, independent contractors. COMPANY shall not enter into any agreements on behalf of G-P without G-P's express written consent.

14.  This Agreement may not be assigned by either party without the prior written consent of the other party, which consent shall not be unreasonably withheld. The above limitation on assignment shall not apply to subcontracting by COMPANY, to the extent the subcontract is with its owned or controlled affiliates. Further, COMPANY may also make trip lease arrangements, provided that any such trip leases move solely under COMPANY's motor operating authority. In all instances, G-P will be contractually obligated to COMPANY only, and COMPANY will be responsible to the other parties in all respects. **COMPANY SHALL NOT BROKER ANY FREIGHT OF G-P TO ANOTHER BROKER (DOUBLE BROKERING) UNDER THIS AGREEMENT.**

15.  The term of this Agreement shall commence on the date hereof and shall continue thereafter in full force and effect for a one (1) year term, subject only to either party's right to terminate at any time and for any reason whatsoever by serving not less than thirty (30) days written notice to that effect upon the other party, said notice to be provided pursuant to the terms of Section 17 hereof, provided however, that G-P shall have the right to terminate this Agreement immediately if COMPANY (i) files a voluntary petition in bankruptcy; (ii) makes an assignment for the benefit of creditors; (iii) enters into receivership; (iv) is involuntarily adjudicated as bankrupt by any court of competent jurisdiction; or (v) violates any terms or conditions of this Agreement.

16.  This Agreement and its attached Appendices and Schedules constitute the entire agreement between the parties; provided, however, that the parties may change, revise, add or delete any portion of the Schedules after execution of this Agreement by both parties initialing or signing such changes, revisions, additions or deletions. (The parties anticipate adding to the Schedules, from time to time, rate letters or rate schedules and operating rules for various types of transportation services.)  This Agreement supersedes and cancels any and all

05/23/2006   12:30PM (GMT-05:00)

05/31/2007   2:50PM

Georgia/Waltman
HA000082

agreements heretofore made between the parties hereto with respect to the
subject matter hereof. The failure of a party to this Agreement to object to or to
take action with respect to the conduct of the other party which is in violation of
the terms hereof shall not be construed as a waiver of any rights the non-
objecting party may have, nor of any future claims of breach or wrongful conduct.
Either party hereto may, only by an instrument in writing, waive compliance by
the other party hereto with any term or provision of this Agreement. The waiver
by any party hereto of a breach of any term or provision of this Agreement shall
not be construed as a waiver of any subsequent breach. The rights and
remedies provided by this Agreement are given in addition to any other rights
and remedies either party may have by law, statute, ordinance or otherwise. All
such rights and remedies are intended to be cumulative, and the use of any one
right or remedy by either party shall not preclude or waive its right to use any or
all other rights or remedies.

17. All notices, requests, demands, and other communications required by or
necessary to this Agreement shall be given in writing. Such notices shall be
deemed to have been given when delivered in person, by facsimile transmission,
or deposited as certified mail (return receipt requested) in the United States Mail
and addressed to the appropriate party at its respective mailing address set forth
in the Schedules hereto.

18. In the event that any phrase, clause, sentence, or other provision contained
in this Agreement shall violate any applicable statute, ordinance, rule or law,
such phrase, clause, sentence or provision shall be ineffective to the extent of
such violations but shall not operate to invalidate any other provision of this
Agreement.  The provisions of this Agreement shall survive cancellation,
termination, or expiration of this Agreement.

19. Neither party shall disclose the terms of this Agreement to a third party
without the written consent of the other party except (a) as required by law or
regulations; (b) when disclosure is made to its parent, subsidiary or affiliated
companies; or (c) to facilitate rating or auditing of transportation charges by an
authorized agent.

20. The standard shipping document shall be a bill of lading or freight receipt as
executed for each shipment tendered under this contract. These documents
shall be supplied by G-P. The terms of said bill of lading or freight receipt are
included in and made a part of this Agreement. To the extent that the terms of
any such bill of lading or freight receipt conflict with the terms of this Agreement,
the terms of this Agreement shall control.

21. This Agreement shall be interpreted in accordance with the laws of the state
of Georgia, without giving effect to the conflict of law rules thereof.

                                              05/23/2006  12:30PM (GMT-05:00)


                                              05/31/2007  2:50PM

22.  This Agreement may be executed in two or more counterparts, each of
which shall be considered one and the same Agreement.

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be
executed in duplicate, each one being an original, by their duly authorized
representatives on the day and year first above written.

**CARRIER**

Diversified Transfer & Storage

PO Box 2552

Billings, MT 59103

By: _____
                                                    PRESIDENT
    Title

**GEORGIA-PACIFIC CORPORATION**
(Including all its subsidiaries and affiliates)

By: _Debra M Thompson_

    Title

Debra M. Thompson
Georgia-Pacific Corporation
Building Products Transportation & Logistics
Group Manager, Motor Carrier Logistics

05/23/2006  12:30PM (GMT-05:00)

05/31/2007  2:50PM

Georgia/Waltman
HA000084

## APPENDIX A

### INSURANCE

COMPANY agrees to obtain and maintain at its own cost or shall require and warrant that all Carriers (at Carriers' expense) obtain and maintain, during the term of this Agreement, insurance covering the risks incident to this Agreement with the following minimum limits:

    i.      Workers' Compensation with statutory limits;

    ii.     Employer's Liability with $100,000 per occurrence;

    iii.    Commercial General Liability insurance, covering bodily injuries and death and property damage, Independent Contractors, Personal Injury, Contractual with limits of $500,000 per occurrence and $1,000,000 in the General Aggregate;

    iv.    Automobile Liability, covering owned, non-owned, hired, and other vehicles, with a combined single limit of $750,000 per occurrence. For a motor COMPANY involved in the transportation of material which the DOT defines as hazardous, the requirement is $5,000,000.

    v.     Cargo Liability covering damage to or loss of cargo or freight transported on behalf of G-P with limits of $50,000 per occurrence.

In the event that federal or state law or regulation requires more extensive liability coverage than the limits listed above, COMPANY shall procure and maintain such additional coverage at its expense. When acting as a broker, COMPANY shall ensure that all Carriers procure and maintain such additional coverage and such certificates at Carriers' expense. In addition, COMPANY will ensure that Carriers agree to obtain insurance covering damage to or loss of cargo or freight they transport on behalf of G-P at the level necessary to cover, at a minimum, the replacement cost of such cargo or freight.

COMPANY shall be responsible for payment of any and all deductibles from insured claims under its policies. COMPANY shall cause G-P to be named as an additional insured on its Commercial General Liability and Automobile Liability policies. COMPANY shall further arrange with the motor carriers that it engages on behalf of G-P that G-P shall be named as an Additional Insured on all Carriers' applicable auto liability insurance policies.

The coverage afforded under any insurance policy obtained by COMPANY pursuant to this Appendix shall be primary coverage regardless of whether or not G-P has similar coverage. Evidence of insurance, including where applicable the fact that G-P has been named as an additional insured, shall be filed with G-P before COMPANY transports any freight for G-P, including renewals thereof. When COMPANY is acting as a broker, evidence of insurance, including

Georgia/Waltman
HA000085

05/31/2007   15:52       8602545430                    GALLAGHERANDHOUTH                    PAGE   15/17

    05/23/2006   13:22       404-230-1621               GP MOTOR LOGISTICS                    PAGE   17/19

renewals thereof, from Carriers shall be filed with COMPANY before Carriers transport any freight under this Agreement; such policy certificates shall evidence that G-P has been named as an additional insured consistent with this paragraph. Policies shall neither be canceled nor changed without at least ten (10) days' prior written notice to G-P.

05/23/2006   12:30PM  (GMT-05:00)

05/31/2007   2:50PM

Georgia/Waltman
HA000086

. 05/31/2007  15:52      8602545430          GALLAGHERANDHO'''''TH              PAGE  16/17
                            (      )                          (       )
     05/23/2006  13:22     404-236-1621       GP MOTOR LOGISTICS               PAGE  18/19
                  .            (                                (

## APPENDIX B

## FORM OF SCHEDULE

### Schedule to Contract Carriage Agreement

This Schedule is executed and delivered pursuant to the Contract Carriage
Agreement ("Agreement") dated March 23, 1999, by and between Georgia-Pacific
Corporation and all of its direct and indirect subsidiaries and affiliates ("G-P") and
Diversified Transfer & Storage ("COMPANY") and incorporates such Agreement by
reference. Any term not otherwise defined herein has the meaning ascribed to it
in the Agreement. The intent of the parties is to require a separate, written
amendment to alter the terms of the Agreement; therefore, the terms of the
Agreement shall control over any provision herein which is inconsistent with the
Agreement to the extent of such inconsistency.

1.     Name of Business Unit: Building Products Division

2.     Rates.  Rates for transportation services provided to the Business Unit
identified above pursuant to this Schedule are identified in attached rate letters
or rate schedules which must be initialed and dated by COMPANY and an
authorized representative of the Business Unit.  Such properly executed rate
letters and schedules are incorporated herein by reference.

3.     Operating Rules and Charges.  Attached hereto are one or more sets of
operating rules and charges which COMPANY and the Business Unit executing
this Schedule agree shall apply to the transportation services and obligations of
COMPANY provided pursuant to this Schedule and to the obligations of the
Business Unit executing this Schedule.  Each such set of operating rules and
charges must be initialed by the parties to this Schedule before they will become
part of this Schedule.  Such properly executed operating rules and charges are
incorporated herein by reference.  If checked below, attached hereto are the sets
of operating rules and charges bearing the following designations:

        X        GP-1 or Subsequent Versions to GP1 for Building Products

4.     Address for Notices to Business Unit:

        Georgia-Pacific Corporation
        Building Products Transportation & Logistics
        900 SW Fifth Ave
        16th Floor
        Portland, OR 97204

                                    05/23/2006   12:30PM (GMT-05:00)


                                    05/31/2007   2:50PM


Georgia/Waltman
HA000087

05/31/2007  15:52    8602545430                    GALLAGHERANDHO⸱⸱⸱⸱⸱TH         PAGE   17/17

05/23/2006  13:22    404-238-1621                   GP MOTOR LOGISTICS          PAGE   19/19

Agreed to and accepted on March 23, 1999:

**Diversified Transfer & Storage                     Georgia-Pacific
Corporation (by its
("COMPANY")**                                       Building Products Division.)

_____                               _____
Authorized Signature                                Authorized Signature

_____                               _____
Name                                                Name
  JAY FOLEY

_____                               _____
Title                                               Title
  PRESIDENT

_____                               _____
Date                                                Date
  5-4-99  3-23-99                                     3/29/99

                                                    Debra M. Thompson
                                                    Georgia-Pacific Corporation
                                                    Building Products Transportation & Logistics
                                                    Group Manager, Motor Carrier Logistics

                              05/23/2006  12:30PM (GMT-05:00)

                              05/31/2007  2:50PM

Georgia/Waltman
HA000088

## GALLAGHER & HOWARTH, P.C.
### ATTORNEYS AND COUNSELORS AT LAW

SUFFIELD VILLAGE
68 BRIDGE STREET, SUITE 207
SUFFIELD, CT 06078

TELEPHONE  (860) 254-5434
FACSIMILE  (860) 254-5430
howarthlaw@aol.com
g-h@transportationlegal.com

May 30, 2007

Thomas R. Braham, ARM, AIC
Claims Examiner III
Georgia-Pacific Claims Unit
Sedgwick CMS
1117 Perimeter Center West, Suite E500
Atlanta, GA 30338-5546

> RE:  **Request for Indemnification - Rick Waltman v. Georgia-Pacific Corporation**
> **Your File No.: A667022365**
> **Our File No.: 5394**

Dear Mr. Braham:

This firm is transportation counsel to Diversified Transfer & Storage, Inc., and I am writing in regard to the above referenced claim.

The only contract I am aware of between Diversified and Georgia-Pacific, is the "Contract Carriage and Broker Agreement, entered into on March 23, 1999. (Attached)  Under Paragraph 7(a)(ii) of that contract, Diversified agreed to indemnify Georgia-Pacific against:

> *"any death or injury to any person or persons, whether or not employed by the COMPANY, however caused, occurring during the performance of this Agreement, or upon premises where this Agreement is being performed, except when caused by the negligence of G-P, its agents and employees."* (Emphasis added)

In Paragraph (c), Diversified undertakes to defend, hold harmless and indemnify Georgia-Pacific, but again the last sentence states:

> *"... this hold harmless and indemnity shall not apply to the extent that the action giving rise to the claim was caused by an act or omission of G-P or its agents, servants or employees."* (Emphasis added)

Mr. Waltman is alleging that Georgia-Pacific was negligent in failing to have a "tarping area", and that the Georgia-Pacific employee that went to help Mr. Waltman after his fall, exacerbated his injuries. I do not have enough information to comment on the merit of Mr. Waltman's claims. Though apparently Mr. Waltman had made pick-ups at the facility several times before without incident or objections. However, the point remains that as Mr. Waltman's

05/31/2007  2:50PM

Georgia/Waltman
HA000089

# *EXHIBIT B*

FILED
U.S. DISTRICT COURT
DISTRICT OF WYOMING

JAN 07 2010

Stephan Harris, Clerk
Cheyenne

Steven G. Greenlee
**BURG SIMPSON**
**ELDREDGE HERSH & JARDINE, P.C.**
40 Inverness Drive East
Englewood, CO 80112
Telephone: (303) 792-5595
Facsimile: (303) 708-0527
E.mail: SGreenlee@burgsimpson.com

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF WYOMING

Civil Action No. 09 CV 280-D

RICHARD WALTMAN and R. WALTMAN TRUCKING,

Plaintiffs,

v.

GEORGIA-PACIFIC LLC,

Defendant.

___

### FIRST AMENDED COMPLAINT AND JURY DEMAND

___

**COME NOW** Plaintiffs Richard Waltman and R. Waltman Trucking, by and through

their attorney, Steven G. Greenlee of Burg Simpson Eldredge Hersh & Jardine, P.C., and for their

First Amended Complaint state, allege and aver as follows against the above-named Defendant:

### I. PARTIES

1.     Plaintiff Richard Waltman is an individual residing in the State of Nebraska.

2.     Plaintiff R. Waltman Trucking has a principal place of business located in Whitney,

Nebraska.

3.    Defendant Georgia-Pacific LLC ("Georgia-Pacific") is a limited liability corporation
      organized under the laws of the State of Delaware and duly authorized to conduct
      business in the State of Wyoming.

## II. JURISDICTION AND VENUE

4.    This Court has jurisdiction pursuant to 28 U.S.C. § 1332.

5.    The matter in controversy in this case exceeds the sum or value of $75,000, and is
      between citizens of different states.

6.    Venue is proper pursuant to 28 U.S.C. § 1391(a) because the incident giving rise to this
      Complaint occurred at a Georgia-Pacific manufacturing facility located in Lovell, Big
      Horn County, Wyoming.

## III. GENERAL ALLEGATIONS

7.    Plaintiffs hereby incorporate each of the previous allegations set forth above as if fully set
      forth herein.

8.    In 2006, Plaintiff Richard Waltman was employed as an independent contractor for his
      son Robert's small trucking business in Nebraska, Plaintiff R. Waltman Trucking.

9.    Mr. Waltman was a long haul truck driver driving loads in Nebraska, Wyoming and
      elsewhere in the United States.

10.   On May 5, 2006, Mr. Waltman arrived at the Georgia-Pacific Gypsum Manufacturing

2

Facility located in Lovell, Wyoming.

11.  He was instructed to pick up his load at a different location than where he had previously
     picked up loads for transport from Georgia-Pacific.

12.  The location where Mr. Waltman was instructed to pick up his load by Georgia-Pacific
     did not have a loading area or a docking station.

13.  A loading area and docking station are necessary to be available for Mr. Walton as well
     as other drivers to safely secure their loads.

14.  Further, Georgia-Pacific did not provide Mr. Waltman with a safety harness to use while
     loading his truck to safely secure his load without risk of fall.

15.  Georgia-Pacific, pursuant to industry customs, standards and safe practices, is required to
     provide such a safety harness to ensure safe loading and unloading of the materials by
     truck drivers.

16.  Georgia-Pacific participates in the Star Program with the Occupational Safety and Health
     Administration (OSHA).

17.  The Georgia-Pacific facility in Lovell, Wyoming, has been a member of the Star Program
     since 2004.

18.  The Star Program is designed for exemplary work sites that have comprehensive safety
     and health management systems. As a participant in the Star Program, the Georgia-Pacific
     plant in Lovell has additional duties and obligations to outside contractors working at its

3

facilities such as Mr. Waltman.

19.    Georgia-Pacific at Lovell manufacturing facility was subject to OSHA's multi-employer
       policy at the time of the incident on May 5, 2006 [as set forth in Directive No. CPL.2-
       00.124].

20.    OSHA's regulations govern work places where long haul truckers such as Mr. Waltman
       deliver and pick up goods. These regulations require that such facilities ensure that the
       areas where individual truckers deliver and pick up goods are safe.

21.    It is also the standard in the industry that Georgia-Pacific, and like facilities, ensure the
       safety of drivers such as Plaintiff, Richard Waltman, by providing a secure loading dock
       and safety harness.

22.    As the result of the foregoing, Georgia-Pacific had the duty to oversee and provide safety
       harnesses and a suitable loading dock to its contractors at its manufacturing facility in
       Lovell, Wyoming.

23.    On May 5, 2006 pursuant to instructions given to him by Georgia-Pacific, Mr. Waltman
       was up on his truck attempting to strap down the material as it was being loaded onto his
       truck at the Georgia-Pacific facility when he fell from his truck and hit his head on the
       cement causing severe injuries including, but not limited to a severe, permanent brain
       injury.

24.    Georgia-Pacific breached its duty to oversee and control outside contractors at its

                                                4

manufacturing facility in Lovell, Wyoming, at the time of the incident on May 5, 2006.

25.    Georgia-Pacific breached the duty it owed to Mr. Waltman by failing to provide fall
       protection such as a safety harness and by failing to provide a loading area or docking
       station that would provide a place to safely secure his load.

26.    Georgia-Pacific owed a duty to Mr. Waltman as the owner of the manufacturing facility
       in Lovell, Wyoming, as a Wyoming landowner because a landowner is charged with an
       affirmative duty to protect visitors to its property from known dangers as well as dangers
       discoverable with the exercise of reasonable care.

27.    Georgia-Pacific breached the duty it owed to Mr. Waltman as a Wyoming landowner by
       having a continuous and foreseeable dangerous condition on its property.

28.    It was reasonably foreseeable that a driver such as Mr. Waltman would fall as he was
       loading his truck, i.e., by failing to provide the numerous drivers loading material at its
       facility with fall protection such as a safety harness and by failing to provide a loading
       area or docking station that would provide a place to safely secure their loads.

29.    Georgia-Pacific's failure to provide fall protection such as a safety harness and a loading
       area or docking station created a substantial risk of severe injury that drivers would fall
       while attempting to secure their loads.

30.    Upon information and belief, the Georgia-Pacific employee(s) found Plaintiff Waltman
       on the ground with a crushed skull, bleeding profusely, and failed to give assistance or get

5

help.

31. Upon information and belief Georgia-Pacific employees, instead of rendering help or calling for emergency medical help, dragged him around to the cab of his truck and put the unconscious Plaintiff into the cab of his truck, further endangering Plaintiff's life and medical condition.

32. As the direct result of Georgia-Pacific's negligence, Plaintiff Richard Waltman suffered injuries, damages and losses including severe physical, mental and emotional injuries and loss of wages, and will continue to suffer injuries, damages and losses in the future, including but not limited to the following:

   - Extremely severe injuries to his head, upper body, wrist and lower back as the direct result of his fall at the Georgia-Pacific facility for which he has incurred in excess of $600,000.00 in medical expenses;

   - Loss of wages because of the severe injuries Mr. Waltman suffered as the direct result of his fall, as he has not been cleared by a medical professional to resume his work as long haul truck driver, and it is unlikely he will ever obtain this medical clearance.

33. As the direct result of Georgia-Pacific's negligence, Plaintiff R. Waltman Trucking suffered damages and losses, including but not limited to lost profits and revenues, because Mr. Waltman has not been cleared by a medical professional to resume his work

6

as a long haul truck driver for R. Waltman Trucking, and it is unlikely he will ever obtain this medical clearance.

## IV. FIRST CLAIM FOR RELIEF
### Plaintiff Richard Waltman
### Negligence

34.    Plaintiffs hereby incorporate each of the previous allegations set forth above as if fully set forth herein.

35.    Georgia-Pacific owed a duty of care to oversee and control outside contractors such as Plaintiff Richard Waltman at its manufacturing facility in Lovell, Wyoming.

36.    Georgia-Pacific breached its duty of care to Plaintiff Richard Waltman by failing to provide fall protection such as a safety harness and by failing to provide a loading area or docking station that would provide a place to safely secure his load.

37.    Georgia-Pacific also owed a duty to Plaintiff Richard Waltman as the owner of the manufacturing facility in Lovell, Wyoming, where Mr. Waltman was working at the time of his fall.

38.    Georgia-Pacific breached the duty it owed to Plaintiff Richard Waltman as a Wyoming landowner by having a continuous and easily foreseeable dangerous condition on its property when it was reasonably foreseeable that a driver such as Mr. Waltman would fall as he was loading his truck.

39.    Georgia-Pacific's breaches of its duties as set forth above proximately caused the injuries

7

suffered by Plaintiff Richard Waltman when he fell as he was attempting to secure the
load on his truck.

40. Upon information and belief, Georgia-Pacific further breached its obligations by
willfully, wantonly, and recklessly dragged Plaintiff, while he was unconscious, back into
his truck.

41. The injuries sustained by Plaintiff Richard Waltman when he fell as he was attempting to
secure the load on his truck and when he was dragged to the cab of his truck are a direct
and proximate result of the Defendant's negligence and are compensable by money
damages.

42. Defendant's willful and wanton conduct entitles Plaintiff to recover exemplary damages.
WHEREFORE, Plaintiff Richard Waltman prays for relief as set forth below.

## V. SECOND CLAIM FOR RELIEF
### Plaintiff R. Waltman Trucking
### Negligence

43. Plaintiffs hereby incorporate each of the previous allegations set forth above as if fully set
forth herein.

44. Georgia-Pacific owed a duty of care to oversee, control, and keep safe outside contractors
working for companies and businesses such as R. Waltman Trucking at its manufacturing
facility in Lovell, Wyoming.

45. Georgia-Pacific breached its duty of care to Plaintiff R. Waltman Trucking by failing to

8

provide its contractors with fall protection such as a safety harness, and by failing to provide a loading area or docking station that would provide a place for truck drivers to safely secure their loads.

46.    Georgia-Pacific also owed a duty to Plaintiff R. Waltman Trucking as the owner of the manufacturing facility in Lovell, Wyoming, where its contractor was working at the time of his fall.

47.    Georgia-Pacific breached the duty it owed as a Wyoming landowner to Plaintiff R. Waltman Trucking and its contractors by having a continuous and easily foreseeable dangerous condition on its property when it was reasonably foreseeable that a driver such as Mr. Waltman would fall as he was loading his truck.

48.    Upon information and belief, Georgia-Pacific further breached its obligations by willfully, wantonly, and recklessly dragging Richard Waltman, while he was unconscious, back into his truck, thereby further endangering his life and health.

49.    Georgia-Pacific's breaches of its duties as set forth above proximately caused the injuries suffered by Plaintiff R. Waltman Trucking's contractor Richard Waltman when he fell as he was attempting to secure the load on his truck and when he was dragged to the cab of his truck.

50.    The injuries sustained by Plaintiff Richard Waltman at the Georgia-Pacific facility caused Plaintiff R. Waltman Trucking to suffer lost profits and revenues in an amount to be

9

determined at trial.

51. Defendant's willful and wanton conduct in injuring Plaintiff Richard Waltman entitles Plaintiff R. Waltman Trucking to recover exemplary damages.

WHEREFORE, Plaintiff R. Waltman Trucking prays for relief as set forth below.

## DEMAND FOR JUDGMENT AND PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for judgment in their favor and against the Defendant under Plaintiffs' causes of action as follows:

a. Past, present and future economic damages, including but not limited to, medical and rehabilitation expenses, out of pocket costs, care-taking expenses, loss of past, present and future income, and loss of earning capacity;

b. Past, present and future non-economic damages, including past and future pain and suffering, loss of enjoyment of life, inconvenience, annoyance, emotional distress, mental suffering and anguish;

c. Physical impairment and disfigurement;

d. Lost profits and revenues;

c. Exemplary damages as allowed by law;

e. Costs of suit, expert witness fees, and attorney fees as provided by law;

f. Pre- and post-judgment interest;

g. All further relief as the Court deems just, reasonable and proper.

10

## JURY DEMAND

Plaintiffs hereby demand a trial by jury on all issues so triable.

**DATED** this the 6th day of January, 2010.

/s/ Steven G. Greenlee

Steven G. Greenlee
**BURG SIMPSON
ELDREDGE HERSH & JARDINE, P.C.**
40 Inverness Drive East
Englewood, CO 80112
Telephone: (303) 792-5595
Facsimile: (303) 708-0527
E-mail: SGreenlee@burgsimpson.com
*Counsel for the Plaintiffs*

Plaintiffs' address:
PO Box 162
Whitney, NE 69367

11

# *EXHIBIT C*

**BILLIE LM ADDLEMAN**
**WHITNEY M. AGOPIAN**
Hirst Applegate, LLP
1720 Carey Avenue, Suite 200
P.O. Box 1083
Cheyenne, WY 82003-1083
Phone: (307) 632-0541
Fax: (307) 632-4999
E-mail: baddleman@hirstapplegate.com
E-mail: wagopian@hirstapplegate.com

## UNITED STATES DISTRICT COURT

### FOR THE DISTRICT OF WYOMING

| | |
|---|---|
| RICHARD WALTMAN and<br>R. WALTMAN TRUCKING,<br><br>Plaintiffs,<br><br>vs.<br><br>GEORGIA-PACIFIC LLC,<br><br>Defendant. | }<br>}<br>}<br>}<br>}<br>}<br>}<br>}<br>}<br>}<br>} |

Civil No. 09-CV-280-D

# *DEFENDANT GEORGIA-PACIFIC LLC'S*
# *ANSWER TO PLAINTIFFS' FIRST AMENDED*
# *COMPLAINT*

Defendant Georgia-Pacific LLC, by and through undersigned counsel,

responds to Plaintiffs' Complaint as follows:

1.      Answering ¶¶ 1, 2, 4, 5, and 9, Defendant states that it is without

sufficient knowledge to form a belief as to the truth of the allegations contained therein

and, therefore, denies the same.

2.      Answering ¶ 3, Defendant admits that it is a Delaware Limited

Liability Company qualified to do business in Wyoming.

HIRST APPLEGATE, LLP
LAW OFFICES
1720 CAREY AVENUE, SUITE 200
P.O. BOX 1083
CHEYENNE, WYOMING 82003-1083

3.      Answering ¶ 6, Defendant admits the incident occurred at the Georgia-Pacific manufacturing facility located in Big Horn County, Wyoming; however, Defendant is without sufficient knowledge to form a belief as to the truth of the remaining allegation contained therein and, therefore, denies the same.

4.      Answering ¶¶ 7, 34, and 43, Defendant incorporates by reference its answers to the proceeding allegations.

5.      Answering ¶ 8, Defendant admits that Plaintiff Richard Waltman was the employee of an independent contractor.  Defendant is without sufficient knowledge to form a belief as to the truth of the remaining allegation contained therein.

6.      Answering ¶¶ 10, 14, 16 and 17, Defendant admits the allegations contained therein.

7.      Answering ¶¶ 11, 12, 13, 15, 18, 19, 21, 22, 24, 25, 27, 28, 29, 30, 31, 32, 33, 36, 38, 39, 40, 41, 42, 45, 47, 48, 49, 50 and 51, Defendant denies the allegations contained therein.

8.      Answering ¶¶ 20, 22, 26, 35, 37, 44, and 46, Defendant states that duty is a question of law for the court to decide. Defendant denies that it breached any such duty.

9.      Answering ¶ 23, Defendant denies that it provided any instructions to Mr. Waltman on how to perform his job as an independent contractor. Defendant further states that it is without sufficient knowledge to form a belief as to the truth of the remaining allegations contained therein and, therefore, denies the same.

10.     Defendant denies all allegations of the Complaint not specifically admitted herein.

HIRST APPLEGATE, LLP
LAW OFFICES
1720 CAREY AVENUE, SUITE 200
P.O. BOX 1083
CHEYENNE, WYOMING 82003-1083

### *Affirmative Defenses*

11.   As a further and separate defense, Defendant asserts that the Complaint fails to state a claim upon which relief can be granted.

12.   As a further and separate defense, Defendant asserts that discovery may reveal this Court lacks jurisdiction.

13.   As a further and separate defense, Defendant asserts that discovery may reveal that venue in this Court is not proper.

14.   As a further and separate defense, Defendant asserts that it did not owe Plaintiffs a duty of care.

15.   As a further and separate defense, Defendant asserts that, if liability is assessed in any respect, then the fault of all persons, entities and actors, whether or not joined as parties to this lawsuit, must be evaluated and liability apportioned among all persons, entities, and actors proportionate to their respective fault.

16.   As a further and separate defense, Defendant asserts that, if Plaintiff Richard Waltman was injured and damaged as alleged, such injuries and damages were solely and proximately caused by the superseding, unforeseeable, and intervening acts, conduct, fault, or products of third persons, parties, firms, entities, and corporations over whom this Defendant had no control or right of control and for whom Defendant is not legally responsible.

17.   As a further and separate defense, Defendant alleges that its acts or omissions, if any, were not the proximate cause of the events, injuries, and damages described in the Complaint.

18. As a further and separate defense, Defendant asserts that Richard Waltman and R. Waltman Trucking are comparatively responsible for the events, injuries, and damages described in the Complaint so that any recoverable damages shall be either precluded or diminished in proportion to the amount of comparative responsibility attributable to Richard Waltman and R. Waltman Trucking.

19. As a further and separate defense, Defendant asserts that Plaintiffs have failed to mitigate damages.

20. As a further and separate defense, Defendant alleges that Plaintiffs' Complaint is barred by the doctrines of waiver, estoppel, and/or laches.

21. As a further and separate defense, Defendant asserts that it did not act in such a manner as to support a claim for punitive damages under Wyoming law.

22. As a further and separate defense, Defendant asserts that award of punitive damages against Defendant would violate the Due Process Clause of the Fourteenth Amendment of the United States Constitution and Article I, § 6 of the Wyoming Constitution.

23. Defendant reserves the right to assert additional affirmative defenses.

*WHEREFORE,* Georgia-Pacific prays that this Court dismiss the Complaint with prejudice; that Defendant be allowed its costs, including reasonably attorneys' fees, and for such other and further relief as this Court may deem proper.

HIRST APPLEGATE, LLP
LAW OFFICES
1720 CAREY AVENUE, SUITE 200
P.O. BOX 1083
CHEYENNE, WYOMING 82003-1083

DATED: _20_ January 2010.

GEORGIA-PACIFIC LLC, Defendant

BY: _____

**BILLIE LM ADDLEMAN, #6-3690**
**WHITNEY M. AGOPIAN, #7-4521**
OF HIRST APPLEGATE, LLP
Attorneys for Above-Named Defendant
1720 Carey Avenue, Suite 200
P.O. Box 1083
Cheyenne, WY 82003-1083
Phone: (307) 632-0541
Fax: (307) 632-4999
E-mail: baddleman@hirstapplegate.com
E-mail: wagopian@hirstapplegate.com

### *CERTIFICATE OF SERVICE*

      I certify the foregoing *Defendant Georgia Pacific LLC's Answer to Plaintiffs' First Amended Complaint* was served upon all parties to this action pursuant to the Federal Rules of Civil Procedure on *21* January 2010, and that copies were served as follows:

Steven G. Greenlee
BURG SIMPSON
ELDREDGE HERSH & JARDINE, PC
40 Inverness Drive East
Englewood, CO 80112
Telephone: (303) 792-5595
Facsimile: (303) 708-0527
Email: SGreenlee@burgsimpson.com

[ ✓ ] E-FILE
[  ] US MAIL
[  ] FED EX
[  ] FAX
[  ] HAND DELIVERED

*Norma J. Lubka*

OF HIRST APPLEGATE, LLP
Attorneys for Defendant Georgia-Pacific LLC

# *EXHIBIT D*

05/23/2006   13:22   404-2??-1621        GP MOTOR LOGIST?CS                    PAGE  02/19

# Talbot Transportation Division
## PO Box 2427 • Great Falls, MT 59403
## Phone 406/727-7111 • Facsimile 406/727-9219

# CERTIFICATE OF INSURANCE

| | |
|---|---|
| **INSURED** Phone (406) 245-4695 FAX (405) 896-3492 | **ISSUE DATE:** 5-24-05 **PRODUCER:** Rene C. LeVeaux |

Diversified Transfer and Storage, Inc. dba: DTS (DTSB)
1640 Monad Road
Billings, MT 59101-3200

THIS CERTIFICATE IS ISSUED AS A MATTER OF INFORMATION ONLY AND CONFERS NO RIGHTS UPON THE CERTIFICATE HOLDER. THIS CERTIFICATE DOES NOT AMEND, EXTEND OR ALTER THE COVERAGE AFFORDED BY THE POLICIES BELOW.

**COVERAGES**      Fed ID # 81-0455541        MC # MC215020

THE POLICIES OF INSURANCE LISTED BELOW HAVE BEEN ISSUED TO THE INSURED NAMED ABOVE FOR THE POLICY PERIOD INDICATED. NOTWITHSTANDING ANY REQUIREMENT, TERM OR CONDITION OF ANY CONTACT OR OTHER DOCUMENT WITH RESPECT TO WHICH THIS CERTIFICATE MAY BE ISSUED OR MAY PERTAIN, THE INSURANCE AFFORDED BY THE POLICIES DESCRIBED HEREIN IS SUBJECT TO ALL THE TERMS, EXCLUSIONS AND CONDITIONS OF SUCH POLICIES. AGGREGATE LIMITS SHOWN MAY HAVE BEEN REDUCED BY PAID CLAIMS.

| TYPE OF INSURANCE | COMPANY/POLICY # - EFFECTIVE & EXPIRATION DATES | LIMITS | |
|---|---|---|---|
| **AUTOMOBILE LIABILITY** ☐ Any Auto ☐ All Owned Autos ☒ Scheduled Autos ☒ Hired Autos ☒ Non-owned Autos ☐ Garage Liability ☐ Other | WILSHIRE INSURANCE COMPANY POLICY NUMBER: BA2494224 POLICY PERIOD FROM: 6/1/05  TO:  6/1/06 | COMBINED SINGLE LIMIT | $2,000,000 |
| | | BODILY INJURY (Per Person) | |
| | | BODILY INJURY (Per Accident) | |
| | | PROPERTY DAMAGE | |
| **GENERAL LIABILITY** ☒ Commercial General Liability ☐ Claims Made ☒ Occur ☐ Owner's & Contractors Prot. ☐ | WILSHIRE INSURANCE COMPANY POLICY NUMBER: BA2494224 POLICY PERIOD FROM: 6/1/05  TO:  6/1/06 | GENERAL AGGREGATE | $4,000,000 |
| | | PRODUCTS-COMP/OP AGG. | Included |
| | | PERSONAL & ADV. INJURY | $2,000,000 |
| | | EACH OCCURRENCE | $2,000,000 |
| | | FIRE DAMAGE (Any one fire) | $100,000 |
| | | MED. EXPENSE (Any one person) | $5,000 |
| **MOTOR TRUCK CARGO** | POLICY NUMBER: POLICY PERIOD FROM:  TO: | PER VEHICLE | |
| | | DEDUCTIBLE | |
| | | REEFER (IF APPLICABLE) | |
| **WORKERS COMPENSATION AND EMPLOYER'S LIABILITY** | POLICY NUMBER: POLICY PERIOD FROM:  TO: | STATUTORY LIMITS | |
| | | EACH ACCIDENT | |
| | | DISEASE-POLICY LIMIT | |
| | | DISEASE-EACH EMPLOYEE | |

DESCRIPTION OF OPERATIONS/LOCATIONS/VEHICLES/SPECIAL ITEMS

As per schedule of vehicles on file with the Company.

| | |
|---|---|
| **CERTIFICATE HOLDER**           Fax Number: (404) 654-1016 ☒ · If Checked, Certificate Holder is also named as Additional Insured GEORGIA PACIFIC CORPORATION BP TRANSPORTATION & LOGISTICS DIVISION P.O. BOX 105605 ATLANTA GA 30374 | **CANCELLATION** SHOULD ANY OF THE ABOVE DESCRIBED POLICIES BE CANCELLED BEFORE THE EXPIRATION DATE THEREOF, THE ISSUING COMPANY WILL ENDEAVOR TO MAIL  30   DAYS WRITTEN NOTICE TO THE CERTIFICATE HOLDER NAMED TO THE LEFT, BUT FAILURE TO DO SO SHALL IMPOSE NO OBLIGATION OR LIABILITY OF ANY KIND UPON THE INSURER, ITS AGENTS OR REPRESENTATIVES. **AUTHORIZED REPRESENTATIVE** |

**DISCLAIMER**
The Certificate of Insurance does not constitute a contract between the issuing insurer(s), authorized representative or producer, and the certificate holder, nor does it affirmatively or negatively amend, extend or alter the coverage afforded by the policies listed thereon.

05/23/2006   12:30PM  (GMT-05:00)

Georgia/Waltman
HA000176