**BILLIE LM ADDLEMAN**
**WHITNEY M. AGOPIAN**
Hirst Applegate, LLP
1720 Carey Avenue, Suite 200
P.O. Box 1083
Cheyenne, WY 82003-1083
Phone: (307) 632-0541
Fax: (307) 632-4999
baddleman@hirstapplegate.com
wagopian@hirstapplegate.com

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF WYOMING

| | | |
|---|---|---|
| GEORGIA-PACIFIC LLC, | } | |
| | } | |
| Plaintiffs, | } | |
| | } | |
| vs. | } | Civil No. 10-CV-0083-D |
| | } | |
| DIVERSIFIED TRANSFER AND | } | |
| STORAGE, INC. and WILSHIRE | } | |
| INSURANCE COMPANY, | } | |
| | } | |
| Defendant. | } | |

## *PLAINTIFF GEORGIA-PACIFIC LLC'S RESPONSE TO MOTION TO DISMISS*

Plaintiff Georgia-Pacific LLC responds to Defendant Diversified Transfer

and Storage, Inc.'s ("Diversified") Motion to Dismiss as follows:

## *INTRODUCTION*

This case arises out of a contract entered into by Plaintiff Georgia-Pacific and Defendant Diversified, whereupon Diversified would provide vehicles and drivers to pick up and transport materials from Georgia-Pacific. Defendant Wilshire Insurance Company, Inc. ("Wilshire") provided insurance coverage for Diversified, whereupon Georgia-Pacific was to be named an additional insured under Diversified's policy.

On May 5, 2006, Diversified arranged for one of its carriers, R. Waltman Trucking, to transport a load from the Georgia-Pacific facility in Lovell, Wyoming. Truck driver Richard Waltman fell from his truck while tarping his load at the Lovell facility. Subsquently, Richard Waltman and R. Waltman Trucking sued Georgia-Pacific for negligence. Pursuant to the terms of the contract, Georgia-Pacific tendered the defense and requested indemnity from Diversified. Diversified denied that tender and request.

Georgia-Pacific filed a declaratory judgment action against Defendants Diversified and Wilshire for their failure to defend and indemnify Georgia-Pacific. In response to the Complaint, Wilshire filed an Answer and Diversified filed a motion to dismiss.[1] Diversified asserts it does not owe indemnity or a defense to Georgia-Pacific since Waltman alleges Georgia-Pacific was negligent. Diversified goes onto assert, without any factual or legal basis, whatsoever, that Georgia-Pacific was negligent and caused the injuries

---

[1] Wilshire filed a notice of joinder in Diversified's motion to dismiss, but did not submit any legal or factual basis to dismiss the individual claims asserted against it.

to Waltman. Instead of providing any factual or legal basis, Diversified simply relies on Waltman's Complaint, which alleges only negligence against Georgia-Pacific. Apparently, Diversified did not, or refused to consider, the Answer of Georgia-Pacific which denied negligence, and affirmatively asserted that it did not owe a duty to Waltman, the employee of an independent contractor injured in the performance of his job. Further, Diversified ignored *Boswell v. CETCO*, 236 F.R.D. 682 (D. Wyo. 2006), where the United States District Court for the District of Wyoming specifically held that an owner/operator is not required to provide fall protection to an independent truck driver tarping his load.

Diversified's argument that it does not owe Georgia-Pacific indemnity for its own negligence fails if Georgia-Pacific did not owe a duty to Waltman and, therefore, was not negligent. Diversified asks this Court to ignore *Boswell* and Wyoming premises liability case law, and find as a matter of law that Georgia-Pacific was negligent. The Court cannot do that. However, the Court can find, applying *Boswell* and the litany of other Wyoming cases, that Georgia-Pacific did not owe a duty to Waltman and, therefore, was not negligent. Consequently, Diversified must indemnify Georgia-Pacific.

In addition to the duty to indemnify, Diversified has a separate independent duty to defend Georgia-Pacific, regardless of negligence. In denying the tender of defense, Diversified has breached that term of the contract. Further, Diversified was required to obtain appropriate levels of insurance and require its carriers to obtain appropriate levels of insurance. Diversified breached the contract when it failed to ensure R. Waltman Trucking

had the proper insurance.   Since discovery has not been conducted, it is unclear whether

Diversified obtained the appropriate levels of insurance for itself, naming Georgia-Pacific as

an additional insured of the policy, or if it misrepresented the same to Georgia-Pacific.

## *BACKGROUND*

On March 23, 1999, Georgia-Pacific, Corporation[2], entered into a Contract

Carriage and Brokerage Agreement ("Contract") with Diversified Transfer and Storage, Inc.

*See Exhibit A* attached to *Complaint*.   In that Contract, Diversified agreed to provide

transportation services for the shipment of products for Georgia-Pacific.   The Contract set

forth numerous provisions regarding the duty to defend, indemnify, and to obtain insurance.

In turn, Diversified sub-contracted with numerous independent trucking companies,

including R. Waltman Trucking, for the services required under the Contract.

On or about May 5, 2006, Diversified arranged for R. Waltman Trucking to

haul a shipment from the Georgia-Pacific Lovell, Wyoming facility.   On that day, Richard

Waltman, an independent contractor truck driver for R. Waltman Trucking, went to the

Lovell plant to pick up a shipment.   After being loaded in the plant loading area, Waltman

pulled his truck into an adjacent dirt parking lot to tarp his load.   Sometime during the

tarping of his load, Waltman fell off his truck injuring himself.

Georgia-Pacific tendered Waltman's claim to Diversified for indemnification

and defense under the terms of the Contract.   Diversified denied the tender.   Georgia-Pacific

---

[2] Georgia-Pacific Corporation is now known as Georgia-Pacific LLC.

filed suit asking this Court to determine the rights of the parties under the contract. Georgia-Pacific also brought claims against Wilshire Insurance for coverage under the Diversified insurance policy. Wilshire filed a joinder in the motion to dismiss, but has not provided any legal argument regarding the specific claims asserted against it.

## CONTRACT TERMS

With respect to the duty to indemnify and hold harmless and the separate independent duty to defend, the Contract provides:

> 7. (a)  <u>COMPANY agrees to assume all risks growing out of or occurring in the performance of this Agreement</u> by COMPANY, its agents or employees, or by Carriers with which COMPANY has contracted for movement of G-P's freight for:
>
> (i)      any and all injury or damage arising out of performance of this Agreement to (1) the property and premises of G-P, including cargo, (2) the property and premises of any other person, and (3) any property or equipment used or to be used or incorporated in the performance of this Agreement.
>
> (ii)     Any death or injury to any person or persons, whether or not employed by the COMPANY, however caused, occurring during the performance of this Agreement or upon the premises where this Agreement is being performed, except when caused by the negligence of G-P, its agents and employees.
>
> (b)     COMPANY shall also indemnify and hold harmless G-P, its officers, employees and customers, from and against all freight charges by Carriers.
>
> (c)     COMPANY further <u>covenants and agrees, and it hereby binds itself, at its own sole cost and expense, to defend, save harmless and indemnify G-P</u>, its officers, employees and customers, from and against any and all manner of suits, claims, judgments, demands, costs,

attorneys' fees, charges, debts, dues, liabilities, and payments of money of any sort or nature whatsoever on account of injury to or the death of persons or loss of or damage to property in any manner whatsoever, arising out of or predicated upon the operation of trucks of or by COMPANY, its agents, employees or Carriers with which COMPANY has contracted for movement of G-P's freight, or the conduct of the business of COMPANY, or the transportation and handling of goods by COMPANY, or by its agents, employees or Carriers with which COMPANY has contracted for movement of G-P's freight, whether pursuant to this Agreement or otherwise, <u>provided that this hold harmless and indemnity shall not apply to the extent that the action giving rise to the claim was caused by an act or omission of G-P or its agents, servants or employees.</u>

*See Contract* (emphasis added).

With respect to insurance requirements, the Contract provides:

8. COMPANY agrees to obtain, <u>and to ensure that its Carriers obtain,</u> insurance covering the risks incident to this Agreement, including Workers' Compensation and all other types of insurance as are currently required by 49 C.F.R. Part 387 or such future state, local or federal regulations as may be implemented from time to time. <u>COMPANY shall obtain such insurance **and** any additional insurance specified in Appendix A</u> in the amounts specified in Appendix A. All insurance policies are to be written by reliable, solvent, and reputable insurance companies.

*See Contract* (emphasis added).

In addition to the insurance requirements described in Section 8 of the Contract, Diversified and its Carriers were required to obtain insurance as specified in Appendix A. Appendix A provides, in pertinent part:

COMPANY agrees to obtain and maintain at its own cost or shall require and warrant that all Carriers (at Carriers' expense) obtain and maintain, during the term of this Agreement, insurance covering the risks incident to this Agreement with the following minimum limits:

    i.     Worker's Compensation with statutory limits;

    ii.    Employer's Liability with $100,000 per occurrence;

    iii.   Commercial General Liability insurance, covering bodily injuries and death and property damage, Independent Contractors, Personal Injury, Contractual with limits of $500,000 per occurrence and $1,000,000 in the General Aggregate; . . .

Specifically, Appendix A requires the procurement of "Workers' Compensation within statutory limits" and "Commercial General Liability insurance, covering bodily injuries and death and property damage, Independent Contractors, Personal Injury, Contractual with limits of $500,000 per occurrence and $1,000,000 in the General Aggregate." Further:

> The coverage afforded under any insurance policy obtained by COMPANY pursuant to this Appendix shall be primary coverage regardless of whether or not G-P has similar coverage. Evidence of insurance, including where applicable the fact that G-P has been named as an additional insured, shall be filed with G-P before COMPANY transports any freight for G-P, including renewals thereof.

*Appendix A of Contract.*

     *Exhibit D* to the Complaint is a Certificate of Insurance produced by Diversified showing Georgia-Pacific as an additional insured. However, Defendant Wilshire denies issuing that Certificate of Insurance and asserts that it is not bound by it. *Wilshire Answer* at ¶ 14. Georgia-Pacific has not obtained a copy of the Commercial General Liability Insurance Policy, but expects to obtain it in discovery.

## UNDISPUTED FACTS

On May 5, 2006, Richard Waltman, a long haul truck driver, arrived at the Georgia-Pacific Wallboard Plant in Lovell, Wyoming. *Deposition of Richard Waltman* at 67, 72. Waltman, an independent contractor, was driving truck for his son's company, R. Waltman Trucking. *See* Waltman *Complaint* at ¶8, attached as *Exhibit B* to the *Complaint*. After arriving, Waltman checked in at the front office where he picked up his picking ticket and bill of lading. *Id.* at 67, 72. Waltman parked his truck in the dirt parking lot adjacent to the loading area of the plant and checked in with the forklift operator. *Id.* at 68, 70. Waltman provided the forklift operator with his picking ticket and bill of lading. *Id.* In the meantime, Waltman waited for his turn to be loaded. *Id.* at 72-3.

When it was his turn, Waltman backed his truck into one of the three loading bays to be loaded. *Id.* at 73. After his truck was loaded, Waltman pulled his truck out of the loading area into a dirt parking lot adjacent to the loading area to tarp his truck. *Id.* at 77. The dirt parking lot, also known as the "tarping area," is a vacant area with no structures. Waltman testified that tarping is part of his job as a truck driver. *Id.* at 29-31. Waltman owned the tarps, straps, and cords used in tarping his load. *Id.* at 32, 33, 39. In fact, Waltman carries his own ladder with him for tarping. *Id.* at 48. In the words of Richard Waltman, "[i]f there's no fall protection, then you have to use a ladder or something to climb up on." *Id.* at 48. No one from Georgia-Pacific helped, supervised, assisted, or observed Waltman tarping his load. *Id.* at 30-1, 128. Further, as Georgia-Pacific is not in the

business of driving trucks, no one told Waltman how to tarp his load. *Id.* at 128. No one at Georgia-Pacific provided Waltman with any training or equipment. *Id.* at 128.

While tarping his truck, Waltman fell and seriously injured himself. *See* Waltman *Complaint* at ¶ 23. There were no witnesses to the incident. Sometime later that afternoon Waltman was found in the cab of his truck with significant injuries.

The Georgia-Pacific facility does not provide fall protection for truck drivers. *Id.* at 25, 29-30. Waltman had picked up loads from the Georgia-Pacific facility on at least one other occasion. *Id.* at 25. He knew that drivers were required to tarp their loads before leaving the facility. *Id.* at 30, 42. He knew that the facility did not provide fall protection. *Id.* at 25, 28, 42. This is not uncommon. *Id.* at 47. According to Robert Waltman, owner of R. Waltman Trucking, a number of facilities in Wyoming do not provide fall protection. *Deposition of Robert Waltman*, at 69. In fact, there were two facilities that R. Waltman Trucking went to on a regular basis that did not provide fall protection for tarping. *Id.* at 71. During his deposition, Robert Waltman identified facilities in Piedmont, South Dakota; Denver, Colorado; Lovell, and Cheyenne, Wyoming; as facilities that did not provide fall protection for truckers tarping their loads. *Id.* at 70 - 76. The owner of R. Waltman Trucking tarped loads without fall protection on a number of occasions. *Id.* at 75.

R. Waltman Trucking did not have insurance that provided coverage for Richard Waltman's injuries incurred while tarping. *Robert Waltman Depo.* at 86-88, 117,

118. R. Waltman Trucking did not provide worker's compensation coverage to Richard Waltman. *Id.* at 88.

# ARGUMENT

A.          **Standard of Review**

The standard of review in considering a Rule 12(b)(6) motion to dismiss is whether "[a]ccepting the complaint's allegations as true, standing alone, is legally sufficient to state a claim upon which relief can be granted." *E.F.W. v. St. Stephen's Indian High School*, 264 F.3d 1297, 1303 (10th Cir. 2001). For the purposes of a motion to dismiss, the Court must accept as true the allegations contained in the Complaint, including the allegation that "Mr. Waltman's injuries and damages were caused at least in part by his own negligence and/or that of Defendant Diversified." *Complaint* at ¶ 4. Further, the Court must accept as true Georgia-Pacific's denial of negligence. *See* Georgia-Pacific's *Answer* at ¶¶ 7, 14, attached as *Exhibit C* to the *Complaint*.

Motions to dismiss are usually confined to the pleadings. *Mangels v. Pena*, 789 F.2d 836 (10th Cir. 1986). But, when a party includes depositions and other materials pertinent to resolution of the motion, the court may convert a motion to dismiss to a motion for summary judgment. *Price v. Philpot,* 420 F.3d 1158, 1167 (10th Cir. 2005). In this case, Plaintiff has submitted deposition testimony in opposition to the motion to dismiss and will be filing a motion for partial summary judgment. Thus, the Court should convert the motion to dismiss to a motion for partial summary judgment. When such a conversion occurs, the

district court "must provide the parties with notice so that all factual allegations may be met with countervailing evidence." *Burnham v. Humphrey Hospitality Reit Trust, Inc.*, 403 F.3d 709, 713 (10th Cir. 2005). In this case, Defendant Diversified must respond to Plaintiff's separate motion for partial summary judgment. Consequently, there is no reason for the Court not to consider the deposition testimony submitted.

Pursuant to its terms, the Contract language must be interpreted under Georgia law. That is not the case with respect to tort law. In a diversity case, a court must apply the substantive law of the forum state, including its choice of law rules. *R & G Elec., Inc. v. Devon Energy Corp.*, 2002 U.S. App. LEXIS 26127 at *6 (10th Cir. 2002). Wyoming, the forum state, applies the doctrine of *lex loci delicti*, or the law of the place where the tort was committed, as the law that governs and is to be applied in the substantive phase. *Ball v. Ball*, 269 P.2d 302, 304 (Wyo. 1954).[3] This rule makes sense. To find otherwise, would require a Wyoming owner/operator to comply with duties imposed by states other than Wyoming.

B.     **The Court must deny Diversified's Motion to Dismiss since it cannot find Georgia-Pacific negligent.**

Diversified's motion to dismiss fails because the Court cannot find as a matter of law that Georgia-Pacific was negligent and caused the injuries to Richard

---

[3] The Georgia Supreme Court also follows the rule of *lex loci delicti* and even cited *Ball* when deciding that Georgia should continue to adhere to the rule of *lex loci delicti*. *Dowis v. Mud Slingers, Inc.*, 279 Ga. 808, 809-11, n.1, 621 S.E.2d 413, 414-16 (Ga. 2005)(stating that because the doctrine of *lex loci delicti* has applied to tort actions in Georgia for nearly 100 years, this will continue to be the law until a better approach is found).

Waltman. First, under *Boswell* and Wyoming premises liability case law, Georgia-Pacific did not owe a duty to Waltman. Second, Diversified presents the Court with no legal or factual basis for the Court to find Georgia-Pacific was negligent. The Court cannot find that Georgia-Pacific was negligent simply because Richard Waltman and Diversified says it was.

### i.    Duty to Indemnify

Under the terms of the Contract, Diversified, "at its own sole cost and expense," must "defend, save harmless and indemnify" Georgia-Pacific for all claims "arising out of or predicated upon the operation of trucks" by Diversified or its Carriers, like R. Waltman Trucking. The Contract does provide that Diversified is not required to indemnify and hold harmless for damages caused by Georgia-Pacific's own negligence. This is in harmony with Georgia law where there is no duty to indemnify for the indemnitee's own acts of negligence absent clear and unequivocal contractual terms. *Ryder Integrated Logistics, Inc. v. BellSouth Telecommunications, Inc.*, 642 S.E.2d 695, 697 (Ga. 2007). However, since Georgia-Pacific did not owe a duty to Waltman and, therefore, cannot be found negligent, Diverisified must indemnify and hold harmless Georgia-Pacific.

In Wyoming, a legal duty of care is a predicate of negligence. As shown below, Georgia-Pacific owed no duty of care to Waltman. Absent such a duty, Georgia-Pacific cannot be found negligent, and Georgia-Pacific is entitled to indemnity. *Hittel v. WOTCO, Inc.*, 996 P.2d 673, 678 (Wyo. 2000); *Franks v. Indep. Prod. Co.*, 96 P.3d 484, 492 (Wyo. 2004); *Boswell v. CETCO*, 236 F.R.D. 682, 691-93 (D. Wyo. 2006); *Hjelle v.*

HIRST APPLEGATE, LLP
LAW OFFICES
1720 CAREY AVENUE, SUITE 200
P.O. BOX 1083
CHEYENNE, WYOMING 82003-1083

*Mid-State Consultants, Inc.*, 394 F.3d 873, 877 (10th Cir. 2005)(applying Wyoming law); *Dow v. Louisiana Land & Exploration Co.*, 77 F.3d 342, 344 (10th Cir. 1996) (applying Wyoming law).

Diversified relies on, *Georgia-Pacific v. Swift*, a mid-level Tennessee appellate court's application of Georgia law in support of its motion to dismiss. For whatever reason, the Tennessee appellate court decided as a matter of law that the negligence of Georgia-Pacific was undisputed. That is not the case here. In response to Waltman's *Complaint*, Georgia-Pacific has denied negligence and affirmatively asserted that it was not negligent and did not owe a duty to Waltman. *See* Georgia-Pacific's *Answer* at ¶ 7, 14. In addition, Defendant Georgia-Pacific will be filing a motion for partial summary judgment addressing the lack of duty to Waltman and the duty of Diversified to indemnify, defend and hold harmless. In applying the undisputed facts of this case, it is clear that Waltman was the employee of an independent contractor injured in the performance of his job. As set forth more fully below and in its motion for partial summary judgment, Georgia-Pacific was not negligent and is entitled to indemnity.

<blockquote>

a. **Georgia-Pacific did not owe Waltman a duty and thus is not negligent.**

</blockquote>

Wyoming law provides that a land owner does not owe the employee of an independent contractor any duty, even as a business invitee, unless:

> 1. the independent contractor's work involves ultrahazardous activities;

2.    the owner exercises pervasive control over the independent
contractor's work; or

3.    the owner assumes affirmative duties with respect to safety.

*Hittel v. WOTCO, Inc.*, 996 P.2d 673, 678 (Wyo. 2000); *Franks v. Indep. Prod. Co.*, 96 P.3d

484, 492 (Wyo. 2004). In this case, the undisputed evidence is that Georgia-Pacific did not

control Waltman's work nor did it assume any affirmative duty when it came to safety.

Wyoming has adopted the rule that a worksite owner "is not obligated to

protect the employee of an independent contractor from hazards which are incidental to, or

part of, the very work the contractor was hired to perform." *Hjelle*, 394 F.3d at 877 (*quoting

Jones v. Chevron*, 718 P.2d 890, 894 (Wyo. 1986)). In fact, the owner "has no duty to either

furnish a safe place to work or to give warning of danger." *Jones v. Chevron*, 718 P.2d at

894 n.2. Accordingly, companies such as Georgia-Pacific generally owe no duty of care to

an independent contractor's employees. *Abraham v. Andrews Trucking Co.*, 893 P.2d 1156,

1157 (Wyo. 1995); *Ramsey v. Pacific Power & Light*, 792 P.2d 1385, 1386 (Wyo. 1990).

The owner is liable for injuries to a contractor's employees if and only if it exercised a

"controlling and pervasive role" in the work performed by the contractor or assumed

affirmative duties with respect to safety. *Hjelle*, 394 F.3d at 877-78 (*quoting Franks v.

Independent Prod. Co.*, 96 P.3d 484, 490 (Wyo. 2004)); *Dow,* 77 F.3d at 344; *Cockburn v.

Terra Resources*, 794 P.2d 1334, 1342 (Wyo. 1990). Absent such control, the owner owes

no legal duty to the contractor's employees.

Wyoming law imposes no duty on Georgia-Pacific to protect Waltman from "hazards which are incidental to, or part of, the very work [R. Waltman Trucking] was hired to perform." *Hjelle*, 394 F.3d at 877. This case is identical to *Boswell v. CETCO*, 236 F.R.D. 682 (D. Wyo. 2006), where the United States District Court for the District of Wyoming held an owner/operator does not owe a duty of care to an independent long haul truck driver. In that case, a long haul truck driver fell injuring himself while tarping his load at the CETCO plant in Lovell, Wyoming. In granting the owner/operator summary judgment the Court rejected Boswell's argument that CETCO had a duty to provide him with fall protection. *Id.* at 693.

In this case, the undisputed material facts show that (1) Waltman was injured by a hazard that was part of the very work Diversified was hired to perform; (2) Georgia-Pacific exercised no control over the manner in which Waltman performed the work that resulted in his injury; and (3) Georgia-Pacific did not assume affirmative duties with respect to safety. Further, no causal link exists between Waltman's accident and any general control Georgia-Pacific may have exercised over the work site. As a matter of law, Georgia-Pacific assumed no legal duty to Waltman, and the Court can find as a matter of law that Georgia-Pacific was not negligent. Consequently, Diversified owes indemnity to Georgia-Pacific.

ii.     ***Regardless of Negligence, Diversified has a Duty to Defend to Georgia-Pacific.***

In Georgia, like many states, the duty to defend and the duty to indemnify are separate and independent obligations arising from terms of the contract. *Nationwide Mut. Fire Ins., Co. v. Somers*, 591 S.E.2d 430, 433 (Ga. App. 2003)(citing *City of Atlanta v. St. Paul Fire & Ins. Co.*, 498 S.E.2d 782 (Ga. App. 1998); *Allstate Ins. Co. v. Harkleroad*, 2010 U.S. Dist. LEXIS 51240 (S.D. Ga. May 24, 2010); *see also Elan Pharm. Research Corp. v. Employers Ins. of Wausau*, 144 F.3d 1372, 1375 (11th Cir. 1998)(acknowledging distinction between the two duties). Further, while the Georgia Supreme Court in *Ryder Integrated Logistics, Inc. v. BellSouth Telecommunications, Inc.*, 642 S.E.2d 695, 697 (Ga. 2007), has clearly stated that there is no duty to indemnify for the indemnitee's own acts of negligence absent clear and unequivocal contractual terms, Georgia has not applied the same restrictions to the duty to defend. Under the terms of the Contract, Diversified must defend claims arising out of the operation of trucks by Diversified or its Carriers.

With respect to the duty to defend, the Contract provides:

> (c)     COMPANY further <u>covenants and agrees, and it hereby binds itself, at its own sole cost and expense, **to defend**, save harmless and indemnify G-P</u>, its officers, employees and customers, from and against any and all manner of suits, claims, judgments, demands, costs, attorneys' fees, charges, debts, dues, liabilities, and payments of money of any sort or nature whatsoever on account of injury to or the death of persons or loss of or damage to property in any manner whatsoever, <u>arising out of or predicated upon the operation of trucks of or by COMPANY</u>, its agents, employees or Carriers with which COMPANY has contracted for movement of G-P's freight, or the conduct of the business of COMPANY, or the transportation and handling of goods by COMPANY, or by its agents, employees or Carriers with which COMPANY has contracted for movement of G-

P's freight, whether pursuant to this Agreement or otherwise, <u>provided</u> <u>that this **hold harmless and indemnity** shall not apply to the extent</u> <u>that the action giving rise to the claim was caused by an act or</u> <u>omission of G-P or its agents, servants or employees</u>.

The duty to defend is separate and apart from the duty to indemnify. While the Contract provides "that this <u>hold harmless</u> and <u>indemnity</u> shall not apply to the extent that the action giving rise to the claim was caused by an act or omission of G-P or its agents, servants or employees", no such qualification applies to the <u>duty to defend</u>. Consequently, Diversified must accept the defense and defend Georgia-Pacific even if it was negligent.

Based on the plain language of the contract, Diversified must defend Georgia-Pacific for the claims brought by Richard Waltman since they arise from the work called for under the Contract.

### iii.    *Failure to Obtain Appropriate Insurance*

Diversified was required to provide insurance coverage for Georgia-Pacific pursuant to the insurance clause of the parties' Contract. The insurance clause provides that Diversified will maintain "insurance covering the risks incident to this Agreement." Diversified argues that the insurance coverage agreed upon in the Contract is limited to coverage for incidents specifically spelled out in the indemnity provision of the Contract. The Court will find no such qualification or restriction within the insurance requirements or the entirety of the Contract.[4]

---

[4] The insurance provision of the Contract does not reference the indemnity clause of the Contract in any way.

The Georgia Supreme Court has recognized that the contractual requirement to obtain insurance is a separate obligation from the duty to defend. *Ryder Integrated Logistics, Inc., v. BellSouth Telecommunications, Inc.*, 642 S.E.2d 695, 698 (Ga. 2007) (trucking company "was obligated under the insurance provision to provide an insurance policy for BellSouth with 'limits of at least $1,000,000'"). In *Ryder*, the issue was whether Ryder owed BellSouth indemnity <u>above</u> the $1,000,000 insurance policy which required BellSouth to be named as an additional insured. *Ryder*, 642 S.E.2d at 697-98. BellSouth sued for the excess in indemnity, and the court held that although the general liability insurance policy payment was required up to $1,000,000, the language of the parties' agreement did not require Ryder to pay the excess based upon any theory of indemnity. *Id.* at 698. The *Ryder* court specifically held:

> BellSouth was an included insured on the $1,000,000 policy, as Ryder was obligated under its contract to provide BellSouth liability insurance . . . . What Ryder did agree to do, under the contract's **enforceable** insurance provision, is assume the responsibility for procuring a CGL insurance policy with a limit of at least $1,000,000, a duty that Ryder met.

*Id.* at 697-98 (emphasis added).

In this case, it is unclear whether Diversified met that duty. Discovery will reveal whether or not Diversified did. If Diversified did not fulfill its contractual obligation, Georgia-Pacific will seek reimbursement from Diversified within the $1,000,000 of coverage Diversified was obligated to provide pursuant to the parties' Contract.

Plaintiff relies on *Service Merchandise Co. v. Hunter Fan Co.*, 617 S.E.2d 695 (Ga. App. 2005) and *Georgia-Pacific v. Swift*, 2008 Tenn. App. LEXIS 572 (Tenn. App. 2008) for the proposition that a party is not required to provide insurance for an indemnitee's own negligence.  Both of these cases conflict with the Georgia Supreme Court's decision in *Ryder*, where the court held that a party must procure insurance if required by the contract.  The *Service Merchandise* decision by a lower Georgia appellate court was entered two years before the *Ryder* decision.[5]  In applying Georgia law in this case, the Court should look to the Georgia Supreme Court not mid-level appellate decisions from Tennessee and Georgia.  As recognized by the Georgia Supreme Court in *Ryder*, a party is required to procure insurance if it contracted to do so.

In this case, Diversified <u>thinks</u> it obtained the required insurance under the Contract, including listing Georgia-Pacific as an additional insured as shown by the Talbot Certificate of Insurance. *See Diversified's Memorandum in Support of Motion to Dismiss* at p.4 ("Whether Talbot actually added G-P to the policy is not known by [Diversified]").  Wilshire denies issuing the Talbot Certificate of Insurance showing Georgia-Pacific as an additional insured.  Discovery will reveal whether or not Diversified complied with the terms of the Contract.  If it failed to so, Diversified breached that contract and Georgia-Pacific has incurred damages as a result.

---

[5] The *Service Merchandise* case is inapposite to this case.  In that case, the contractual language was different and Service Merchandise was seeking indemnification from a party, not the party's liability insurer. *Service Merchandise*, 617 S.E.2d at 240-41.

### iv.    *Failure to Ensure R. Waltman Trucking Obtained Appropriate Insurance*

Pursuant to the terms of the Contract, Diversified was to "ensure that [R. Waltman Trucking] obtain, insurance covering the risks incident to this Agreement, including Workers' Compensation." Diversified breached this contractual requirement. R. Waltman Trucking did not have insurance in place providing coverage for Richard Waltman's injuries. Further, R. Waltman Trucking did not obtain worker's compensation coverage for Richard Waltman.

The Contract goes onto state that the "COMPANY shall obtain such insurance and any additional insurance specified in Appendix A in the amounts specified in Appendix A." (emphasis added).

> 8.    COMPANY agrees to obtain, and to ensure that its Carriers obtain, insurance covering the risks incident to this Agreement, including Workers' Compensation and all other types of insurance as are currently required by 49 C.F.R. Part 387 or such future state, local or federal regulations as may be implemented from time to time. COMPANY shall obtain such insurance and any additional insurance specified in Appendix A in the amounts specified in Appendix A. All insurance policies are to be written by reliable, solvent, and reputable insurance companies.

Diversified breached its contract in failing to ensure the appropriate insurance was in place. Georgia-Pacific has been damaged as a result of Diversified's breach in the form of fees and costs incurred in defending the Waltman claims. If this insurance was properly obtained, Richard Waltman could have brought his claims against R. Waltman Trucking, which would have owed a duty of care to its employee, instead of Georgia-Pacific, which does not owe

such a duty.  At a minimum, Richard Waltman would have worker's compensation coverage for his medical bills along with disability compensation.

## *CONCLUSION*

As described above, there are primarily three distinct issues before the Court:

1.   The duty to indemnify owed by Diversified to Georgia-Pacific under the indemnity provision of the Contract;

2.   The duty to defend Diversified regardless of negligence;

3.   The duty of Diversified to ensure R. Waltman Trucking secured appropriate insurance coverage.

Most significantly, Diversified has failed to present this Court with any factual or legal basis to find Georgia-Pacific was negligent.  The Court cannot make that finding and, thus, the motion to dismiss fails.  Diversified must defend Georgia-Pacific under the terms of the contract.  Further, Diversified had independent obligations to obtain the required insurance and ensure R. Waltman Trucking did the same.

*WHEREFORE*, Georgia-Pacific LLC respectfully requests the Court to deny the Motion to Dismiss.

Dated:  6 July 2010.

GEORGIA-PACIFIC LLC, Plaintiff

BY:

**BILLIE LM ADDLEMAN, #6-3690**
**WHITNEY M. AGOPIAN, #7-4521**
OF HIRST APPLEGATE, LLP
Attorneys for Plaintiff
1720 Carey Avenue, Suite 200
P.O. Box 1083
Cheyenne, WY  82003-1083
Phone: (307) 632-0541
Fax: (307) 632-4999
baddleman@hirstapplegate.com
wagopian@hirstapplegate.com

## CERTIFICATE OF SERVICE

I certify the foregoing *Plaintiff's Response to Motion to Dismiss* was served upon all parties to this action pursuant to the Federal Rules of Civil Procedure on 6 July 2010, and that copies were served as follows:

Amanda R. Lenning                                          [ ✓ ] E-FILE
Patten, Peterman, Bekkedahl & Green, PLLC                  [ ] US MAIL
2817 Second Avenue North, Suite 300                        [ ] FED EX
Billings, MT 59101                                         [ ] FAX
T: 406-252-8500                                            [ ] HAND DELIVERED
F: 406-294-9500
Email: alenning@ppbglaw.com
*Attorney for Diversified Transfer & Storage*

Curtis B. Buchhammer                                       [ ✓ ] E-FILE
Buchhammer & Kehl, P.C.                                    [ ] US MAIL
1821 Logan Avenue                                          [ ] FED EX
PO Box 568                                                 [ ] FAX
Cheyenne, WY 82003-0568                                    [ ] HAND DELIVERED
T: 307-634-2184
F: 307-634-2199
Email: cbb@wyoming.com
*Attorney for Wilshire Insurance Company*

Christian M. Shreeau

OF HIRST APPLEGATE, LLP
Attorneys for Plaintiff

**HIRST APPLEGATE, LLP**
LAW OFFICES
1720 CAREY AVENUE, SUITE 200
P.O. BOX 1083
CHEYENNE, WYOMING 82003-1083

- 23 -