**BILLIE LM ADDLEMAN**
**WHITNEY M. AGOPIAN**
Hirst Applegate, LLP
1720 Carey Avenue, Suite 200
P.O. Box 1083
Cheyenne, WY 82003-1083
Phone: (307) 632-0541
Fax: (307) 632-4999
baddleman@hirstapplegate.com
wagopian@hirstapplegate.com

### UNITED STATES DISTRICT COURT

### FOR THE DISTRICT OF WYOMING

| | | |
|---|---|---|
| GEORGIA-PACIFIC LLC,<br><br>　　　　　　Plaintiffs,<br><br>　　vs.<br><br><br>DIVERSIFIED TRANSFER AND STORAGE, INC. and WILSHIRE INSURANCE COMPANY,<br><br>　　　　　　Defendant. | }<br>}<br>}<br>}<br>}<br>}<br>}<br>}<br>}<br>}<br>}<br>}<br>} | Civil No. 10-CV-0083-D |

## *PLAINTIFF GEORGIA-PACIFIC LLC'S MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT*

Plaintiff Georgia-Pacific LLC ("Georgia-Pacific") moves the Court for partial summary judgment as a matter of law on Claims I (Breach of Contract), III (Breach of Contract), V (Declaratory Judgment) and VII (Specific Performance) against Diversified Transfer and Storage, Inc. ("Diversified"). Diversified has breached the terms of the parties'

Contract in failing to indemnify and defend Georgia-Pacific for the claims asserted against it by Richard Waltman. Diversified further breached the terms of the Contract by failing to ensure that its carrier, R. Waltman Trucking, obtained appropriate insurance.

## *INTRODUCTION*

Georgia-Pacific filed a declaratory judgment action against Defendants Diversified and Wilshire Insurance Company ("Wilshire") for their failure to defend and indemnify Georgia-Pacific. Diversified has denied the tender of defense and request for indemnity on the basis that it does not owe a duty to defend and indemnify since the Waltman's claim arises from Georgia-Pacific's own negligence. Diversified relies solely on the allegations of Richard Waltman in his *Complaint*. Diversified's conclusion is simply wrong since Georgia-Pacific did not owe a duty to Richard Waltman, the employee of an independent contractor. In Wyoming, to prove negligence a party must show (1) duty, (2) breach, (3) causation and (4) damages. If any one of those elements are missing, the claim of negligence fails. In this case, Georgia-Pacific, an owner/operator, did not owe a duty to Richard Waltman who was injured performing his job. *See Boswell v. CETCO*, 236 F.R.D. 682, 691-93 (D. Wyo. 2006)(United States District Court for the District of Wyoming specifically held that a owner/operator is not required to provide fall protection to an independent truck driver tarping his load). Since Georgia-Pacific was not negligent, Diversified must defend and indemnify Georgia-Pacific.

Pursuant to the terms of the parties' Contract, Diversified was required to ensure its carriers, which included R. Waltman Trucking, obtained appropriate levels of insurance, including a Commercial General Liability policy and Workers' Compensation coverage for drivers.  Diversified breached the Contract when it failed to ensure that R. Waltman Trucking had the required insurance.

Georgia-Pacific has incurred damages in the amount of costs and legal fees in defending the lawsuit brought by Richard Waltman.  Further, Georgia-Pacific will continue to incur fees in defending that action.

## BACKGROUND

On March 23, 1999, Georgia-Pacific, Corporation[1], entered into a Contract Carriage and Brokerage Agreement ("Contract") with Diversified Transfer and Storage, Inc. *See Exhibit A* attached to *Complaint*.  In that Contract, Diversified agreed to provide transportation services for the shipment of products for Georgia-Pacific.  The Contract set forth numerous provisions regarding the duty to defend, indemnify, and to obtain insurance. In turn, Diversified sub-contracted with numerous independent trucking companies, including R. Waltman Trucking, for the services required under the Contract.

On or about May 5, 2006, Diversified arranged for R. Waltman Trucking to haul a shipment from the Georgia-Pacific Lovell, Wyoming facility.  On that day, Richard Waltman, an independent contractor truck driver for R. Waltman Trucking, went to the

---

[1] Georgia-Pacific, Corporation is now known as Georgia-Pacific LLC.

Lovell plant to pick up a shipment. After being loaded in the plant loading area, Waltman pulled his truck into an adjacent dirt parking lot to tarp his load. Sometime during the tarping of his load, Waltman fell off his truck injuring himself.

Georgia-Pacific tendered Waltman's claim to Diversified for indemnification and defense under the terms of the Contract. Diversified denied the tender. Georgia-Pacific filed suit asking this Court to determine the rights of the parties under the Contract. Georgia-Pacific also brought claims against Wilshire for coverage under the policy.

## *CONTRACT TERMS*

The Contract provides:

> 7. (a) <u>COMPANY agrees to assume all risks growing out of or occurring in the performance of this Agreement</u> by COMPANY, its agents or employees, or by Carriers with which COMPANY has contracted for movement of G-P's freight for:
>
> (i)  any and all injury or damage arising out of performance of this Agreement to (1) the property and premises of G-P, including cargo, (2) the property and premises of any other person, and (3) any property or equipment used or to be used or incorporated in the performance of this Agreement.
>
> (ii)  Any death or injury to any person or persons, whether or not employed by the COMPANY, however caused, occurring during the performance of this Agreement or upon the premises where this Agreement is being performed, except when caused by the negligence of G-P, its agents and employees.
>
> (b)  COMPANY shall also indemnify and hold harmless G-P, its officers, employees and customers, from and against all freight charges by Carriers.

(c)    COMPANY further <u>covenants and agrees, and it hereby binds itself, at its own sole cost and expense, to defend, save harmless and indemnify G-P</u>, its officers, employees and customers, from and against any and all manner of suits, claims, judgments, demands, costs, attorneys' fees, charges, debts, dues, liabilities, and payments of money of any sort or nature whatsoever on account of injury to or the death of persons or loss of or damage to property in any manner whatsoever, arising out of or predicated upon the operation of trucks of or by COMPANY, its agents, employees or Carriers with which COMPANY has contracted for movement of G-P's freight, or the conduct of the business of COMPANY, or the transportation and handling of goods by COMPANY, or by its agents, employees or Carriers with which COMPANY has contracted for movement of G-P's freight, whether pursuant to this Agreement or otherwise, <u>provided that this hold harmless and indemnity shall not apply to the extent that the action giving rise to the claim was caused by an act or omission of G-P or its agents, servants or employees</u>.

*See Contract* (emphasis added).

With respect to insurance requirements, the Contract provides:

8.    COMPANY agrees to obtain, <u>and to ensure that its Carriers obtain</u>, insurance covering the risks incident to this Agreement, including Workers' Compensation and all other types of insurance as are currently required by 49 C.F.R. Part 387 or such future state, local or federal regulations as may be implemented from time to time. <u>COMPANY shall obtain such insurance **and** any additional insurance specified in Appendix A</u> in the amounts specified in Appendix A. All insurance policies are to be written by reliable, solvent, and reputable insurance companies.

*See Contract* (emphasis added).

In addition to the insurance requirements described in Section 8 of the Contract, Diversified and its Carriers were required to obtain insurance as specified in Appendix A. Appendix A provides, in pertinent part:

COMPANY agrees to obtain and maintain at its own cost or shall require and warrant that all Carriers (at Carriers' expense) obtain and maintain, during the term of this Agreement, insurance covering the risks incident to this Agreement with the following minimum limits:

 i.  Workers' Compensation with statutory limits;
 ii.  Employer's Liability with $100,000 per occurrence;
 iii. Commercial General Liability insurance, covering bodily injuries and death and property damage, Independent Contractors, Personal Injury, Contractual with limits of $500,000 per occurrence and $1,000,000 in the General Aggregate; . . .

Specifically, Appendix A requires the procurement of "Workers' Compensation with statutory limits" and "Commercial General Liability insurance, covering bodily injuries and death and property damage, Independent Contractors, Personal Injury, Contractual with limits of $500,000 per occurrence and $1,000,000 in the General Aggregate." Further:

The coverage afforded under any insurance policy obtained by COMPANY pursuant to this Appendix shall be primary coverage regardless of whether or not G-P has similar coverage.  Evidence of insurance, including where applicable the fact that G-P has been named as an additional insured, shall be filed with G-P before COMPANY transports any freight for G-P, including renewals thereof.

*Appendix A of Contract.*

## UNDISPUTED FACTS

On May 5, 2006, Richard Waltman, a long haul truck driver, arrived at the Georgia-Pacific Wallboard Plant in Lovell, Wyoming. *See Deposition of Richard Waltman* at 67, 72.  Waltman, an independent contractor, was driving truck for his son's company, R.

Waltman Trucking. *See* Waltman *Complaint* at ¶8. After arriving, Waltman checked in at the front office where he picked up his picking ticket and bill of lading. *Id.* at 67, 72. Waltman parked his truck in the dirt parking lot adjacent to the loading area of the plant and checked in with the forklift operator. *Id.* at 68, 70. Waltman provided the forklift operator with his picking ticket and bill of lading. *Id.* In the meantime, Waltman waited for his turn to be loaded. *Id.* at 72-3.

When it was his turn, Waltman backed his truck into one of the three loading bays to be loaded. *Id.* at 73. After his truck was loaded, Waltman pulled his truck out of the loading area into a dirt parking lot adjacent to the loading area to tarp his truck. *Id.* at 77. The dirt parking lot, also known as the "tarping area," is a vacant area with no structures. *See Richard Waltman Depo. Exh.* 10; *Id.* at 69, 77. Waltman testified that tarping is part of his job as a truck driver. *Id.* at 29-31. Waltman owned the tarps, straps, and cords used in tarping his load. *Id.* at 32, 33, 39. In fact, Waltman carries his own ladder with him for tarping. *Id.* at 48. In the words of Richard Waltman, "[i]f there's no fall protection, then you have to use a ladder or something to climb up on." *Id.* at 48. No one from Georgia-Pacific helped, supervised, assisted, or observed Waltman tarping his load. *Id.* at 30-1, 128. Further, as Georgia-Pacific is not in the business of driving trucks, no one told Waltman how to tarp his load. *Id.* at 128. No one at Georgia-Pacific provided Waltman with any training or equipment. *Id.*

HIRST APPLEGATE, LLP
LAW OFFICES
1720 CAREY AVENUE, SUITE 200
P.O. BOX 1083
CHEYENNE, WYOMING 82003-1083

While tarping his truck, Waltman fell and seriously injured himself. *See* Waltman *Complaint* at ¶ 23. There were no witnesses to the incident. Sometime later that afternoon Waltman was found in the cab of his truck with significant injuries.

The Georgia-Pacific facility does not provide fall protection for truck drivers. *Id.* at 25, 29-30. Waltman had picked up loads from the Georgia-Pacific facility on at least one other occasion. *Id.* at 25. He knew that drivers were required to tarp their loads before leaving the facility. *Id.* at 30, 42. He knew that the facility did not provide fall protection. *Id.* at 25, 28, 42. This is not uncommon. *Id.* at 47. According to Robert Waltman, owner of R. Waltman Trucking, a number of facilities in Wyoming do not provide fall protection. *Deposition of Robert Waltman*, at 69. In fact, there were two facilities that R. Waltman Trucking went to on a regular basis that did not provide fall protection for tarping. *Id.* at 71. During his deposition, Robert Waltman identified facilities in Piedmont, South Dakota; Denver, Colorado; and Cheyenne and Lovell, Wyoming; as facilities that did not provide fall protection for truckers tarping their loads. *Id.* at 70 - 76. Robert Waltman tarped loads without fall protection on a number of occasions. *Id.* at 75.

R. Waltman Trucking did not have insurance that provided coverage for Richard Waltman's injuries incurred while tarping. *Robert Waltman Depo.* at 86-88, 117, 118. R. Waltman Trucking did not provide worker's compensation coverage to Richard Waltman. *Id.* at 88.

# *ARGUMENT*

## A.        Standard of Review

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there are no genuine issues as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Once the moving party meets its initial burden of demonstrating the absence of evidence to support the nonmoving party's claims, the nonmoving party must come forward with admissible evidence establishing the existence of each essential element of the claim on which it bears the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).

## B.        Choice of Law

Pursuant to its terms, the Contract language must be interpreted under Georgia law. That is not the case with respect to tort law. In a diversity case, a court must apply the substantive law of the forum state, including its choice of law rules. *R & G Elec., Inc. v. Devon Energy Corp.*, 2002 U.S. App. LEXIS 26127 at *6 (10th Cir. 2002). Wyoming, the forum state, applies the doctrine of *lex loci delicti*, or the law of the place where the tort was committed, as the law that governs and is to be applied in the substantive phase. *Ball v. Ball*, 269 P.2d 302, 304 (Wyo. 1954).[2]  This rule makes sense.  To find

---

[2] The Georgia Supreme Court also follows the rule of *lex loci delicti* and even cited *Ball* when deciding that Georgia should continue to adhere to the rule of *lex loci delicti*. *Dowis v. Mud Slingers, Inc.*. 279 Ga. 808, 809-

otherwise, would require a Wyoming owner/operator to comply with duties imposed by states other than Wyoming.

**C.      Analysis**

**1.      Since Georgia-Pacific was not negligent, Diversified must indemnify and hold Georgia-Pacific harmless.**

Under the terms of the Contract, Diversified, "at its own sole cost and expense," must "defend, save harmless and indemnify" Georgia-Pacific for all claims "arising out of or predicated upon the operation of trucks" by Diversified or its Carriers, like R. Waltman Trucking.  The Contract does provide that Diversified does not have to indemnify and hold harmless for damages caused by Georgia-Pacific's own negligence.

> (c)    COMPANY further <u>covenants and agrees, and it hereby binds itself, at its own sole cost and expense, to defend, save harmless and indemnify G-P</u>, its officers, employees and customers, from and against any and all manner of suits, claims, judgments, demands, costs, attorneys' fees, charges, debts, dues, liabilities, and payments of money of any sort or nature whatsoever on account of injury to or the death of persons or loss of or damage to property in any manner whatsoever, <u>arising out of or predicated upon the operation of trucks of or by COMPANY</u>, its agents, employees or Carriers with which COMPANY has contracted for movement of G-P's freight, or the conduct of the business of COMPANY, or the transportation and handling of goods by COMPANY, or by its agents, employees or Carriers with which COMPANY has contracted for movement of G-P's freight, whether pursuant to this Agreement or otherwise, <u>provided that this **hold harmless and indemnity** shall not apply to the extent that the action giving rise to the claim was caused by an act or omission of G-P or its agents, servants or employees.</u>

---

11 n.1 (Ga. 2005)(stating that because the doctrine of *lex loci delicti* has applied to tort actions in Georgia for nearly 100 years, this will continue to be the law until a better approach is found).

*Contract* (emphasis added). Since Georgia-Pacific did not owe a duty to Waltman and, therefore, cannot be found negligent, Diversified must defend, indemnify and hold harmless Georgia-Pacific.

In Wyoming, a legal duty of care is a predicate of negligence. As shown below, Georgia-Pacific owed no duty of care to Waltman. Absent such a duty, Georgia-Pacific cannot be found negligent, and Georgia-Pacific is entitled to defense and indemnity. *Hittel v. WOTCO, Inc.*, 996 P.2d 673, 678 (Wyo. 2000); *Franks v. Indep. Prod. Co.*, 96 P.3d 484, 492 (Wyo. 2004); *Boswell v. CETCO*, 236 F.R.D. at 691-93 (D. Wyo. 2006); *Hjelle v. Mid-State Consultants, Inc.*, 394 F.3d 873, 877 (10th Cir. 2005)(applying Wyoming law); *Dow v. Louisiana Land & Exploration Co.*, 77 F.3d 342, 344 (10th Cir. 1996) (applying Wyoming law).

Wyoming law provides that a land owner does not owe the employee of an independent contractor any duty, even as a business invitee, unless:

1.    the independent contractor's work involves ultrahazardous activities;

2.    the owner exercises pervasive control over the independent contractor's work; or

3.    the owner assumes affirmative duties with respect to safety.

*Hittel v. WOTCO, Inc.*, 996 P.2d 673, 678 (Wyo. 2000); *Franks v. Indep. Prod. Co.*, 96 P.3d 484, 492 (Wyo. 2004). In this case, the undisputed evidence is that Georgia-Pacific did not control Waltman's work nor did it assume any affirmative duty when it came to safety.

Wyoming has adopted the rule that a worksite owner "is not obligated to protect the employee of an independent contractor from hazards which are incidental to, or part of, the very work the contractor was hired to perform." *Hjelle*, 394 F.3d at 877 (*quoting Jones v. Chevron*, 718 P.2d 890, 894 (Wyo. 1986)). In fact, the owner "has no duty to either furnish a safe place to work or to give warning of danger." *Jones v. Chevron*, 718 P.2d at 894 n.2. Accordingly, companies such as Georgia-Pacific generally owe no duty of care to an independent contractor's employees. *Abraham v. Andrews Trucking Co.*, 893 P.2d 1156, 1157 (Wyo. 1995); *Ramsey v. Pacific Power & Light*, 792 P.2d 1385, 1386 (Wyo. 1990). The owner is liable for injuries to a contractor's employees if and only if it exercised a "controlling and pervasive role" in the work performed by the contractor or assumed affirmative duties with respect to safety. *Hjelle*, 394 F.3d at 877-78 (*quoting Franks v. Independent Prod. Co.*, 96 P.3d 484, 490 (Wyo. 2004)); *Dow*, 77 F.3d at 344; *Cockburn v. Terra Resources*, 794 P.2d 1334, 1342 (Wyo. 1990). Absent such control, the owner owes no legal duty to the contractor's employees.

This case is identical to *Boswell v. CETCO*, 236 F.R.D. 682 (D. Wyo. 2006), where the United States District Court for the District of Wyoming held an owner/operator does not owe a duty of care to an independent long haul truck driver. In that case, a long haul truck driver fell injuring himself while tarping his load at the CETCO plant in Lovell, Wyoming. In granting summary judgment, the Court rejected Boswell's argument that CETCO had a duty to provide him with fall protection. *Id.* at 693.

In this case, the undisputed material facts show that (1) Waltman was injured by a hazard that was part of the very work Diversified was hired to perform; (2) Georgia-Pacific exercised no control over the manner in which Waltman performed the work that resulted in his injury; and (3) Georgia-Pacific did not assume affirmative duties with respect to safety. Further, no causal link exists between Waltman's accident and any general control Georgia-Pacific may have exercised over the work site. As a matter of law, Georgia-Pacific assumed no legal duty to Waltman, and the Court should find as a matter of law that Georgia-Pacific was not negligent. Consequently, Diversified owes indemnity to Georgia-Pacific.

**a.   Georgia-Pacific had no legal duty to protect Waltman from hazards incidental to the work Diversified was hired to perform**

Wyoming law imposes no duty on Georgia-Pacific to protect Waltman from "hazards which are incidental to, or part of, the very work [R. Waltman Trucking] was hired to perform." *Hjelle*, 394 F.3d at 877. In this case, Georgia-Pacific hired Diversified to provide transportation services. Diversified, in turn, hired R. Waltman Trucking to transport a shipment from the Georgia-Pacific facility. According to Waltman, tarping is a part of his job. Moreover, Waltman was aware of the hazard of tarping before the accident. Without question, falling was a hazard inherent in his job.

HIRST APPLEGATE, LLP
LAW OFFICES
1720 CAREY AVENUE, SUITE 200
P.O. BOX 1083
CHEYENNE, WYOMING 82003-1083

**b.**     **Georgia-Pacific did not control Waltman's performance of work.**

Georgia-Pacific did not exercise a "controlling and pervasive role" over the way Waltman performed the work that caused his injury. *Ramsey*, 792 P.2d at 1386. Further, Georgia-Pacific had a general right to order Waltman to perform the work, inspect its progress, to prescribe alterations, and to make recommendations to Waltman about the work. *Id. (quoting* Restatement (Second) of Torts § 414 comment c (1958)). Any such actions simply reflect the type of control customary in the relationship between an owner and an independent contractor. *Hjelle*, 394 F.3d at 878. The facts instead must show that Georgia-Pacific (a) told Waltman what to do; (b) instructed him how to do it; and (c) advised him what equipment to use, thereby assuming the required "<u>controlling and pervasive role</u> in the work." *Id. (quoting Natural Gas Processing Co. v. Hull*, 886, P.2d 1181, 1886 (Wyo. 1994)(emphasis added); *Cockburn*, 794 P.2d at 1342. No such facts exist in this case.

Georgia-Pacific simply hired Diversified to transport shipments from the Lovell plant. For the purposes of this motion, the Court can conclude that (a) Georgia-Pacific required Waltman to secure the shipment and cover it with a tarp; and (b) a forklift operator employed by Georgia-Pacific loaded the shipment onto Waltman's flatbed trailer. In contrast, the Georgia-Pacific did not train Waltman how to tarp a load, did not provide the equipment he used to accomplish the task, instruct him how to tarp the load, or assist him in any way in doing it. *Richard Waltman Depo.* at 30-1, 128. Tarping the load, Waltman

admits, was his responsibility as the truck driver. *Id.* at 73. The undisputed facts thus show that Georgia-Pacific's actions fall short of the "controlling pervasive" role necessary to create a legal duty to protect Waltman from hazards inherent in his job.

### c.   Georgia-Pacific did not assume affirmative safety duties.

In order to assume a duty to safeguard a contractor's employees, the worksite owner "must warrant *to the independent contractor,* either contractually or as evidenced by its actions, that it has affirmatively assumed duties of safety." *Hjelle,* 394 P.2d at 880 (emphasis added); *Dow,* 77 F.3d at 345. The owner's actions evidence the assumption of safety duties when the worksite owner actually performs them. *Abraham,* 893 P.2d at 1157.

Here, Georgia-Pacific did not contractually assume any safety duties relating to Diversified's work.  Georgia-Pacific simply indicated when and where Diversified's drivers should pick up the load and its destination.  Likewise, Georgia-Pacific performed no actions with respect to Waltman's safety.

Because Georgia-Pacific did not "warrant . . . that it affirmatively assumed duties of safety," or actually perform any safety functions for truck drivers on the site, it did not affirmatively assume any responsibility for Waltman's safety while he covered the load. Georgia-Pacific therefore is entitled to a determination as a matter of law that it did not owe a duty and, therefore, was not negligent.

Since, Georgia-Pacific was not negligent, Diversified must indemnify and hold harmless Georgia-Pacific.

2.      **Regardless of negligence, Diversified must defend Georgia-Pacific.**

In Georgia, like many states, the duty to defend and the duty to indemnify are separate and independent obligations arising from terms of the contract. *Nationwide Mut. Fire Ins., Co. v. Somers*, 591 S.E.2d 430, 433 (Ga. App. 2003)(citing *City of Atlanta v. St. Paul Fire & Ins. Co.*, 498 S.E.2d 782 (Ga. App. 1998); *Allstate Ins. Co. v. Harkleroad*, 2010 U.S. Dist. LEXIS 51240 (S.D. Ga. May 24, 2010); *see also Elan Pharm. Research Corp. v. Employers Ins. of Wausau*, 144 F.3d 1372, 1375 (11th Cir. 1998)(acknowledging distinction between the two duties). Further, while the Georgia Supreme Court in *Ryder Integrated Logistics, Inc. v. BellSouth Telecommunications, Inc.*, 642 S.E.2d 695, 697 (Ga. 2007), has clearly stated that there is no duty to indemnify for the indemnitee's own acts of negligence absent clear and unequivocal contractual terms, Georgia has not applied the same restrictions to the duty to defend. Under the terms of the Contract, Diversified must defend claims arising out of the operation of trucks by Diversified or its Carriers.

With respect to the duty to defend, the Contract provides:

(c)     COMPANY further <u>covenants and agrees, and it hereby binds itself, at its own sole cost and expense, **to defend,** save harmless and indemnify G-P</u>, its officers, employees and customers, from and against any and all manner of suits, claims, judgments, demands, costs, attorneys' fees, charges, debts, dues, liabilities, and payments of money of any sort or nature whatsoever on account of injury to or the death of persons or loss of or damage to property in any manner whatsoever, <u>arising out of or predicated upon the operation of trucks of or by COMPANY,</u> its agents, employees or Carriers with which COMPANY has contracted for movement of G-P's freight, or the conduct of the business of COMPANY, or the transportation and

handling of goods by COMPANY, or by its agents, employees or Carriers with which COMPANY has contracted for movement of G-P's freight, whether pursuant to this Agreement or otherwise, <u>provided that this **hold harmless and indemnity** shall not apply to the extent that the action giving rise to the claim was caused by an act or omission of G-P or its agents, servants or employees.</u>

The duty to defend is separate and apart from the duty to indemnify. While the Contract provides "that this <u>hold harmless</u> and <u>indemnity</u> shall not apply to the extent that the action giving rise to the claim was caused by an act or omission of G-P or its agents, servants or employees", no such qualification applies to the <u>duty to defend</u>. Consequently, Diversified must accept the defense and defend Georgia-Pacific even if it was negligent.

Based on the plain language of the contract, Diversified must defend Georgia-Pacific for the claims brought by Richard Waltman since they arise from the work called for under the Contract.

**3.    Diversified breached the Contract by failing to ensure R. Waltman Trucking obtained the appropriate insurance.**

Pursuant to the terms of the Contract, Diversified was to "ensure that [R. Waltman Trucking] obtain, insurance covering the risks incident to this Agreement, including Workers' Compensation." Diversified breached this contractual requirement. R. Waltman Trucking did not have insurance in place providing coverage for Richard Waltman's injuries. Further, R. Waltman Trucking did not obtain worker's compensation coverage for Richard Waltman.

The Contract required Diversified to ensure certain specific insurance provisions were in place:

> 8.  COMPANY agrees to obtain, and to ensure that its Carriers obtain, insurance covering the risks incident to this Agreement, including Workers' Compensation and all other types of insurance as are currently required by 49 C.F.R. Part 387 or such future state, local or federal regulations as may be implemented from time to time.  COMPANY shall obtain such insurance and any additional insurance specified in Appendix A in the amounts specified in Appendix A.  All insurance policies are to be written by reliable, solvent, and reputable insurance companies.

In addition to the insurance requirements described in Section 8 of the Contract, Diversified and its Carriers were required to obtain insurance as specified in Appendix A.  Appendix A provides, in pertinent part:

> COMPANY agrees to obtain and maintain at its own cost or shall require and warrant that all Carriers (at Carriers' expense) obtain and maintain, during the term of this Agreement, insurance covering the risks incident to this Agreement with the following minimum limits:
>
> i.    Workers' Compensation with statutory limits;
> ii.   Employer's Liability with $100,000 per occurrence;
> iii.  Commercial General Liability insurance, covering bodily injuries and death and property damage, Independent Contractors, Personal Injury, Contractual with limits of $500,000 per occurrence and $1,000,000 in the General Aggregate; . . .

Specifically, Appendix A requires the procurement of "Workers' Compensation with statutory limits" and "Commercial General Liability insurance, covering bodily injuries and death and property damage, Independent Contractors, Personal Injury, Contractual with limits of $500,000 per occurrence and $1,000,000 in the General Aggregate."

Diversified breached its contract in failing to ensure the appropriate insurance was in place. Georgia-Pacific has been damaged as a result of Diversified's breach in the form of fees and costs incurred in defending the Waltman claims. If this insurance was properly obtained, Richard Waltman could have brought his claims against R. Waltman Trucking, which would have owed a duty of care to its employee, instead of Georgia-Pacific, which does not owe such a duty. At a minimum, Richard Waltman would have worker's compensation coverage for his medical bills along with disability compensation.

### 4.    Specific Performance and Declaratory Judgment

These two causes of action are intertwined. 28 U.S.C. § 2201 and/or Wyo. Stat. § 1-37-101 *et seq.* permit declaratory judgment actions to allow parties to have a determination of their rights and obligations under a contract. Compliance with the Contract provisions requires Diversified to defend and indemnify Georgia-Pacific for events that may occur in the future. As such, once Georgia-Pacific's rights are declared under the Contract, the Court should order Diversified to specifically perform such contractual duties.

### 5.    Damages

The precise amount of Georgia-Pacific's damages will not be known until the Court issues its ruling granting partial summary judgment in favor of Georgia-Pacific. As such, Georgia-Pacific respectfully requests the Court to grant summary judgment in its favor and then order Georgia-Pacific to submit a pleading detailing the amount of past damages

incurred to that point in time. From there, as part of the declaratory judgment action, Diversified should be ordered to assume the defense of the Waltman matter.

## *CONCLUSION*

As described above, there are primarily three distinct issues before the Court:

1.  The duty to indemnify owed by Diversified to Georgia-Pacific under the indemnity provision of the Contract;

2.  The duty to defend Diversified regardless of negligence;

3.  The duty of Diversified to ensure R. Waltman Trucking secured appropriate insurance coverage.

As shown above, there are no material questions of fact with respect to these provisions and Georgia-Pacific is entitled to partial summary judgment as a matter of law on its Claims I (Breach of Contract), III (Breach of Contract), V (Declaratory Judgment) and VII (Specific Performance).

*WHEREFORE*, Georgia-Pacific LLC respectfully requests the Court to grant its Motion, to enter judgment in its favor on the breach of contract for duty to defend and indemnify, and breach of contract for failure to ensure appropriate insurance coverage, to award the relief sought in the *Complaint*, to hold a hearing to determine damages, if necessary, and for such other and further relief as the Court may find just.

Dated:  9 July 2010.

GEORGIA-PACIFIC LLC, Plaintiff

BY: _____

**BILLIE LM ADDLEMAN, #6-3690**
**WHITNEY M. AGOPIAN, #7-4521**
OF HIRST APPLEGATE, LLP
Attorneys for Plaintiff
1720 Carey Avenue, Suite 200
P.O. Box 1083
Cheyenne, WY  82003-1083
Phone: (307) 632-0541
Fax: (307) 632-4999
baddleman@hirstapplegate.com
wagopian@hirstapplegate.com

## CERTIFICATE OF SERVICE

I certify the foregoing ***Georgia-Pacific LLC's Memorandum of Law in Support of Motion for Partial Summary Judgment*** was served upon all parties to this action pursuant to the Federal Rules of Civil Procedure on 9 July 2010, and that copies were served as follows:

Amanda R. Lenning                                     [ ✓ ] E-FILE
Patten, Peterman, Bekkedahl & Green, PLLC             [    ] US MAIL
2817 Second Avenue North, Suite 300                   [    ] FED EX
Billings, MT  59101                                   [    ] FAX
T: 406-252-8500                                       [    ] HAND DELIVERED
F: 406-294-9500
Email: alenning@ppbglaw.com
*Attorney for Diversified Transfer & Storage*

Curtis B. Buchhammer                                  [ ✓ ] E-FILE
Buchhammer & Kehl, P.C.                               [    ] US MAIL
1821 Logan Avenue                                     [    ] FED EX
PO Box 568                                            [    ] FAX
Cheyenne, WY  82003-0568                              [    ] HAND DELIVERED
T: 307-634-2184
F: 307-634-2199
Email: cbb@wyoming.com
*Attorney for Wilshire Insurance Company*

OF HIRST APPLEGATE, LLP
Attorneys for Plaintiff