George Santini, WY Bar #: 5-1992
Ross, Ross & Santini, LLC
307 E. 18th St.
Cheyenne, WY 82001
307.632.8957
307.632.8960 Fax
George@ross-santini.com

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF WYOMING

| | | |
|---|---|---|
| GEORGIA-PACIFIC, | ) | |
| | ) | |
| Plaintiff, | ) | Civil No. 10-cv-0083D |
| v. | ) | |
| | ) | |
| DIVERSIFIED TRANSFER AND | ) | |
| STORAGE, INC. and WILSHIRE | ) | |
| INSURANCE COMPANY, | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANT, DIVERSIFIED TRANSFER AND STORAGE, INC'S REPLY TO PLAINTIFF'S RESPONSE TO THE MOTION TO DISMISS**

Comes now Defendant, Diversified Transfer and Storage, Inc. ("DTS") in Reply to Plaintiff, Georgia-Pacific's (G-P) Response to the Motion to Dismiss states:

### I. The Courts Does Not Need to Find G-P Negligent as a Matter of Law to Grant the Motion to Dismiss

Contrary to Plaintiff's arguments, the Court does not need to find G-P negligent as a matter of law in Richard Waltman and R. Waltman Trucking v. Georgia-Pacific, et al., (Civil No. 09-cv-280D) to grant DTS' motion, all that is needed is to review the allegations of the Complaint filed in that matter in light of the agreement between G-P and DTS to determine whether the contractual duty to indemnify and hold harmless is implicated by those allegations. The contract clearly excludes any duty to indemnify or defend G-P for its own negligence and that is all that has been alleged by Waltman. Under Georgia law, the Court looks only to the allegations in the underlying complaint. Moreover, the contract itself does not require a finding of negligence, but only that "... *the action giving rise to the claim was caused by an act or omission of G-P or its agents, servants or employees.*"

One of the arguments advanced by G-P in this case is that in deciding whether or not there is a duty to defend or indemnify G-P under the contract between G-P and DTS, the Court should consider the issues as framed by G-P's answer and affirmative defenses asserted in the underlying personal injury litigation. This is not in accordance with applicable law. G-P can no more create an issue triggering the contractual duty by denying liability to Waltman than it could create the right to indemnification by admitting liability to Waltman. The issue is whether the contractual duty is implicated by virtue of the claims made against G-P, not what G-P's responses to those claims are. G-P has cited absolutely no authority for its assertion that the Court would have to find G-P negligent as a matter of law before deciding DTS' contractual indemnity obligation. G-P refers to the Court's scholarly and thorough decision in <u>Boswell v. CETCO</u>, 236 F.R.D. 682 (WY 2006) on the duty owed to independent contractors under Wyoming law. However, though likely controlling on the Waltman claims against G-P, that decision does not address contractual indemnification at all, and certainly does not stand for the proposition that underlying negligence must be determined as a matter of law to resolve a contractual indemnification dispute between separate parties.

Though G-P cites no authorities for its unusual proposition, Georgia law does, and contradicts it. As stated in <u>United Parcel Service, Inc. v. Colt Security Agency, Inc., et al.</u> (Ga. App. 2009) *"If Colt is not required to indemnify UPS for its own liability, **and the complaint alleges only UPS's liability**, we need not consider any of the trial court's other reasons for granting summary judgment to Colt and Tudor."* (Emphasis added) Likewise, in <u>Ryder Integrated Logistics, Inc. v. BellSouth Telecommunications, Inc.</u>, 642 S.E.2d 695, 698 (Ga. 2007), *"In Division I of its opinion, the Court of Appeals noted **that the Ray's claim** was based on BellSouth's sole negligence, and correctly held that the indemnity provision was thus*

*unenforceable."* citing <u>Ryder Integrated Logistics v. BellSouth Telecommunications, Inc.</u> 627 S.E.2d 358 (Ga. 2006). (Emphasis added.) Thus Georgia courts look only to the allegations of the complaint, not the defenses raised or ultimate outcome of the underlying case, in deciding the contractual indemnification obligation. Under the applicable law, this Court is required to look only at the Waltman complaint, where only G-P's negligence is alleged. A finding of G-P's negligence as a matter of law is simply not required.

Moreover, the contract itself does not refer exclusively to G-P's negligence. Paragraph 7(b) states: *"... provided that this hold harmless and indemnity shall not apply to the extent that **the action giving rise to the claim** was caused by an act or omission of G-P or its agents, servants or employees."* (Emphasis added.) The Waltman plaintiffs allege, inter alia, that G-P's failure to have a tarping area, and that a G-P's employee exacerbated his injuries are the actions giving rise to their claims. DTS cannot comment on the merits of those claims, nor should it be required to. DTS is not a party to that action, no act or omission of DTS has been alleged, DTS has had no part in discovery or other proceedings, and DTS cannot be called upon to prove the Waltman's claims as a prerequisite to resolving its contractual dispute with G-P.

**II. There Is No Explicit, Affirmative Undertaking of Defense in the Contract.**

G-P next argues that because "defense" is not specifically included in the contractual exemption, that even if G-P was negligent DTS must provide a defense. However, G-P has it backward. Under Georgia law a duty to defend, indemnify and/or hold an indemnitee harmless for its own negligence must be affirmatively stated, it will not be assumed or implied. *"In addition, the words of a contract of indemnification must be construed strictly against the indemnitee. And every presumption is against such intention [to indemnify]. When an indemnity*

*agreement is ambiguous, such ambiguity must be construed against the drafter..."* Service Merchandise Co. v. Hunter Fan Co., 617 S.E.2d 237-8 (Ga. 2005).

Nowhere in the contract, which was drafted by and must be narrowly construed against G-P, is it affirmatively agreed that DTS undertakes to protect G-P from its own acts or omissions. Nor may the Court assume or imply one from the absence of the word "defense" in the exception.

> *"As a matter of law, the scope of the written indemnification provisions must be strictly construed against SM, the indemnitee. Unless the words of a contract explicitly show an agreement to indemnify another party for his own negligence, such an agreement cannot be implied. This is so because:*
>
> *[p]ublic policy is reluctant to cast the burden for negligent actions upon those who are not actually at fault. Public policy seeks to encourage people to exercise due care in their activities for fear of liability, rather than to act carelessly cloaked with the knowledge that an indemnity contract will relieve such indifference. Unless a contract for indemnification explicitly and expressly states that the negligence of the indemnitee is covered, courts will not interpret such an agreement as a promise to save the indemnitee from his own negligence."* Id. 240.[1]

DTS does not owe a duty of defense, because even though "defense" is not explicitly exempted from the contractual indemnification, there was no explicit, affirmative assumption of such a duty in the first place, and no such duty can be assumed, inferred or implied.

### III. A Contractual "Additional Insured" Requirement Does Not Create an Independent Basis for Indemnification

Though, DTS did, in fact, fulfill its contractual duty regarding insurance, it is not relevant to this Court's consideration of DTS' Motion to Dismiss as again, a contractual requirement to name an entity as an additional insured does not create an independent basis that would require DTS to defend and indemnify G-P for its own acts or omissions. As demonstrated by Exhibit D,

---

[1] In fact public policy is so against indemnification provisions that both Wyoming and Georgia, as well as over 20 other States have enacted legislation voiding indemnification provisions in motor carrier transportation contracts. See GA Code Section 46-7-12.1; and Session Law of WY, 2009 Ch. 187, 40-17-102 – Motor Carrier Indemnity Agreements Void, attached.

to G-P's complaint, at the request and instruction of DTS, Talbot issued a Certificate of Insurance identifying G-P as an "Additional Insured". Whether Wilshire so added G-P to the policy is unknown. However, what Wilshire did or did not do is irrelevant to DTS' obligation under Georgia law because:

> *"The requirement that Hunter name SM as an additional insured did not create an independent basis that would require Hunter to defend and indemnify SM for SM's own negligence or gross negligence. To find otherwise would effectively negate the public policy that one cannot be indemnified for one's own negligence unless the contracting parties expressly and explicitly agree to such indemnification in writing."* Id. 241.

Likewise, in <u>Ryder Integrated Logistics, Inc. v. BellSouth Telecommunications, Inc.</u>, 642 S.E.2d 695, 698 (Ga. 2007): *"The limitation language of the insurance provision does not resurrect the indemnity provision; public policy continues to prevent its being given effect."* As there was no obligation to insure G-P for its own acts or omission, it is not relevant to DTS' motion whether Wilshire fulfilled its duty.

### IV. There Was No Contractual Duty to Require Other Carriers to Insure G-P for Its Own Negligence

DTS did obtain proof of insurance from R Waltman Trucking (Exhibit D-1). However, under the G-P contract such carriers were only required to have *"Worker's Compensation with statutory limits"*. Waltman provided DTS with a Workers Compensation hold harmless, which DTS reasonably believed in compliance with Nebraska state law. Moreover, according to the Waltman Complaint against G-P, Paragraph 8, Mr. Waltman was an independent contractor for R Waltman Trucking, and Nebraska does not require motor carrier such as R Waltman Trucking to provide Worker's Compensation insurance for independent contractors such as Mr. Waltman. But again, whether Mr. Waltman or Waltman Trucking should have had Worker's Compensation insurance is not pertinent to this Court's decision. As a matter of law and public policy, workers

compensation insurance does not shield non-employer, third parties, such as G-P, from claims arising from their own acts or omissions. But more importantly, DTS had no obligation to require carriers to insure G-P against G-P's acts or omissions. To paraphrase the rationale in UPS:

> In the underlying case, the driver and trucking are not suing themselves or each other. Any negligence on their parts would either set off their damages or deny them recovery altogether. The Waltman complaint contains no allegations of negligence against anyone but G-P, and G-P's arguments to the contrary are unavailing.

If R Waltman Trucking or Mr. Waltman should have had such insurance under Nebraska law, it still does not provide an independent basis for indemnification against DTS, as DTS had no obligation to require carriers to insure G-P against G-P's own acts or omissions under the contract.

For these reasons, Defendant, Diversified Transfer and Storage, Inc. respectfully requests the Court to grant its Motion to Dismiss the Complaint against it as it had no contractual obligation to defend, indemnify or hold Plaintiff, Georgia-Pacific, harmless from its own acts or omissions; no contractual obligation to obtain insurance covering G-P for its own acts or omissions; and no contractual obligation to require other carriers to obtain insurance covering G-P's own acts or omission.

DATED this 20th day of July, 2010.

/s/George Santini  
George Santini

## CERTIFICATE OF SERVICE

I do hereby certify that a true and correct copy of the foregoing was electronically filed with the Clerk of Court utilizing the CM/ECF System this 20th day of July, 2010, which will send notification of the filing to the following parties:

> Billie LM Addleman
> Whitne M. Agopian
> Hirst Applegate, LLP
> PO Box 1083
> Cheyenne, WY 82003-1083
>
> Curtis B. Buchhammer
> Buchhammer & Kehl, PC
> 1821 Logan Ave.
> PO Box 568
> Cheyenne, WY 82003-0568

/s/ George Santini