UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF WYOMING

| | |
|---|---|
| GEORGIA-PACIFIC, )<br>)<br>Plaintiff, )<br>v. )<br>)<br>DIVERSIFIED TRANSFER AND )<br>STORAGE, INC. and WILSHIRE )<br>INSURANCE COMPANY, )<br>)<br>Defendants. ) | Civil No. 10-cv-0083 |

**DEFENDANT, DIVERSIFIED TRANSFER AND STORAGE, INC'S RESPONSE
TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

Comes now Defendant, Diversified Transfer and Storage, Inc. ("DTS") in Response to Plaintiff, Georgia-Pacific's (G-P) Motion for Partial Summary Judgment and states:

**I.   The Court Should Strike Those Portions of Plaintiff's Motion, Memorandum and Exhibits Which Seek Judgment as a Matter of Law on Issues, Claims and Defenses Outside the Scope of this Case.**

As a preliminary matter, DTS respectfully moves the Court to Strike those portions of Plaintiff's Motion, Memorandum and Exhibits which ask the Court to adjudicate the issue of G-P's negligence in the underlying case, Richard Waltman v. Georgia-Pacific, et al., (Civil No. 09-cv-280D). DTS has not participated in the Waltman proceeding, has had no access to the discovery, and cannot reasonably be asked to litigate claims or defenses raised in a separate action to which it is not a party. Moreover, it is completely improper and prejudicial for G-P to seek judgment as a matter of law on duties owed to Mr. Waltman's here, as Mr. Waltman is not a party to this litigation and has no opportunity to respond. As stated in DTS' Reply on the Motion to Dismiss:

> "Contrary to Plaintiff's arguments, the Court does not need to find G-P negligent as a matter of law in Richard Waltman and R. Waltman Trucking v. Georgia-Pacific, et al., (Civil No. 09-cv-280D) to grant DTS' motion, all that is

*needed is to review the allegations of the Complaint filed in that matter in light of the agreement between G-P and DTS to determine whether the contractual duty to indemnify and hold harmless is implicated by those allegations. The contract clearly excludes any duty to indemnify or defend G-P for its own negligence and that is all that has been alleged by Waltman."*

The first fifteen pages of of G-P's twenty plus page brief, including all the alleged "Undisputed Facts", refer only to claims and defenses in the underlying Waltman suit. DTS simply has no knowledge or information as to those claims or defenses, and cannot be called upon to litigate any of them as they are not germane to the sole issue in this lawsuit, which is interpretation of the contractual indemnity under Georgia law.

To the extent that any response is required to G-P's statement of undisputed facts, DTS states that it has no knowledge or information, has had no access to discovery in the Waltman v. G-P case, and cannot reasonably be required to argue, or present evidence as to any of the alleged facts. DTS further states that G-P's negligence is not at issue in this action, and is not relevant to any claims against DTS.

**II. There Is No Explicit, Affirmative Undertaking of Defense in the Contract.**

G-P again argues that because "defense" is not specifically included in the contractual exemption, that even if G-P was negligent DTS must provide a defense. However, G-P has it backward. Under Georgia law a duty to defend, indemnify and/or hold an indemnitee harmless for its own negligence must be affirmatively stated, it cannot be assumed or implied. *"In addition, the words of a contract of indemnification must be construed strictly against the indemnitee. And every presumption is against such intention [to indemnify]. When an indemnity agreement is ambiguous, such ambiguity must be construed against the drafter..."* Service Merchandise Co. v. Hunter Fan Co., 617 S.E.2d 237-8 (Ga. 2005).

Nowhere in the contract, which was drafted by and must be narrowly construed against G-P, is it affirmatively agreed that DTS undertakes to protect G-P from allegations of its own acts or omissions. Nor may the Court assume or imply one from the absence of the word "defense" in the exception.

> "As a matter of law, the scope of the written indemnification provisions must be strictly construed against SM, the indemnitee. Unless the words of a contract explicitly show an agreement to indemnify another party for his own negligence, such an agreement cannot be implied. This is so because:
>
> [p]ublic policy is reluctant to cast the burden for negligent actions upon those who are not actually at fault. Public policy seeks to encourage people to exercise due care in their activities for fear of liability, rather than to act carelessly cloaked with the knowledge that an indemnity contract will relieve such indifference. Unless a contract for indemnification explicitly and expressly states that the negligence of the indemnitee is covered, courts will not interpret such an agreement as a promise to save the indemnitee from his own negligence." Id. 240.[1]

DTS does not owe a duty of defense, because even though "defense" is not explicitly exempted from the contractual indemnification, there was no explicit, affirmative assumption of such a duty in the first place, and no such duty can be assumed, inferred or implied.

Procedurally, G-P cannot be granted partial summary judgment on this claim as it has presented no statement of undisputed facts in regard to the contract claims, or alleged breach thereof, entitling it to relief.

### III    DTS Fulfilled Its Contractual Duties Regarding Insurance of R Waltman Trucking

Contrary to G-P's assertions, DTS did fulfill its contractual duties regarding insurance of underlying carriers. The Acord Certificate of Liability Insurance issued for R Waltman to DTS' sister company, Freight Agency, Inc., shows that Waltman had $1,000,000 Commercial General

---

[1] In fact public policy is so against indemnification provisions that Wyoming and Georgia, as well as over 20 other States have enacted legislation voiding indemnification provisions in motor carrier transportation contracts. See GA Code Section 46-7-12.1; and Session Law of WY, 2009 Ch. 187, 40-17-102 – Motor Carrier Indemnity Agreements Void, attached.

Liability and $1,000,000 Automobile Liability coverage from Continental Western insurance company. (Attached as Exhibit 1). In fact, Waltman's coverage for Commercial General Liability was actually higher than required as it had $1,000,000 per occurrence, whereas the G-P contract only required $500,000.

Likewise, the only contractual requirement for Worker's Compensation was "with statutory limits". Under Nebraska law, there is no statutory requirement for R Waltman Trucking to obtain Worker's Compensation insurance for independent contractors such as Mr. Waltman, so again DTS cannot be said to have breached G-P's contractual requirements. As a matter of law and public policy, neither Worker's Compensation or Employer's Liability insurance covers claims against non-employer, third parties, such as G-P, from claims arising from their acts or omissions.[2]

The attached printout from the Federal Motor Carrier Safety Administration's website, Safersys.org, shows that at the time of the accident and all times prior, R Waltman was in full compliance with 49 CFR 387 – Minimum Levels of Financial Responsibility for Motor Carriers.[3] (Exhibit 2) Under the regulations, motor carriers are required to have at least $750,000 bodily injury and property damage insurance as a condition of licensing, and the carrier's insurer is required to file the BMC-91 endorsement. The Safersys.org printout shows R Waltman had the required insurance and endorsement in place from 1997 till it ceased operations in August 2007. So again, G-P's assertion that DTS breached its contractual duties in regard to carrier insurance is simply unfounded.

---

[2] As previously noted in DTS Reply on the Motion to Dismiss, public policy is so against indemnification provisions that both Wyoming and Georgia, as well as over 20 other States have enacted legislation voiding indemnification provisions in motor carrier transportation contracts. See GA Code Section 46-7-12.1; and Session Law of WY, 2009 Ch. 187, 40-17-102 – Motor Carrier Indemnity Agreements Void, attached.

[3] There is no requirement in the cited regulation for motor carriers to obtain Worker's Compensation insurance, which is a matter generally reserved to the States. See 49 CFR 387.

But more importantly, DTS had no contractual obligation to require carriers to insure G-P against claims arising from G-P's acts or omissions. Nowhere in the contract, which was drafted by and must be narrowly construed against G-P, is it affirmatively agreed that DTS or underlying carriers must insure G-P for its own acts or omissions. Service Merchandise Co. v. Hunter Fan Co., 617 S.E.2d 237, 240 (Ga. 2005). As noted by the court in Georgia-Pacific, LLC, et al, v. Swift Transportation Corporation, W2008-00344-COA-R3-CV (Tenn. App., 2008), reviewing the exact same contract and claims:

> *"In sum, although an additional insured can be covered for its own negligence, we find nothing in this contract to require such coverage. The parties' contract set forth various risks assumed by Swift Transportation and obligated Swift Transportation to obtain an insurance policy to cover risks incident to the agreement. There is nothing in the contract to indicate an agreement that Swift Transportation would obtain insurance against G-P's own negligence."*

DTS obtained proof of R Waltman Trucking's insurance as it was contractually required to. However, nothing in the contract required DTS or underlying carriers, such as R Waltman Trucking, to insure G-P *"... to the extent that the action giving rise to the claim was caused by an act or omission of G-P or its agents, servants or employees."*

But again, procedurally, G-P cannot be granted partial summary judgment on this claim as it has presented no statement of undisputed facts in regard to the contract claims, or alleged breach thereof, entitling it to relief.

### IV   Specific Performance, Declaratory Judgment and Damages

To the extent that G-P asks the Court to look solely to contract in light of the allegations of the Waltman suit to determine DTS' contractual obligations, DTS agrees, hence its Motion to Dismiss. The contract clearly excludes any duty to indemnify, defend or insure G-P for its own negligence and that is all that has been alleged by Waltman.

DTS contends that it performed all contractual obligations and no further performance is required, but even if it did not, specific performance would not give G-P coverage or defense for the claims in the Waltman suit or any other claims alleging G-P's separate and sole negligence.

In keeping with public policy, ISO Form insurance policies are only triggered by the acts of the first named insured, in this case DTS, or R Waltman Trucking. "Additional insured" status would only cover G-P to the extent it was sued under a theory of vicarious liability or respondeat superior for the acts or omissions of the first named insured. This is consistent with the contract and public policy in that each party should be responsible for claims arising from its own acts but should not have to bear the cost for the other's negligence. Such policies do not ordinarily provide coverage or defense for an additional insured for claims arising from their separate, or sole negligent acts or omissions. Neither DTS or Waltman Trucking's Commercial General Liability, Auto Liability, Worker's Compensation, Employer's Liability insurance nor additional insured designation would provide defense or coverage for G-P in the Waltman suit as there are no allegations of negligence against DTS or R Waltman Trucking to trigger the policy. No triggering event – no coverage or defense. DTS complied with its contractual obligations, but even if it did not, specific performance would not afford G-P any relief for the Waltman claim or any future claims alleging G-P's negligence.

G-P has not suffered any damages attributable to DTS. Nowhere does the contract explicitly and affirmatively require DTS to defend, indemnify, insure or hold G-P harmless for claims alleging G-P's negligence. DTS and Waltman had required insurance, but the insurance was not triggered as there was no allegation of fault against DTS or Waltman. Additonal insured status makes no difference, as there is no claim against the first named insured. In short, none of G-P's claimed damages for defending against Mr. Waltman's suit are attributable to DTS.

For these reasons, Defendant, Diversified Transfer and Storage, Inc. respectfully requests the Court to deny Plaintiff, Georgia-Pacific's Motion for Partial Summary Judgment, as DTS had no contractual obligation to defend, indemnify or hold G-P harmless from its own acts or omissions; no contractual obligation to obtain insurance covering or providing defense to G-P for its own acts or omissions; and no contractual obligation to require other carriers to obtain insurance covering G-P's own acts or omission; specific performance is unavailing, and none of G-P's alleged damages are attributable to DTS.

DATED this 2nd day of August, 2010.

/s/George Santini
George Santini, WY Bar # 5-1992
Ross, Ross & Santini, LLC
307 E. 18th St.
Cheyenne, WY 82001
307-632-8957
307-632-8960 Fax
George@ross-santini.com

## CERTIFICATE OF SERVICE

I do hereby certify that a true and correct copy of the foregoing was electronically filed with the Clerk of Court utilizing the CM/ECF system this 2nd day of August, 2010, which will send notification of the filing to the following parties.

Billie LM Addleman
Whitne M. Agopian
Hirst Applegate, LLP
PO Box 1083
Cheyenne, WY 82003-1083

Curtis B. Buchhammer
Buchhammer & Kehl, PC
1821 Logan Ave.
PO Box 568
Cheyenne, WY 82003-0568

/s/Kerri Pestana

     Menu | Choose Menu Option ▼ | 

## Motor Carrier Details

| US DOT: | 560326 | Docket Number: | MC320522 |
|---|---|---|---|
| Legal Name: | R. WALTMAN | | |
| Doing-Business-As Name: | | | |

| Business Address | Business Telephone and Fax | Mail Address | Mail Telephone and Fax | Undeliverable Mail |
|---|---|---|---|---|
| 1300 DIVISION ST. WHITNEY NE 69367 | (308) 667-2856 | PO BOX 162 WHITNEY NE 69367 | | NO |

| Authority Type | Authority Status | Application Pending |
|---|---|---|
| Common | INACTIVE | NO |
| Contract | NONE | NO |
| Broker | NONE | NO |

| Property | Passenger | Household Goods | Private | Enterprise |
|---|---|---|---|---|
| YES | NO | NO | NO | NO |

| Insurance Type | Insurance Required | Insurance on File |
|---|---|---|
| BIPD | $750,000 | $0 |
| Cargo | YES | NO |
| Bond | NO | NO |

**BOC-3:** YES
**Blanket Company:** CENTRAL AGENT SERVICE, INC.
Web Site Content and BOC-3 Information Clarification

| Active/Pending Insurance | Rejected Insurance | Insurance History | Authority History | Pending Application | Revocation |

Friday , July 30, 2010 at 14:09:54
FMCSA Home | DOT Home | Privacy Policy/Disclaimer | Accessibility | Related Sites | Help

United States Department of Transportation - Federal Motor Carrier Safety Administration

http://li-public.fmcsa.dot.gov/LIVIEW/pkg_carrquery.prc_getdetail                 7/30/2010

  

Menu: Choose Menu Option

## Insurance History

| US DOT: | 560326 | Docket Number: | MC320522 |
|---|---|---|---|

| Legal Name: | R. WALTMAN |
|---|---|

| Form | Type | Insurance Carrier | Policy/Surety | Coverage From | Coverage To | Effective Date From | Effective Date To |
|---|---|---|---|---|---|---|---|
| 91X | BIPD/Primary | SENTRY SELECT INSURANCE COMPANY | CT776847-8007-071 | $0 | $750,000 | 05/01/2007 | 08/14/2007 Cancelled |
| 91X | BIPD/Primary | CONTINENTAL WESTERN INSURANCE CO. | MCP2617216C | $0 | $750,000 | 05/01/2006 | 05/01/2007 Cancelled |
| 91X | BIPD/Primary | GREAT WEST CASUALTY CO. | CLP74597A | $0 | $1,000,000 | 05/04/2005 | 05/01/2006 Replaced |
| 91X | BIPD/Primary | GREAT WEST CASUALTY CO. | CLP74597A | $0 | $1,000,000 | 05/04/2005 | 05/08/2006 Cancelled |
| 91X | BIPD/Primary | GREAT WEST CASUALTY CO. | CLP74597A | $0 | $1,000,000 | 03/24/1999 | 05/04/2005 Cancelled |
| 91X | BIPD/Primary | GREAT WEST CASUALTY CO. | CLP74597A | $0 | $1,000,000 | 04/10/1998 | 02/19/1999 Name Changed |
| 91X | BIPD/Primary | GREAT WEST CASUALTY CO. | CLP74597A | $0 | $1,000,000 | 04/03/1998 | 04/10/1998 Replaced |
| 91X | BIPD/Primary | GREAT WEST CASUALTY CO. | CLP74597A | $0 | $750,000 | 06/12/1997 | 06/12/1997 Replaced |
| 91X | BIPD/Primary | GREAT WEST CASUALTY CO. | CLP74597A | $0 | $750,000 | 06/12/1997 | 04/03/1998 Replaced |
| 91X | BIPD/Primary | GREAT WEST CASUALTY CO. | CLP74597A | $0 | $750,000 | 06/06/1997 | 06/06/1997 Replaced |
| 91X | BIPD/Primary | GREAT WEST CASUALTY CO. | CLP74597A | $0 | $750,000 | 06/06/1997 | 06/12/1997 Replaced |
| 34 | CARGO | SENTRY SELECT INSURANCE COMPANY | CT776847-8007-071 | $0 | $5,000* | 05/01/2007 | 08/14/2007 Cancelled |
| 34 | CARGO | CONTINENTAL WESTERN INSURANCE CO. | MCP2617216C | $0 | $5,000* | 05/01/2006 | 05/01/2007 Cancelled |
| 34 | CARGO | GREAT WEST CASUALTY CO. | CLP74597A | $0 | $5,000* | 05/04/2005 | 05/01/2006 Replaced |
| 34 | CARGO | GREAT WEST CASUALTY CO. | CLP74597A | $0 | $5,000* | 05/04/2005 | 05/08/2006 Cancelled |
| 34 | CARGO | GREAT WEST CASUALTY CO. | CLP74597A | $0 | $5,000* | 03/24/1999 | 05/04/2005 Cancelled |
| | | GREAT WEST | | | | | 02/19/1999 |

| 34 | CARGO | CASUALTY CO. | CLP74597A | $0 | $5,000* | 04/10/1998 | Name Changed |
| 34 | CARGO | GREAT WEST CASUALTY CO. | CLP74597A | $0 | $5,000* | 08/12/1997 | 08/12/1997 Replaced |
| 34 | CARGO | GREAT WEST CASUALTY CO. | CLP74597A | $0 | $5,000* | 08/12/1997 | 04/10/1998 Replaced |

* If a carrier is in compliance, the amount of coverage will always be shown as the required Federal minimum ($5,000 per vehicle, $10,000 per occurrence for cargo insurance and $10,000 for bond/trust fund). The carrier may actually have higher levels of coverage.

| Carrier Details | Active/Pending Insurance | Rejected Insurance | Authority History | Pending Application | Revocation |

Friday , July 30, 2010 at 14:10:16
. FMCSA Home | DOT Home | Privacy Policy/Disclaimer | Accessibility | Related Sites | Help

United States Department of Transportation - **Federal Motor Carrier Safety Administration**