FILED
U.S. DISTRICT COURT
DISTRICT OF WYOMING

AUG 16 2010

Stephan Harris, Clerk
Cheyenne

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF WYOMING

| | |
|---|---|
| GEORGIA-PACIFIC LLC,<br><br>Plaintiff,<br><br>vs.<br><br>DIVERSIFIED TRANSFER AND STORAGE, INC. and WILSHIRE INSURANCE COMPANY,<br><br>Defendants. | Case No. 10-CV-83-F |

**ORDER DENYING MOTION TO DISMISS AND MOTION FOR PARTIAL SUMMARY JUDGMENT**

This matter comes before the Court on two motions. The first is a motion to dismiss filed by Defendants, Doc. No. 13. The second is Plaintiff Georgia-Pacific's (G-P) motion for partial summary judgment against defendant Diversified Transfer and Storage (DTS). The Court will deny both motions.

### BACKGROUND

This case is derivative of a related matter currently pending before the Court: *Waltman v. Georga-Pacific*, LLC, No. 09-CV-280-F. In 1999, G-P and DTS entered into an agreement

that DTS would transport G-P's cargo. The agreement also provided that DTS could hire carriers to perform the work under certain conditions. Pursuant to the agreement, DTS hired R. Waltman Trucking (RWT). RWT was owned and operated by Robert Waltman, who hired his father, Richard, as a private contractor.

Richard Waltman claims to have sustained personal injuries while trying to cover a load on his flatbed tractor-trailer with a tarp. He had just picked up the load from G-P's facility, and driven to an empty, unpaved lot to secure the tarp. He fell off his tractor-trailer, causing injuries. He woke up in the cab of his truck. Mr. Waltman claims that G-P was negligent by both failing to provide fall protection that would guard against his injuries, and that G-P personnel moved him after his fall, which exacerbated his injuries. RWT also alleges claims for loss of income due to Mr. Waltman's injuries. G-P, in its answer, denied that it was negligent.

G-P requested that DTS defend the underlying suit, and indemnify if necessary, pursuant to the agreement to transport freight. That contract provides, in relevant part:

> 7. (a) [DTS] agrees to assume all risks growing out of or occurring in the performance of this Agreement by [DTS], its agents or employees, or by Carriers with which [DTS] has contracted for movement of G-P's freight for:
>
> . . .

(ii) any death or injury to any person or persons, whether or not employed by [DTS], however caused, occurring during the performance of this Agreement or upon the premises where this Agreement is being performed, except when caused by the negligence of G-P, its agents and employees.

(c) [DTS] further covenants and agrees, and it hereby binds itself, at its own sole cost and expense, to defend, save harmless and indemnify G-P, its officers, employees and customers, from and against any and all manner of suits, claims, judgments, demands, costs, attorneys' fees, charges, debts, dues, liabilities, and payments of money of any sort or nature whatsoever on account of injury to or the death of persons or loss of or damage to property in any manner whatsoever, arising out of or predicated upon the operation of trucks of or by [DTS], its agents, employees or Carriers with which [DTS] has contracted for movement of G-P's freight, or the conduct of the business of [DTS], or the transportation and handling of goods by [DTS], or by its agents, employees or Carriers with which [DTS] has contracted for movement of G-P's freight, whether pursuant to this Agreement or otherwise, provided that this hold harmless indemnity shall not apply to the extent that the action giving rise to the claim was caused by an act or omission of G-P or its agents, servants or employees.

8. [DTS] agrees to obtain, and to ensure that its Carriers obtain, insurance covering the risks incident to this Agreement, including Workers' Compensation and all other types of insurance as are currently required by 49 C.F.R. Part 387 or such future state, local or federal regulations as may be implemented from time to time. [DTS] shall obtain such insurance and any additional insurance specified in Appendix A in the amounts

specified in Appendix A. All insurance policies are to be written by reliable, solvent, and reputable insurance companies.

*Complaint*, Doc. No. 1, Ex. A. Appendix A provides, in pertinent part:

> [DTS] agrees to obtain and maintain at its own cost or shall require and warrant that all Carriers (at Carriers' expense) obtain and maintain, during the term of this agreement, insurance covering the risks incident to this Agreement with the following minimum limits:
>
> i. Workers' Compensation with statutory limits;
>
> ii. Employer's Liability with $100,000 per occurrence;
>
> iii. Commercial General Liability Insurance, covering bodily injuries and death and property damage, Independent Contractors, Personal Injury, Contractual with Limits of $500,000 per occurrence and $1,000,000 in the General Aggregate;
>
> . . .
>
> The coverage afforded under any insurance policy obtained by [DTS] pursuant to this Appendix shall be primary coverage regardless of whether or not G-P has similar coverage. Evidence of insurance, including where applicable the fact that G-P has been named as an additional insured, shall be filed with G-P before [DTS] transports any freight for G-P, including renewals thereof.

*Id.* The contract also provides that Georgia law applies to any suits brought under the contract. *Id.*

DTS refused to pay the costs of defense or indemnify G-P. G-P then brought this suit, alleging three claims of breach of contract against DTS, one count of breach of contract against DTS's insurer, Wilshire, one claim each for declaratory judgment against DTS and Wilshire, and asking for specific performance of the agreement, that is, that DTS pay for G-P's defense in the underlying suit. DTS, joined by Wilshire, filed a motion to dismiss the complaint on June 16, 2010. G-P responded, and also filed a motion for summary judgment. The motion for summary judgment contains substantially the same arguments that G-P used in responding to the motion to dismiss. Both motions are now ready for adjudication.

## DISCUSSION

### Motion to Dismiss

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. \_\_\_, \_\_\_, 129 S. Ct. 1937, 1949 (2009) (citation and quotation marks omitted). The district court must assume plaintiff's allegations are true and construe them liberally in the light most favorable to him. *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); *Grossman v. Novell, Inc.*, 120 F.3d 1112, 1118 (10th Cir. 1997). The district court's function

in a Rule 12(b)(6) motion is to assess whether the plaintiff's complaint alone is legally sufficient to state a claim on which relief may be granted. *Sutton v. Utah State Sch. for the Deaf and Blind*, 173 F.3d 1226, 1236 (10th Cir. 1999). The district court is not to weigh potential evidence that might be presented or determine who will ultimately prevail; rather, the issue is whether the plaintiff is entitled to offer evidence to support his claim. *Scheur v. Rhodes*, 416 U.S. 232, 236 (1974).

Defendants argue that the contract between DTS and G-P does not require it to defend G-P because the harm is alleged to be the result of G-P's negligence. They claim that if the plaintiff in the underlying suit alleges G-P's negligence, DTS need not defend. G-P makes several arguments in response, most significantly that G-P was not negligent as a matter of law because it owed no duty to Mr. Waltman.

The Court need not address G-P's arguments because it finds Defendants' motion should be denied for other reasons. Specifically, Defendants are not entitled to dismissal because they did not perform a reasonable investigation to determine whether G-P was indeed negligent before refusing to defend the underlying suit.

This Court cannot accept DTS's contention that the allegations of the underlying complaint alone determine the duty to defend in this class of cases. Looking to Georgia insurance law, the general rule is that the duty to defend is premised upon the injured party's

allegations in the complaint. *Fire Ins. Co. v. Heard*, 626 F. Supp. 476, 477-78 (N.D. Ga.1985) (citing *Haley v. Ga. Farm Bureau Mut. Ins. Co.*, 305 S.E.2d 160 (1983)). But even "when the complaint on its face shows no coverage, [if] the insured notifies the insurer of factual contentions that would place the claim within the policy coverage," due consideration must be given to the insured's factual contentions. *Colonial Oil Indus. Inc. v. Underwriters Subscribing to Policy Nos. T031504670 & T031504671*, 491 S.E.2d 337 (Ga. 1997). Under these circumstances, an insurer has a duty to conduct a reasonable investigation into the insured's contentions, and if the investigation reveals "true facts" arguably placing the claim within the policy coverage, then the insurer has a duty to defend. *Anderson v. So. Guaranty Ins. Co.*, 508 S.E.2d 726, 729 (Ga. App. 1998).

The rationale behind this position is persuasive:

> To relieve an insurer of any duty to investigate its insured's contentions would allow the allegations of a third-party to determine the insured's rights under its contract. Placing a duty of investigation on insurers in these limited circumstances is not an unreasonable burden, especially in light of the availability of the "procedurally safe course" of providing a defense under a reservation of rights and filing a declaratory judgment action to determine its obligations.

*Colonial Oil Industries*, 491 S.E.2d at 339 (footnotes omitted).

This Court can see no reason why it should not approach the duty to defend under a

contractual "defend, hold harmless and indemnify" provision in the same manner. As in the insurance setting, it makes no sense to allow unchecked allegations of a third party to irrefutably determine G-P's rights under its agreement with DTS. This is particularly true given that G-P contends the "true facts" are that it has no duty of care, it did not exacerbate Mr. Waltman's injuries, and Mr. Waltman's injuries were not caused by any act or omission of G-P. DTS cannot simply turn a blind eye to G-P's contentions, but must give them due consideration by way of a reasonable investigation. If that consideration and investigation arguably places the claim within the coverage of paragraph 7 of the Agreement, then DTS has a duty to defend. Defendants have failed to show that the complaint fails to state a claim for which relief may be granted, and their motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) should be denied.

Summary Judgment

Summary judgment is appropriate where the movant has demonstrated that there is no genuine issue of material fact and it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Johnson v. Weld County, Colo.*, 594 F.3d 1202, 1207-08 (10th Cir. 2010). As a general matter, the summary judgment movant has the burden to produce evidence supporting its claims. *Kannady v. City of Kiowa*, 590 F.3d 1161, 1169 (10th Cir. 2010). If the movant does so, the burden of production shifts to the party opposing summary judgment

to demonstrate that a genuine issue of material fact exists. *Id.* At all times, the Court must view the evidence in the light most favorable to the party opposing summary judgment. *Id.* at 1168. There is a genuine issue of material fact if a reasonable jury could find in favor of the non-moving party. *Id.* at 1169. In addition, the Court may only consider evidence that is admissible at trial—inadmissible evidence should be disregarded. *Johnson*, 594 F.3d at 1209.

*Duty to Mr. Waltman*

G-P's most significant argument is that it was not negligent because it did not owe a duty to Mr. Waltman. The question of whether a duty is owed is generally one for the Court to resolve as a matter of law. *Frost v. Allred*, 148 P.3d 17, 23 (Wyo. 2006). Where that question is dependent on certain facts, however, the existence of a duty is one of fact to be resolved by a jury. *Id.* In Wyoming, an employer of an independent contractor is generally not liable for physical harm to the contractor's employees. *E.g., Franks v. Indep. Prod. Co.*, 96 P.3d 484, 490 (Wyo. 2004); *Hittel v. Wotco, Inc.*, 996 P.2d 673, 676 (Wyo. 2000). There are two exceptions: "(1) workplace owner/employer (owner) exercises controlling and pervasive role over the independent contractor's work; or (2) owner assumes affirmative safety duties." *Franks*, 96 P.3d at 490.

The Wyoming Supreme Court discussed the first exception at length in *Noonan v. Texaco, Inc.*, 713 P.2d 160 (Wyo. 1986). In *Noonan*, the decedent's representative argued

that Texaco, who had hired the decedent's employer as a contractor, should be held liable because Texaco exercised pervasive control over the worksite. 713 P.2d at 166. The court is somewhat vague regarding the effect of the pervasive control analysis. For example, it appears to assume—but does not state—that if decided in favor of the plaintiff, the contractor is to be treated as an employee. *See id.* at 167 ("We do not think such a provision [in a contract allowing Texaco to inspect the equipment for safety] destroys the independent contractor relationship."). A similar discussion in *Jones v. Chevron U.S.A.*, however, indicates that an employer may be liable to a third party without destroying the contractor status. 718 P.2d 890, 895 (Wyo. 1986). *Jones* suggests that there is some kind of middle ground between a "full" contractor status and employee status.

*Jones* is further instructive for some factual similarities to the case at bar. Chevron had entered into a contract with Automation & Electronics, Inc., to construct power lines running to several oil and gas wells. *Id.* at 892. Plaintiff Jones was tasked with painting a metal H frame that had been energized. *Id.* Mr. Jones sustained serious injury when electricity arced from nearby transformers. *Id.*

The critical fact in the analysis was that Automation, before de-energizing any of the lines, was required to ask Chevron's permission. *Id.* at 896. The Wyoming Supreme Court determined, despite the fact that Automation never asked Chevron to de-energize the line that

injured Mr. Jones, that Chevron's control over the lines was sufficient to create a duty.

> Chevron's control over de-energization of primary lines could have contributed to appellant's injury even though appellant's foreman never requested de-energization. If Chevron had not discouraged de-energization of the primary lines, if it had made permission easier to obtain, and if it had permitted de-energization whenever requested by Automation—vesting the decision to de-energize and thus control in Automation—then appellant's foreman might have de-energized and the injury might have been avoided.

*Id.* at 897.

The case at bar may present similar circumstances, although it is difficult to tell without a more developed record. Viewing the limited facts provided in the light most favorable to Defendants, as the Court must, it appears the lot where the accident occurred was owned and controlled by G-P. It also appears that G-P maintained its control over the premises while being perfectly aware of the use to which it was being put. Mr. Waltman on one occasion asked about fall protection, but G-P denied his request. Richard Waltman Dep. at 42. G-P therefore knew that drivers used the area for tarping. G-P's duty is by no means proven by these facts. For example, there is no indication that any carriers asked G-P for permission to install fall protection and was denied. There is enough, however, to establish a genuine issue of material fact. Finally, the Court notes that Mr. Waltman made a second claim, alleging that G-P employees moved him after his accident, which exacerbated his

11

injuries. G-P's argument does not address any duty it might have in that claim.

In summary judgment terms, G-P has failed to come forth with facts establishing a prima facie case that it is entitled to judgment as a matter of law. G-P's defense relies on the general rule that the employer of a contractor is not liable to the employee of the contractor (or, in this case, a subcontractor). G-P has provided little evidence that the exceptions do not apply, and this Court is unable to conclude that there is no genuine issue of material fact and that G-P is entitled to judgment as a matter of law.

*Duty to Defend Under the Contract*

G-P also contends, even if indemnity is barred because G-P was negligent, that the contract nevertheless requires defense of claims against it. It relies on a difference in language between the general indemnity provision and the exception for G-P's negligent acts. The general provision requires DTS "to defend, save harmless and indemnify G-P," while the exception "provide[s] that this hold harmless indemnity shall not apply" when G-P is negligent. G-P points out that the general provision includes the word "defend," which is missing from the exception. It then argues that this difference indicates DTS must defend in all cases, but need only indemnify where G-P was not negligent.

G-P is incorrect. The language of the exception, "this hold harmless indemnity," is clearly intended as a general reference to the indemnity clause as a whole, not as limiting the

exception. Moreover, G-P's interpretation is unlikely as a practical matter. It would require DTS to defend in each and every lawsuit, even if G-P confessed negligence at the outset and only damages were in dispute. The Court is unwilling to infer this obligation in the absence of an express contractual provision to that effect.

*Failure to Require Insurance*

G-P next contends that DTS breached the contract by failing to ensure Mr. Waltman's employer carried proper insurance. It points out that the contract requires DTS to ensure that any carrier, which includes RWT, maintain both workers' compensation and liability coverage. G-P claims that if the insurance was in place, Mr. Waltman would have looked to his employer for compensation rather than G-P.

"The elements for a breach of contract claim consist of a lawfully enforceable contract, an unjustified failure to timely perform all or any part of what is promised therein, and entitlement of injured party to damages." *Reynolds v. Tice*, 595 P.2d 1318, 1323 (Wyo. 1979). There is no dispute that the agreement is an enforceable contract. G-P, however, has failed to demonstrate that there was a failure to timely perform its obligations or that G-P is entitled to damages.

The contract provides that DTS must "obtain and maintain at its own cost *or* shall require and warrant that all carriers . . . maintain . . . insurance covering the risks incident to

this Agreement." *Complaint*, Doc. No. 1, Ex. A (emphasis added). Deposition testimony from Robert Waltman established that RWT did not maintain workers' compensation coverage for Mr. Waltman, nor did it carry liability insurance. According to the evidence presented in support of summary judgment, however, Mr. Waltman was a private contractor, and no workers' compensation was required. Furthermore, although it is presently uncontested that the carrier did not maintain liability coverage, the contract gives DTS the option to maintain coverage at its own cost. G-P has presented no evidence whatsoever that DTS has failed to do so.

Finally, the harm that G-P alleges is purely speculative. There is no evidence to support its claim that Mr. Waltman would have chosen to bring an action against his employer rather than G-P. Indeed, given that RWT was owned and operated by his son, there is reason to infer that Mr. Waltman would have sued G-P regardless of any insurance.

In conclusion, G-P has failed to submit evidence constituting a prima facie case that no genuine issue of material fact and that it is entitled to judgment as a matter of law. The question of duty, relying as it does on underlying facts, is a question for the fact finder. The Court will decline to accept G-P's proposed interpretation of the contract, which would require a defense in all cases, but indemnity only where it is determined to be at fault. Finally, G-P has failed to establish that it is entitled to judgment as a matter of law on its

claim that DTS breached the agreement by failing to require RWT to carry insurance.

Accordingly:

IT IS ORDERED that Defendants' *Motion to Dismiss*, Doc. No. 13, is DENIED.

IT IS FURTHER ORDERED that Plaintiff's *Motion for Partial Summary Judgment*, Doc. No. 19, is DENIED.

Dated this 16th day of August, 2010.

NANCY D. FREUDENTHAL
UNITED STATES DISTRICT JUDGE