George Santini, WY Bar # 5-1992
Ross, Ross & Santini, LLC
307 E. 18th St.
Cheyenne, WY 82001
307.632.8957
307.632.8960 Fax
George@ross-santini.com

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF WYOMING

| | |
|---|---|
| **GEORGIA-PACIFIC,** | ) |
| | ) |
| **Plaintiff,** | ) Civil No. 10-cv-0083D |
| v. | ) |
| | ) |
| **DIVERSIFIED TRANSFER AND** | ) |
| **STORAGE, INC. and WILSHIRE** | ) |
| **INSURANCE COMPANY,** | ) |
| | ) |
| **Defendants.** | ) |

**MEMORANDUM IN SUPPORT OF
MOTION FOR RECONSIDERATION**

Comes now, Defendant, Diversified Transfer and Storage, Inc. (hereinafter "DTS"), and respectfully moves the Court to reconsider its August 16, 2010 Decision denying DTS' Motion to Dismiss on the basis:

**I. Under Georgia Law Indemnity Provisions are Narrowly Construed with Every Presumption Against the Drafter/ Indemnitee, Whereas Insurance Contracts are Broadly Construed with Every Presumption in Favor of the Insured and Coverage**

Georgia courts distinguish between ordinary, commercial contracts that include an indemnification provision and liability insurance policies. For example, in Allstate Insurance Co. v City of Atlanta, 415 S.E.2d 308, 202 Ga.App. 692 (GA App. 1992) the court stated:

> "Moreover, the context in which this document was executed, and the document itself, are significant. This is not a situation of "an insurance company whose business it is to furnish indemnity for a premium and

where indemnity is the principal purpose of the contract ...". Bohannon v. Sou. R. Co., 97 Ga.App. 849, 850(1), 104 S.E.2d 603 (1958)." Supr. 310. Though not controlling, the 5th Circuit's Decision in Meloy v. Conoco, Inc., 817 F.2d 275 (5th Cir. (LA) 1987) is illustrative of the distinction between transportation and other commercial contracts with an indemnity provision and an insurance liability contract.

> "An indemnity agreement is a specialized form of contract which is distinguishable from a liability insurance policy. A cause of action under a liability insurance policy accrues when the liability attaches. Appleman, Insurance Law and Practice (Buckley ed.) Sec. 4261. However, an insurer's duty to defend arises whenever the pleadings against the insured disclose a possibility of liability under the policy. American Home Assurance Co. v. Czarniecki, supra; Appleman, Insurance Law and Practice (Berdal ed.) Sec. 4683.01. On the other hand, an indemnity agreement does not render the indemnitor liable until the indemnitee actually makes payment or sustains loss. BLACK'S LAW DICTIONARY 692-93 (5th ed. 1979); Appleman, Insurance Law and Practice (Buckley ed.) Secs. 4261, 6668." Supra, 279-80.

## II. Under Georgia Law an Indemnitor's Obligations is Determined Solely by the Allegations in the Complaint, Whereas an Insurer has a Duty to Investigate the True Facts and Defend Where There is a Possibility of Coverage.

The table is provided to illustrate how Georgia courts distinguish between and construe contractual indemnity provisions as opposed to coverage under policies of insurance.

| **Contractual Indemnity Provisions** | **Liability Insurance Policies** |
|---|---|
| Ryder Integrated Logistics Inc. v. BellSouth Telecommunications, Inc., 642 S.E.2d 696, 697 (Ga. 2007): "In Division 1 of its opinion, the Court of Appeals noted **that the Rays' claim was based on BellSouth's sole negligence,** and correctly held that the indemnity provision was thus | The burden is on the insurer to show that a loss or claim comes within an exception to coverage. With respect to an exception to the duty to defend, **this burden is not carried merely by proving that the allegations of the complaint allege facts excluding the claim from the policy.** Loftin v. United |

| | |
|---|---|
| unenforceable.[1] *Ryder Integrated Logistics, Inc. v. BellSouth Telecommunications, Inc.*, 627 S.E.2d 358 (2006)." | States Fire Ins. Co., 106 Ga.App. 287, 127 S.E.2d 53 (1962). |
| In *Ryder,* however, BellSouth did not dispute that the action was based solely on its **alleged negligence.** United Parcel Service, Inc. v. Colt Security Agency, Inc., et al. (Ga. App. 2009) | **An insurer** who fails to investigate its insured's contentions and refuses a defense will be liable for a breach of the duty to defend **if a reasonable investigation at the time would have established the potential for coverage."** (Footnotes omitted.) Colonial Oil, 268 Ga. at 562(2), 491 S.E.2d 337. |
| Park Pride Atlanta, Inc. v. City of Atlanta, 541 S.E.2d 687, 690 (Ga. App. 2000): On the contrary, **the allegations involved only negligent acts and omissions committed by the City, City employees, and City officials. … The suit also alleged** that the City failed to properly maintain, inspect, and service its dump truck. In these circumstances, Park Pride incurred no obligation to indemnify the City for its own loss in settling the Starr lawsuit lodged against the City. Lester, 118 Ga.App. at 801(2), 165 S.E.2d 587. | "Not only are exclusions invoked by the insurer **strictly construed against the insurer** as the drafter of the document, but insurance contracts are to be construed in accordance with the reasonable expectations of the insured. "Richards v. Hanover Ins. Co., 250 Ga. 613, 615, 299 S.E.2d 561 (1983 |
| Service Merchandise Co. v. Hunter Fan Co., 274 Ga. App. 290, 617 S.E.2d 235, 240, (2005): "Because the indemnity provisions in the 1998 contract failed to expressly, plainly, clearly, and unequivocally state that Hunter agreed to indemnify SM as to SM's pre-1998 negligence, Hunter incurred no obligation to indemnify SM **for its defense in the claims asserted** against | "Indeed, "[t]o excuse the duty to defend the petition must unambiguously exclude coverage under the policy, and thus, the duty to defend exists if the claim potentially comes within the policy. Where the claim is one of potential coverage, doubt as to liability and **insurer's duty** to defend should be resolved in favor of the insured." Penn-America Ins. Co. v. Disabled American Veterans. |

| | |
|---|---|
| SM in Boss's lawsuit." | |
| "If Colt is not required to indemnify UPS for its own liability, **and the complaint alleges only UPS's liability,** we need not consider any of the trial court's other reasons for granting summary judgment to Colt and Tudor." <u>United Parcel Service, Inc. v. Colt Security Agency, Inc., et al.</u> (Ga. App. 2009) | "UPS raises several enumerations on appeal, …**because Tudor (the insurer) breached its duty to defend UPS by failing to investigate…** " <u>United Parcel Service, Inc. v. Colt Security Agency, Inc., et al.</u> (Ga. App. 2009) |

As set forth in cases above, contractual indemnification is a matter of law, decided solely on the allegations in the complaint and every presumption is made against indemnification or defense. DTS has found absolutely no case law imposing a duty on a contractual indemnitor to investigate or ascertain the "true facts" in regard to defense of indemnitee's alleged negligence. Only in construing insurance policies do the courts find a duty to investigate the "true facts". These different approaches to contractual indemnity and insurance are consistent with the public policy that strongly disfavors indemnity and narrowly construes such agreements, whereas an insurer has broad duty to defend, and all doubt must resolved toward coverage. Both Georgia and Wyoming have expressed a strong public policy against indemnity in transportation contracts[1], and there is no

---

[1] By unanimous vote of both the WY House and Senate, HB 191 - **Motor Carrier Indemnity Agreements Void** was passed, and signed into law by Gov. Freudenthal in July 2009. The Act makes:
>"…any provision, clause, covenant or agreement contained in a motor carrier transportation contract or related access agreement under which the motor carrier transporter enters on property for the purpose of loading, unloading or transporting property, to the extent that the contract purports to indemnify, defend or holding harmless or has the effect of indemnifying, defending or holding harmless the indemnitee from or against any liability for loss or damage resulting

articulated basis in Georgia law to extend an insurer's duty to investigate to a motor carrier contractual indemnitor

### III. As an "Additional Insured" on the Certificate issued by Wiltshire Insurance Co.'s Apparent Agent, Georgia-Pacific Is Entitled to Defense From Defendant, Wiltshire, But Not From DTS.

DTS is entitled to have the claims against it dismissed, but the same is not true of G-P's complaint against Wiltshire. As set forth in Ryder Integrated Logistics, Inc. v. BellSouth Telecommunications, Inc., 627 S.E.2d 358 (2006), even though Ryder as contractual indemnitor had no duty to defend BellSouth based on the allegations of BellSouth's sole negligence in the complaint, Ryder's insurer did. *"In sum, we conclude that Republic has a duty to defend and indemnify BellSouth to the extent of its coverage under the CGL policy..."* 365. This distinction between a contractual indemnitor's and insurer's duty of defense was upheld by the Georgia Supreme Court in Ryder Integrated Logistics Inc. v. BellSouth Telecommunications, Inc., 642 S.E.2d 696, 697 (Ga. 2007), though it reversed the Appeals Court's holding that Ryder would be liable for any amounts above the $1,000,000 CGL policy amount, as it had no defense or indemnification obligations in the first place.

As an insurer however, Wiltshire does have a duty to investigate the true facts, and provide a defense if there is the possibility of coverage. Likewise, where Wiltshire's agent, Talbot Insurance, had apparent authority to issue

---

from its own negligence or intentional acts or omissions is against the public policy of this state and is void and unenforceable.

Certificates of Insurance, and did issue a certificate showing G-P as an "additional insured", Wiltshire may be estopped from asserting that G-P was never added to the policy.

> In *Mountain Fuel Supply v. Reliance Ins. Co.*, 933 F.2d 882, 889 (10th Cir.1981), the Tenth Circuit Court of Appeals held that where there is an affirmative manifestation of intent to incorporate the certificate of insurance (adding an insured) into an insurer's policy, the third party becomes a named insured by virtue of the certificate even though the certificate contains a disclaimer. <u>Sumitomo Marine & Fire Ins. v. Southern Guaranty Ins.</u> 337 F.Supp.2d 1339, 1355, (N.D. GA 2004)
>
> Accordingly, in this case, Hayes, defendants' authorized agent, by issuing the Certificate of Insurance and naming SMG as an additional insured, manifested the intent to incorporate the Certificates of Insurance into defendants' policies.[10] Thus, SMG was made an additional insured under defendants' policies with coverage to the extent of the policies as they existed at that time. *Accord Dumenric v. Union Oil Co. of California*, 238 Ill.App.3d 208, 179 Ill.Dec. 398, 606 N.E.2d 230 (1st Dist.1992) (holding that the principal, having created the authority, is estopped to deny it to the detriment of a third party); *see also Strain Poultry Farms, Inc. v. American Southern Ins. Co.*, 128 Ga.App. 600, 600, 197 S.E.2d 498 (1973) (holding that "the insurer ... is estopped by its pleadings... and its certificate of insurance to contend that [additional insured] isnot a named insured, or not insured, under the policy, as against the insurer's contention that the certificate of insurance was not binding because it was not attached to the policy as an endorsement thereon.") <u>Sumitomo Marine & Fire Ins. v. Southern Guaranty Ins.</u> 337 F.Supp.2d 1339, 1355, (N.D. GA 2004)
>
> Moreover, other jurisdictions that have considered additional insured endorsements containing phrases similar to "arising out of your operations" have determined that the additional insured was entitled to coverage for its own negligence. Thus, in *Marathon Ashland Pipe Line v. Maryland Cas. Co.*,[17] the United States Court of Appeals for the Tenth Circuit held that the additional insured endorsement, which covered "liability arising out of your ongoing operations performed for that insured," provided coverage for the additional insured's liability arising out of its own negligence.[18] In *Mid-Continent Cas. Co. v. Swift Energy Co.*,[19] the Fifth Circuit Court of Appeals rejected the insurance company's argument that identical policy language limited the endorsement's coverage to liability resulting from named insured's negligence and excluded liability arising out of the negligence of

the additional insured.[20] Reaching a similar conclusion in *Acceptance Ins. Co. v. Syufy Enterprises*,[21] the California Court of Appeals concluded that "[t]he fact that the defect [that caused the injury] was attributable to [the additional insured's] negligence is irrelevant, since the policy language does not purport to allocate coverage according to fault."[22] We find this reasoning sound. Therefore, where as here, the insurer grants coverage for liability "arising out of" the named insured's work, the additional insured is covered without regard to whether the injury was attributable to the named insured or the additional insured. <u>Ryder Integrated Logistics, Inc. v. BellSouth Telecommunications, Inc.</u>, 627 S.E.2d 358, 363-4 (2006

On information and belief, the Talbot Agency routinely issued Certificates of Insurance for Wiltshire designating "additional insureds", no additional premiums were charged, and Talbot did not need prior approval from Wiltshire. If G-P demonstrates these facts, it would be entitled to defense and indemnification from Wiltshire, potentially even for its own negligence. However, that is between G-P and Wiltshire, and does not impact DTS' claim for dismissal.

### IV. Conclusion

DTS is a motor carrier that entered into a transportation contract with G-P. The contract with G-P provided for indemnification and required DTS to provide and maintain certain insurance, which it did. The contract between DTS and G-P does not require DTS to indemnify, defend or hold G-P harmless "**to the extent that the action giving rise to the claims was caused by any act or omission of G-P**". The contract does not state any duty to investigate or insure G-P for its own negligence, nor did DTS assume the duties of an insurer.

Georgia law controls as to interpretation of the contract, and Georgia law distinguishes and narrowly construes contractual indemnification provisions as

against public policy, whereas insurance policies are broadly construed in favor of the insured, also for public policy reasons. In determining a contractual indemnitor's duty, the court looks solely to the allegations in the complaint, whereas an insurer has the duty to investigate and provide defense if there is the possibility of coverage. But a motor carrier is not an insurer, the contract between DTS and G-P is not an insurance contract, and the Court should not unilaterally extend an insurer's duty to a motor carrier, particularly where the statutes and public policy of both Georgia and Wyoming specifically disfavor such an extension.

For these reasons, Defendant, Diversified Transfer & Storage, Inc. respectfully requests the Court to reconsider its August 16, 2010 decision, and grant DTS' Motion to Dismiss.

**DATED** this 26th day of August, 2010.

/s/Liese Howarth
Liese Howarth,
Attorney for Diversified Transfer
    and Storage
Gallagher & Howarth, PC
PO Box 869
Suffield, CT 06078

/s/George Santini
George Santini,
Attorney for Diversified Transfer
    and Storage

## CERTIFICATE OF SERVICE

    I hereby certify that a true and correct copy of the foregoing was served electronically via CM/ECF, this 26th day of August, 2010, addressed to and upon the following parties:

Billie LM Addleman  
Whitne M. Agopian  
Hirst Applegate, LLP  
PO Box 1083  
Cheyenne, WY 82003-1083  

Curtis B. Buchhammer  
Buchhammer & Kehl, PC  
1821 Logan Ave.  
PO Box 568  
Cheyenne, WY 82003-0568  

                                            /s/George Santini