Liese G. Howarth
Gallagher & Howarth, P.C.
155 South Main Street
Suffield, CT 06078
(860) 254-5434
(860) 254-5430 fax
Howarthlaw@aol.com

FILED
U.S. DISTRICT COURT
DISTRICT OF WYOMING

OCT 26 2010

Stephan Harris, Clerk
Cheyenne

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF WYOMING

| | |
|---|---|
| GEORGIA-PACIFIC,<br><br>    Plaintiff,<br>v.<br><br>DIVERSIFIED TRANSFER AND<br>STORAGE, INC. and WILSHIRE<br>INSURANCE COMPANY,<br><br>    Defendants.<br><br>DIVERSIFIED TRANSFER AND<br>STORAGE, INC.<br><br>    Third Party Plaintiff,<br>v.<br>ROBERT WALTMAN, d/b/a<br>R WALTMAN; WALTMAN<br>TRUCKING<br>    Third Party Defendant. | Civil No. 10-cv-0083D<br><br>THIRD-PARTY COMPLAINT |

Comes now, Defendant and Third-Party Plaintiff, Diversified Transfer and Storage, Inc. (hereinafter "DTS") and by way of Complaint against Third-Party Defendant, Robert Waltman d/b/a R Waltman, and/or Waltman Trucking states as follows:

1. DTS is Montana corporation, active as a federally licensed motor carrier of general commodities with a principal place of business 1640 Monad Road, Billings, Montana.

2. Freight Agency, Inc. is a Montana corporation, active as a federally licensed transportation broker of general commodities with principal place of business at 1640 Monad Road, Billings, Montana. Freight Agency is an affiliated, sister company of DTS.

3. On information and belief, Robert Waltman is an individual doing business as R Waltman and/or Waltman Trucking as a federally licensed motor carrier of general commodities and transportation broker of general commodities with business at 1300 Division Street and/or 220 Elkhorn Street, Whitney, Nebraska.

4. The Court has subject matter jurisdiction under 28 U.S.C. §1332 as there is complete diversity between the parties and the amount in controversy exceeds the jurisdictional requirement.

5. The Court has personal jurisdiction over the matter as Mr. Waltman, d/b/a R Waltman Trucking brought suit in this jurisdiction in regard to the personal injury claims of his uncle, Richard Waltman. Additionally, as a federally licensed motor carrier, Mr. Waltman was required to have a BOC-3 agent for service of process in Wyoming, and submit to jurisdiction of the Wyoming courts.

6. In May 2000, R Waltman entered into a contract with DTS' sister company, Freight Agency, Inc. Exhibit 1

7. The contract provides inter alia that R Waltman will "... defend and hold harmless Broker from any and all liability, cost, and loss or damage to persons and/or property arising out of Carrier's operations hereunder..."

8. The concurrent Worker's Compensation Hold Harmless further states:

    "R Waltman hereafter referred to as Carrier, hereby agrees to Hold Harmless and Indemnify Freight Agency, Inc. and any of its affiliates against any award by Worker's Compensation Court, similar administrative body, or court of Law against Carrier or Carrier's employees."

9. In 2006, Richard Waltman acted as an independent contractor/driver for R Waltman. Richard Waltman was allegedly injured while working for R Waltman picking up a shipment at Georgia-Pacific's Himes, Wyoming facility.

10. In May 2007, after demand for indemnification from Georgia-Pacific regarding the personal injury claims of Richard Waltman, DTS and Freight Agency's attorney wrote to R Waltman care of William Simpson, Esq., their attorney, demanding indemnification and defense.

11. Richard Waltman sued G-P, and G-P sued DTS for defense, indemnification and hold harmless.

12. At the onset of the current suit, DTS/Freight Agency's counsel contacted R Waltman's counsel regarding the indemnification provision, but received no response.

## COUNT I – BREACH OF CONTRACT

13. Third-Party Plaintiff, DTS repeats and hereby incorporates the preceding allegations as if set forth fully herein.

14. Defendant contractually agreed to indemnify and hold Freight Agency and its affiliated company harmless from any claims for injury to persons arising out of Defendant's motor carrier operations.

15. DTS has been sued by Georgia-Pacific in regard to Richard Waltman's personal injuries.

16. DTS made demand upon R Waltman for indemnification, however to date DTS has received no acknowledgement or response from R Waltman or its attorneys.

17. DTS has been damaged by R Waltman's breach of its contractual indemnification in the amount of its paid and ongoing attorneys fees in this case.

## COUNT II - CONTRACTUAL INDEMNIFICATION

18. Third-Party Plaintiff, DTS repeats and hereby incorporates the preceding allegations as if set forth fully herein.

19. To the extent that the DTS is found liable to G-P, DTS is entitled to be held harmless and indemnified by R Waltman for any damages it is required to pay to G-P in regard to the claim by Richard Waltman.

## COUNT III – COMMON LAW INDEMNIFICATION

20. Third-Party Plaintiff, DTS repeats and hereby incorporates the preceding allegations as if set forth fully herein.

21. Any injury or damage sustained, as alleged in the Waltman v. G-P case was caused solely by reason of the negligence of the R Waltman, Richard Waltman and/or G-P, without any negligence or culpable conduct on the part of DTS contributing thereto.

22. If G-P recovers judgment against DTS for the injuries or damages alleged in the Waltman Complaint, such liability will have been brought about or caused solely by the careless, negligent or culpable acts or omissions of R Waltman and his agents, servants or contractors, and DTS is entitled to full indemnity in an amount equal to the total sum of any such judgment, together with costs and disbursements of the within action.

23. If G-P recovers judgment against DTS for the injuries or damage alleged in the Complaint, such liability will have been brought about or caused, in substantial part, by the careless, negligent or culpable acts or omissions of R Waltman its agents, or employees, and DTS is entitled to contribution from R Waltman in accordance with the relative culpability of each defendant in an amount equal to any sum which may be recovered herein by G-P, together with costs and disbursements of the within action or in the alternative, that Cargo Transit shall have judgment over and against R Waltman for contribution and apportionment, together with costs and disbursements of this action, and all other relief which to this Court may seem just and proper.

**WHEREFORE**, Third Party Plaintiff, Diversified Transfer and Storage, Inc. prays for the following relief:

I. That Third Party Plaintiff have and recover of Third Party Defendant defense and indemnification in the current action;

II. That Third Party Plaintiff have and recover its reasonable attorney fees from Third Party Defendant;

III. That the costs of this action be taxed to Third Party Defendant;

IV. And for all such other and further relief as the Court may deem just and proper.

Respectfully submitted,

/s/ George Santini
George Santini for
Liese Gallagher Howarth
BBO # 637101
GALLAGHER & HOWARTH, P.C.
155 South Main Street
Suffield, CT 06078
(860) 254-5434
(860) 254-5430 Facsimile
Howarthlaw@aol.com

Date: October 26, 2010

      I hereby certify that a true and correct copy of the foregoing was placed in the US Mail, postage prepaid, in addition to being served electronically via CM/ECF, this 26th day ofOctober, 2010, addressed to and upon the following parties:

Billie LM Addleman
Whitne M. Agopian
Hirst Applegate, LLP
PO Box 1083
Cheyenne, WY 82003-1083

Curtis B. Buchhammer
Buchhammer & Kehl, PC
1821 Logan Ave.
PO Box 568
Cheyenne, WY 82003-0568

                                                                                                   /s/ George Santini

From: 877-982-3657    Pg 001

# ACORD. CERTIFICATE OF LIABILITY INSURANCE

**DATE (MM/DD/YYYY):** 05/05/2006

**PRODUCER**
PEOPLES INSURANCE AGENCY
PO BOX 157
CHARLES CITY IA 50616
PH: 800-932-4801 FAX: 877-902-3657

THIS CERTIFICATE IS ISSUED AS A MATTER OF INFORMATION ONLY AND CONFERS NO RIGHTS UPON THE CERTIFICATE HOLDER. THIS CERTIFICATE DOES NOT AMEND, EXTEND OR ALTER THE COVERAGE AFFORDED BY THE POLICIES BELOW.

**INSURERS AFFORDING COVERAGE** | **NAIC #**

**INSURED**
R. WALTMAN
PO BOX 162
WHITNEY NE 69367

*RWWH*

INSURER A: CONTINENTAL WESTERN
INSURER B:
INSURER C:
INSURER D:
INSURER E:

## COVERAGES

THE POLICIES OF INSURANCE LISTED BELOW HAVE BEEN ISSUED TO THE INSURED NAMED ABOVE FOR THE POLICY PERIOD INDICATED. NOTWITHSTANDING ANY REQUIREMENT, TERM OR CONDITION OF ANY CONTRACT OR OTHER DOCUMENT WITH RESPECT TO WHICH THIS CERTIFICATE MAY BE ISSUED OR MAY PERTAIN, THE INSURANCE AFFORDED BY THE POLICIES DESCRIBED HEREIN IS SUBJECT TO ALL THE TERMS, EXCLUSIONS AND CONDITIONS OF SUCH POLICIES. AGGREGATE LIMITS SHOWN MAY HAVE BEEN REDUCED BY PAID CLAIMS.

| INSR LTR | TYPE OF INSURANCE | POLICY NUMBER | POLICY EFF DATE | POLICY EXP DATE | LIMITS | |
|---|---|---|---|---|---|---|
| A | GENERAL LIABILITY [X] COMMERCIAL GENERAL LIABILITY [ ] CLAIMS MADE [X] OCCUR | MCP 2617216 | 05/01/2006 | 05/01/2007 | EACH OCCURRENCE | $1,000,000 |
| | | | | | DAMAGE TO RENTED PREMISES | $100,000 |
| | | | | | MED EXP (Any one person) | $5,000 |
| | | | | | PERSONAL & ADV INJURY | $1,000,000 |
| | | | | | GENERAL AGGREGATE | $1,000,000 |
| | | | | | PRODUCTS - COMP/OP AGG | $1,000,000 |
| | GEN'L AGGREGATE LIMIT APPLIES PER: [X] POLICY [ ] PROJECT [ ] LOC | | | | Fire Damage | |
| A | AUTOMOBILE LIABILITY [ ] ANY AUTO [ ] ALL OWNED AUTOS [X] SCHEDULED AUTOS [X] HIRED AUTOS [X] NON-OWNED AUTOS | MCP 2617216 | 05/01/2006 | 05/01/2007 | COMBINED SINGLE LIMIT | $1,000,000 |
| | | | | | BODILY INJURY (Per person) | |
| | | | | | BODILY INJURY (Per accident) | |
| | | | | | PROPERTY DAMAGE (Per accident) | |
| | GARAGE LIABILITY [ ] ANY AUTO | | | | AUTO ONLY - EA ACCIDENT | |
| | | | | | OTHER THAN AUTO ONLY: EA ACC / AGG | |
| | EXCESS/UMBRELLA LIABILITY [ ] OCCUR [ ] CLAIMS MADE [ ] DEDUCTIBLE [ ] RETENTION $ | | | | EACH OCCURRENCE | |
| | | | | | AGGREGATE | |
| | WORKERS COMPENSATION AND EMPLOYERS' LIABILITY ANY PROPRIETOR/PARTNER/EXECUTIVE OFFICER/MEMBER EXCLUDED? If yes, describe under SPECIAL PROVISIONS below | | | | [ ] WC STATU-TORY LIMITS [ ] OTH-ER | |
| | | | | | E.L. EACH ACCIDENT | |
| | | | | | E.L. DISEASE - EA EMPLOYEE | |
| | | | | | E.L. DISEASE - POLICY LIMIT | |
| A | OTHER CARGO | MCP 2617216 | 05/01/2006 | 05/01/2007 | CARGO | 100,000 |

DESCRIPTION OF OPERATIONS / LOCATIONS / VEHICLES / EXCLUSIONS ADDED BY ENDORSEMENT / SPECIAL PROVISIONS

**CERTIFICATE HOLDER**
FREIGHT AGENCY INC
1840 MONAD RD
BILLINGS MT 59101

**CANCELLATION**
SHOULD ANY OF THE ABOVE DESCRIBED POLICIES BE CANCELLED BEFORE THE EXPIRATION DATE THEREOF, THE ISSUING INSURER WILL ENDEAVOR TO MAIL __10__ DAYS WRITTEN NOTICE TO THE CERTIFICATE HOLDER NAMED TO THE LEFT, BUT FAILURE TO DO SO SHALL IMPOSE NO OBLIGATION OR LIABILITY OF ANY KIND UPON THE INSURER, ITS AGENTS OR REPRESENTATIVES.

**AUTHORIZED REPRESENTATIVE** *[signature]*

ACORD 25 (2001/08)    © ACORD CORPORATION 1988

R. Waltman Trucking    Robert Waltman

P.O. Box 162

Whitney  NE 69367

**Part I  Taxpayer Identification Number**

Enter your taxpayer identification number in the appropriate box. For individuals and sole proprietors, this is your social security number. For other entities, it is your employer identification number. If you do not have a number, see *How To Obtain a TIN*, below.

Note: If the account is in more than one name, see the chart on page 2 for guidelines on whose number to enter.

Employer identification number: 47-0717163 5

**Part II  For Payees Exempt From Backup Withholding (See Instructions)**

Requester's name and address (optional)

**Certification.** — Under penalties of perjury, I certify that:

(1) The number shown on this form is my correct taxpayer identification number (or I am waiting for a number to be issued to me), and

(2) I am not subject to backup withholding because: (a) I am exempt from backup withholding, or (b) I have not been notified by the Internal Revenue Service (IRS) that I am subject to backup withholding as a result of a failure to report all interest or dividends, or (c) the IRS has notified me that I am no longer subject to backup withholding (does not apply to real estate transactions, mortgage interest paid, the acquisition or abandonment of secured property, contributions to an individual retirement arrangement (IRA), and payments other than interest and dividends).

Certification Instructions. — You must cross out item (2) above if you have been notified by IRS that you are currently subject to backup withholding because of underreporting interest or dividends on your tax return. (Also see *Signing the Certification under Specific Instructions*, on page 2.)

Signature ▶ Robert Waltman by Vickie Titch    Date ▶ 5-25-00

Form W-9 (Rev. 12-96)

# FREIGHT AGENCY INC.
1640 MONAD ROAD BILLINGS, MT 59101-3200  406-245-4688  FAX 406-245-5404  MC 176035

### CONTRACT CARRIER - BROKER CONTRACT
### TO COMPLY WITH NEGOTIATED RATES ACT OF 1993

1. **WITNESSETH:**

   AGREEMENT made and entered into this day of <u>MAY 25, 2000</u>, by and between <u>R. WALTMAN, P.O. BOX 162, WHITNEY, NE 69367,</u> hereinafter referred to as CARRIER, and <u>FREIGHT AGENCY INC., 1640 MONAD ROAD, BILLINGS, MT 59101,</u> hereinafter referred to as BROKER.

   (a) WHEREAS: CARRIER is a motor contract carrier of property duly authorized by the Department of Transportation (DOT), under docket No. MC- <u>320522</u>, (a copy of which permit is attached hereto and made a part hereof), to provide transportation of property under contract with shippers and receivers of general commodities.

   (b) WHEREAS: BROKER is a freight broker, duly authorized by the DOT under License No. MC- <u>176035</u>, (a copy of which license is attached hereto and made a part hereof), to arrange for the transportation of commodities to be tendered to CARRIER, in accord with the criteria established in Dixie Midwest Express 132 M. C. C. 794 (1982), and thus is a shipper under those criteria.

2. **TERMS AND JURISDICTION OF THIS AGREEMENT**

   (a) This AGREEMENT is effective on the date as listed above, and shall remain in effect for a period of one year from such date, and from year to year thereafter, subject to the right of either party to cancel or terminate the AGREEMENT upon, not less than thirty (30) days written notice of one party to the other.

3. **SPECIFIC OBLIGATION OF CARRIER**

   (a) The CARRIER shall issue a uniform standard bill of lading in accord with 49 U. S. C. Sec. 81 and 49 C. F. R. Part 1035 for property it receives for transportation under this contract and shall be liable to the person entitled to recover under the bill of lading. The liability imposed by this paragraph is for the actual loss or injury to the property. Failure to issue a bill of lading does not affect the liability of the CARRIER. The CARRIER's liability shall be the same as a common carrier's liability under 49 U. S. C. 11707.

   (b) CARRIER agrees to maintain cargo insurance in the amount of $ <u>50,000</u> to compensate those parties entitled to recover. CARRIER is required to have its insurance carrier forward forthwith to BROKER a standard Certificate of Insurance, which certificate shall require the insurance carrier to give BROKER a written notice thirty (30) days prior to the cancellation of such cargo insurance. The cargo insurance shall be in the form required by 49 C. F. R. 1043.2 (c), and shall have no exclusion or restrictions that would not be accepted by the Interstate Commerce Commission for a filing under the statutory requirements of the above-cited section, but shall be identical to the cargo insurance filed in accord with the said part.

   (c) CARRIER's liability shall begin at the time cargo is loaded upon CARRIER's equipment at point of origin, and continue until said cargo is delivered to consignee at destination, and /or to any intermediate stop off point. CARRIER has the capability and agrees to provide to the distinct needs of the shipper when required.

   (d) CARRIER agrees to defend and hold harmless BROKER from any and all liability, cost, and loss or damage claims to persons and/or property arising out of CARRIER's operations hereunder, including but not limited to all road, fuel and other taxes, fees or permits, related to the shipments transported by CARRIER as arranged by BROKER. CARRIER is designed to meet distinct needs of BROKER.

4. **SPECIFIC OBLIGATION OF BROKER**

(a) BROKER, as an independent contractor serves shipper and receiver customers on a continuing basis which have individually and/or collectively, varying and distinct transportation needs for shipments between and among various geographic points throughout the United States & Canada, which from time to time require dedication of equipment, refrigerated, containerized, bulk or other specialized equipment, short notice driver/equipment availability, driver scheduling, detention, overnight and weekend layover, LTL/TL or LCL/CL service, variable traffic/shipment levels, TL consolidation, protective service, stops in transit, direct driver dispatch, 24 hour dispatch and driver monitor, route instruction, scale requirements, drop shipments, internal deliveries, weekend/holiday shipments and deliveries, pooling or spotting trailers, priority traffic and expedited service, special indemnification, cargo liability insurance claim, credit and payment terms, rate making negotiability, mutual rate adjustment, rate and charge stabilization and agreement, as well as electronic data interchange (E. D. I.), and for those reasons BROKER, both derivatively for shipper customers and for itself, has unique distinct and continuing transportation service needs throughout the United States, and must necessarily also enter into similar pattern motor contact carrier agreements with more than one motor contract carrier, in order to serve the varied special, distinct and continuing transportation needs of itself and of its several shipper customers from origins to destination throughout the United States & Canada all of which form an integral part of the BROKER's customer base of both shippers and carriers.

(b) BROKER agrees to pay CARRIER for the transportation of the commodities moved under this agreement in accordance to the rate set forth herein or addenda thereto, within twenty nine (29) days of the receipt by BROKER of CARRIER's proper documentation covering such transportation.

(c) Provisions are made for negotiation and mutual adjustment of rates and charges for transportation provided under this AGREEMENT as set out in appendices hereto, rates payable under the AGREEMENT and appendices. After parties have established an amended rate, a confirmation letter must be signed by both parties.

(d) CARRIER authorizes BROKER to invoice shipper, receiver, consignor or consignee for freight charges as agent for and on behalf of CARRIER. Payment of the freight charges to BROKER shall relieve shipper, receiver, consignor or consignee of any liability to the CARRIER for non-payment of charges.

The bill of lading shall note that the shipments were transported by CARRIER, acting as a carrier, and that the shipment was arranged by BROKER, acting as a broker.

5. **COMMITMENT OF SHIPPER TO TENDER AND TRANSPORT A SERIES OF SHIPMENTS**

(a) BROKER shall diligently solicit, obtain and maintain shipping customers having freight traffic shipments in need of transportation, and shall offer a series of shipments to CARRIER for transportation.

(b) CARRIER shall transport by motor vehicle a series of shipments subject to the availability of suitable equipment for the traffic offered and the specific shipment instructions, all in accordance with the terms and conditions of this AGREEMENT. No tender of traffic shall be diverted to other moves of transportation without written consent of broker.

(c) BROKER shall offer to CARRIER a series of shipments, a minimum quantity of no less than four (4) per year.

6. **PROVISIONS AS TO THE SETTLEMENT OF CARGO CLAIMS AND OTHER DISPUTES**

(a) Cargo claims shall be investigated and settled in accordance with the regulation codified at 49 C. F. R. 1005. As a condition precedent to recovery, claims must be filed in writing with the receiving or delivering carrier, or carrier issuing this bill of lading, or carrier on whose line the loss, damage, injury or delay occurred, or carrier in possession of the property when the loss, damage, injury or delay occurred, within one year after delivery, then within one year after a reasonable time for delivery has elapsed; and suits shall be instituted against any carrier within two years, three months and one day from the day when notice in writing is given by the carrier to the claimant that the carrier has disallowed the claim or any part or parts thereof specified in the notice. Where claims are not filed or suits are not instituted thereon in accordance with the foregoing provisions, no carrier hereunder shall be liable, and such claims shall not be paid.

(b) If any dispute arises about any matter covered by the terms of this Motor Contract Carrier Agreement, the dispute must be submitted, by the party who alleges a violation filing a complaint with the Interstate Commerce Commission. The complaint shall contain specific references to pertinent statutory provisions and regulations of the Commission, and the terms of this contract that the complainant believes have been violated. Such a complaint shall be submitted in accordance with all the provisions of 49 C. F. R. 1111. No court action can be taken by either party prior to the decision of the Commission, and the decision shall be a binding, final and non-appealable. If for any reason the Commission refuses to accept the complaint, then the parties' recourse shall be to the judicial system, either state or federal, in the federal district or state county in which the BROKER is located. (MONTANA)

7. **NO BACK - SOLICITATION**

(a) CARRIER shall not solicit traffic from any shipper, consignor, or customer of BROKER.

    1. Availability of such traffic first became known to CARRIER as a result of BROKER's efforts.

    2. Where the traffic of the shipper, consignor, consignee or customer of the BROKER was first tendered to the CARRIER by the Broker.

If CARRIER "back - solicits" the BROKER's customers, and/or obtains traffic, the BROKER then is entitled, for a period of 12 months after the involved traffic first begins to move, to a commission from the CARRIER of 12% of the transportation revenue received on the movement of the traffic, as liquidated damages.

MAY.25.2000  11:32AM    EDGEMARK SYSTEMS        801 271 9166
                        FREIGHT AGENCY/DTS                     NO.410    P.5/6

§   **FORCE MAJEURE EXEMPTIONS**
    (a) Neither party hereto will be liable for the failure to tender or timely transport freight under this AGREEMENT if such failure, delay or other omission is caused by strikes, acts of God, war, accidents, civil disorder, or through compliance with legally constituted order of civil or military authorities.


IN WITNESS WHEREOF,

the parties have executed this Broker-Carrier Transportation Agreement by their duly authorized representatives on this day of MAY 25, 2000.


CARRIER: R. WALTMAN                         BROKER: FREIGHT AGENCY, INC.

BY: *Vickie Fritzler*                       BY: *[signature] McCook*
                                                A. L. JAY FOLEY
TITLE: dispatcher                                      Contract supporter
                                            TITLE: PRESIDENT

MAY.25.2000  11:59AM   FREIGHT AGENCY SYSTEMS        501 271 9166        P.02

## WORKERS COMPENSATION HOLD HARMLESS

R. WALTMAN, hereafter referred to as Carrier, hereby agrees to Hold Harmless and Indemnify Freight Agency, Inc. and any of its affiliates against any award by a Workers' Compensation Court, similar administrative body, or court of Law against Carrier or Carrier's employees.

*Vickie Fritzler  dispatcher*
Authorized Signature

5-25-00
Date

EDGEMARK SYSTEMS          301 271 9166              P.03

PM-26
(Rev. 1/95)

SERVICE DATE
August 18, 1997

## FEDERAL HIGHWAY ADMINISTRATION

### CERTIFICATE

MC 320522 C

ROBERT WALTMAN
D/B/A R WALTMAN
WHITNEY, NE, US

    This Certificate is evidence of the carrier's authority to engage in transportation as a common carrier of property (except household goods) by motor vehicle in interstate or foreign commerce.

    This authority will be effective as long as the carrier maintains compliance with the requirements pertaining to insurance coverage for the protection of the public (49 CFR 387), and the designation of agents upon whom process may be served (49 CFR 366). The carrier shall also render reasonably continuous and adequate service to the public. Failure to maintain compliance will constitute sufficient grounds for revocation of this authority.

Thomas T. Vining
Chief, Licensing and Insurance Division

NOTE: Willful and persistent noncompliance with applicable safety fitness regulations as evidenced by a DOT safety fitness rating of "Unsatisfactory" or by other indicators, could result in a proceeding requiring the holder of this certificate or permit to show cause why this authority should not be suspended or revoked.

Common
RWWH

FEDERAL HIGHWAY ADMINISTRATION

NCA
SERVICE DATE
Jan 20, 1999

DECISION

No. MC-320522
ROBERT WALTMAN
D/B/A R WALTMAN
WHITNEY, NE

REENTITLED

R. WALTMAN

On Jan 13, 1999, applicant filed a request to have the Federal Highway Administration's records changed to reflect a name change.

*It is ordered:*

The Federal Highway Administration's records are amended to reflect the carrier's name as R. WALTMAN .

Within 30 days after this decision is served, the applicant must establish that it is in full compliance with the statute and the insurance regulations by having amended filings on prescribed FHWA forms (BMC91 or 91X or 82 for bodily injury and property damage liability, BMC 34 or 83 for cargo liability, or a BMC 84 or 85 for property broker security and BOC-3 for designation of agents upon whom process may be served) submitted on its behalf. Copies of Form MCS-90 or other "certificates of insurance" are not acceptable evidence of insurance compliance. Insurance and BOC-3 filings should be sent to FHWA, Office of Motor Carriers, HIA-30, 400 Virginia Ave., SW, Suite 600, Washington, DC 20024.

The applicant is notified that failure to comply with the terms of this decision shall result in revocation of its operating rights registration, effective 30 days from the service date of this decision.

To verify that the applicant is in full compliance, call (202) 358-7000. Any other questions regarding the action taken should be directed to (202) 358-7028.

*Decided:* Jan 14, 1999

By the Motor Carrier Board.

Thomas T. Vining, Chief
Licensing and Insurance Division

---

Form W-9
(Rev. December 1996)
Department of the Treasury
Internal Revenue Service

**Request for Taxpayer
Identification Number and Certification**

Give this form to the requester. Do NOT send to IRS.

Name: R. Waltman Trucking  Robert Waltman
Address (number and street): P.O. Box 162

List account number(s)

**Freight Agency, Inc.**
1640 Monad Road
Billings, MT 59101-3200
406-245-4688
800-676-6166

LOAD CONFIRMATION (# 5163) F05285
ADDENDUM TO CONTRACT CARRIER/BROKER
AGREEMENT FOR THE FOLLOWING SHIPMENT

DATE: 5/5/2006
CARRIER: R WALTMAN
EQUIPMENT REQUIRED:
MILES: 0
PICK-UP DATE: 5/5/2006

ATTENTION: VICKIE
FAX: 1-000-007-2016
TOTAL PAY: 461.26
2 DAY PAY: 442.81
SIGN FOR 2 DAY PAY: _____
DELIVERY DATE: 5/5/2006

SHIPPER: GEORGIA PACIFIC
ADDRESS: PO BOX 786
CITY: LOVELL                ST: WY
ZIP: 82431
PHONE: 307-548-2283

CONSIGNEE: JOBSITE
ADDRESS: 
CITY: SPEARFISH              ST: SD
ZIP: 57783
PHONE: 

PICKUP LOAD OF WALLBOARD FOR DIVERSIFIED TRANSFER & STORAGE (D.T.S.)
LOAD ANYTIME 11:30AM
PICKUP# 39470
LOAD MUST BE TARPED

JOBSITE DELIVERY MUST CALL ANDY 605-641-2288 PRIOR TO DELIVERY

46000-500001 PROD WEIGHT 1.17/MILE 330 MILES + 56.56 FUEL (23.2K) INC TARP

DRIVER IS REQUIRED TO CALL 1-800-676-6166 FOR DISPATCH.
IN BILLINGS LOCAL AREA, PLEASE HAVE DRIVER CALL 245-4688.

IN CASE OF EMERGENCY AFTER HOURS CALL 406-255-7594

ACCEPTANCE OF THIS SHIPMENT INDICATES THAT SHIPMENT IS BEING MOVED UNDER THE CARRIERS CONTRACT AUTHORITY FREIGHT AGENCY, INC IS A BROKER.

IT IS AGREED BY BOTH PARTIES TO PROCEED WITH THIS SHIPMENT EFFECTIVE THIS ____ DAY OF _____ 20 ___. IT IS THE INTENT OF THE PARTIES HERETO, THIS AGREEMENT IS IN CONFORMITY WITH THE PROVISIONS OF SECTION 10 U.S.C. 10702 ESPECIALLY AS TO THE SERVICE PERFORMED WHICH IS DESIGNED TO MEET THE DISTINCT NEEDS OF THOSE REQUESTING SUCH SERVICE AT MARKET NEGOTIATED RATES, OTHERWISE UNAVAILABLE FROM COMMON CARRIERS. IT IS THE INTENT AND PURPOSE OF THE PARTIES HERETO THIS AGREEMENT SHALL BE CONTRACT CARRIAGE WHETHER THE CARRIER HOLDS COMMON CARRIER AUTHORITY OR NOT. A REDUCTION ALLOWANCE OR OTHER ADJUSTMENT MAY APPLY TO THESE CHARGES.

PLEASE SIGN AND RETURN THIS FAX TO 406-245-5404

FREIGHT AGENCY, INC.                    DISPATCHER: Debbie Harlyn - 1-877-898-3411

CARRIER: *R.Waltman Trucking*   Authorized Sig: *Vickie Fritzler*

2 DAY PAY CHARGE (4%):  $   18.45